UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
| Plaintiff, | : <br> : <br> : |
| -against- | :     21-cv-00583-MKB-VMS <br> : |
| GPB CAPITAL HOLDINGS, LLC <br> ASCENDANT CAPITAL, LLC; <br> ASCENDANT ALTERNATIVE <br> STRATEGIES, LLC; <br> DAVID GENTILE; <br> JEFFRY SCHNEIDER; and <br> JEFFREY LASH, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

# MEMORANDUM OF LAW OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION IN SUPPORT OF ITS MOTION FOR AN ORDER TO SHOW CAUSE AND FOR THE APPOINTMENT OF AN INDEPENDENT MONITOR OVER DEFENDANT GPB CAPITAL HOLDINGS, LLC

SECURITIES AND EXCHANGE COMMISSION
David Stoelting
Kristin M. Pauley
Lindsay S. Moilanen
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0174 (Stoelting)

February 8, 2021

## TABLE OF CONTENTS

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................................... iii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**BACKGROUND** ........................................................................................................................ 3

    The Commission's Allegations .............................................................................................. 3

    Gentile's Continuing Control Over GPB Capital ................................................................. 4

    GPB Capital's Dealerships And Financial Condition ........................................................... 4

**ARGUMENT** .............................................................................................................................. 5

    I.    The Monitor's Necessity And Purpose ......................................................................... 5

    II.   Joseph T. Gardemal III Is Qualified To Serve As Monitor ........................................... 7

**CONCLUSION** .......................................................................................................................... 9

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*SEC v. Amer. Bd. of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987) ...................................................... 4

*SEC v. Bivona*, 16 Civ. 01386 (EMC), 2016 WL 2996903, (N.D. Cal. May 25, 2016) ................. 6

*SEC v. Trabulse*, 526 F. Supp. 2d 1008 (N.D. Cal. 2007) ............................................................. 6

*SEC v. WorldCom, Inc.*, 02 Civ. 4963 (JSR), 2002 WL 1788032 (S.D.N.Y. Aug. 2, 2002) ...... 5-6

**Statute**

15 U.S.C. § 78u(d)(5*)* ..................................................................................................................... 5

Plaintiff Securities and Exchange Commission respectfully submits this memorandum of law in support of its application for Order to Show Cause and for the appointment of an independent monitor over Defendant GPB Capital Holdings, LLC ("GPB Capital").

## PRELIMINARY STATEMENT

To protect investors, the Court should appoint an independent monitor to oversee the operations and management of GPB Capital. In the aftermath of the investment fraud perpetuated by GPB Capital and the resulting civil and criminal actions filed last week, the risks to investors have never been greater, and an independent monitor is urgently needed to maintain stability to preserve the assets available for investors. For reasons described below, the Commission proposes that the Court appoint as the independent monitor Joseph T. Gardemal III, a restructuring specialist who is uniquely qualified for this critical role.[1]

An independent monitor is necessary to protect investors, given the actions of GPB Capital's principal, David Gentile ("Gentile"), who founded GPB Capital in 2013 and was chief executive officer until four days ago when he was charged with securities fraud in this action. Based on allegations similar to those in the Commission's Complaint, the U.S. Attorney's Office charged Gentile with multiple counts in an Indictment.

The Commission's Complaint alleges that Gentile—who continues to own 100% of GPB Capital—masterminded the $1.7 billion offering fraud that victimized approximately 17,000 investors nationwide. Attracted by the substantial and consistent distributions that the funds paid

---

[1] Declaration of Kristin M. Pauley, Esq. dated February 8, 2021 ("Decl."), Ex. 1 (summary of Joseph Gardemal's professional experience and background). A copy of the proposed Order Appointing Monitor is attached as Ex. 2 to the Decl.

out year after year, investors poured hundreds of millions of dollars into the Funds.[2] The successful image, however, was an illusion: the distributions paid to investors largely consisted of Ponzi-like payments from other investors and not cash flow from operations, as investors had been promised. All distributions and redemptions finally stopped in 2018. Since then, investors have been given scant information about the financial condition of the funds, although it is clear that GPB Capital's financial obligations to the investors far exceed the value of its known assets.

The principal source for potential investor recovery is revenue generated by the several dozen automobile dealerships owned by GPB Capital. These dealerships have contractual relationships with lenders and manufacturers that are now at risk of termination because of, among other things, Gentile's arrest. In addition, GPB Capital, as it has recently done, can sell its dealerships to generate cash, and Gentile and his handpicked management team should not have unchecked authority over incoming cash that could be used to redeem investors.

In short, an independent monitor, serving as an officer of the Court with sufficient plenary powers, would provide much-needed assurances to the investors, GPB Capital's counterparties and the public that an unbiased and qualified person who is not beholden to Gentile is vetting any significant transactions and decisions and looking out for the interests of investors. The Court should therefore order Defendants to show cause why an independent monitor should not be appointed over GPB Capital and then appoint an independent monitor, whether Joseph T. Gardemal III as the Commission proposes or another monitor of the Court's choosing.

---

[2]The "Funds" consist of GPB Automotive Portfolio, LP; GPB Holdings, LP / GPB Holdings Qualified, LP; GPB Holdings II, LP; GPB Waste Management, LP; and GPB Cold Storage, LP.

## BACKGROUND

**The Commission's Allegations**

As alleged in the Complaint ("Comp."), GPB Capital engaged in a Ponzi-like scheme beginning as early as 2015. Comp. ¶ 41. Specifically, GBP Capital used investor funds to pay an 8% annualized distribution payment to investors, as well as periodic "special distributions" ranging from 0.5 to 3%, despite telling investors and prospective investors in the Funds that GPB Capital made the distribution and special distribution payments exclusively with funds from operations. Comp. ¶ 42. GPB Capital also manipulated the financial statements for two of the Funds in the early years to give the false appearance to investors and prospective investors that the Funds were generating sufficient income to cover the distribution payments to investors. Comp. ¶¶ 49-63.

In addition, GPB Capital made material misrepresentations and omissions to investors and prospective investors in the offering and marketing materials concerning millions of dollars in fees and other compensation received by, among others, Gentile. Comp. ¶¶ 64-76. GPB Capital also failed to disclose to investors Gentile's inherent conflict of interest in acquisition-related decisions on account of the undisclosed fees he received in connection with those acquisitions. Comp. ¶¶ 71-73.

For more than three years, GPB Capital has both failed to deliver audited financial statements for the Funds to investors and failed to register two of its Funds with the Commission, as required by the Securities Exchange Act of 1934 ("Exchange Act"). Comp. ¶¶ 77-83. GPB Capital also took action to impede reporting to the Commission by including language in certain of its separation and termination agreements that violated the whistleblower rules under the Exchange Act and retaliated against a known whistleblower. Comp. ¶¶ 84-111.

3

**Gentile's Continuing Control Over GPB Capital**

Gentile, as the founder, sole owner and (until last Friday[3]) CEO of GPB Capital, has maintained nearly unfettered control over GPB Capital's business and decision-making. Decl. Ex. 3 at 33 (Form ADV). In early 2020, however, in the face of mounting lawsuits (Decl. Ex. 5), investor losses and law enforcement investigations (Decl. Ex. 4 at 25), GPB Capital created a new entity, Highline Management, Inc. ("Highline"), a wholly-owned subsidiary of GPB Capital. *Id*. at 4. Although Highline appears to have assumed the management of certain aspects of GPB Capital, Gentile remains the sole owner of GPB Capital, at least until the filing of the Commission's Complaint, was one of the five-member Highline board, and Gentile recruited the other four board members. At the time of the filing of the Complaint, Gentile was also one of a five-member acquisition committee, which focuses on acquisitions and disposition at the Fund level, and managed GPB Capital's operations, along with a managing director and the general counsel at GPB Capital, both of whom Gentile recruited.

**GPB Capital's Dealerships And Financial Condition**

GPB Capital's three dozen automobile dealerships remain the source of the majority of its revenue. The dealerships are parties to franchise agreements with automobile manufacturers as well as financing agreements with banks and finance companies affiliated with the manufacturers. These contracts are vital to the dealerships' day-to-day operations, and most contain change-of-control provisions as well as other provisions allowing for termination by the manufacturer. Decl. Ex. 6. Such change-of-control provisions allow a manufacturer to terminate

---

[3] According to a press report, Gentile is only stepping down as CEO until "current matters are resolved," and the new "interim CEO" is Robert Chmiel. Decl. Ex. 7. Gentile hired Chmiel in November 2019 to be GPB Capital's chief financial officer. Decl. Ex. 3 at 33. During Chmeil's fifteen-month tenure as CFO, GPB Capital failed to issue audited financial statements, failed to provide accurate financial information to investors, and the company experienced a wave of lawsuits. Decl. Ex. 5.

4

the contractual relationship upon the occurrence of a change in company management or other events. *See, e.g.*, Decl. Ex. 5 (no. 11; change-of-control lawsuit brought by Volkswagen against GPB Capital).

In addition, GPB Capital could at any time sell dealerships, which would deplete the assets that could be used to redeem investors. Indeed, GPB Capital is reported to have sold at least twelve dealerships in the last year. Decl. Ex. 8. An independent monitor is needed, therefore, to ensure that any dealership sales are handled appropriately and are in the best interests of the investors.

GPB Capital's obligations to the investors far exceed GPB Capitals's assets. Although the offerings at issue raised approximately $1.7 billion, only a fraction of investors were able to redeem before all redemption stopped in 2018, and GPB Capital reports total assets under management of approximately $238 million. Decl. Ex. 3 at 12.

## ARGUMENT

### I.     The Monitor's Necessity And Purpose

This Court has the authority and discretion to appoint a monitor in order to protect investors and prevent the dissipation of assets. *SEC v. Amer. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (district court's appointment of a trustee or receiver in an SEC action "may be disturbed on appeal only if the district court has abused its discretion"). Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), which permits the Court to grant "any equitable relief that may be appropriate or necessary for the benefit of investors," provides a firm statutory basis for the appointment.

Many courts have approved the appointment of monitor to oversee a firm's activities and thus protect against further improper conduct. *See, e.g.*, *SEC v. WorldCom, Inc.*, 02 Civ. 4963

5

(JSR), 2002 WL 1788032, at *1-2 (S.D.N.Y. Aug. 2, 2002) (reaffirming prior orders appointing Corporate Monitor); *SEC v. Bivona*, 16 Civ. 01386 (EMC), 2016 WL 2996903, at *1 (N.D. Cal. May 25, 2016) (granting SEC's motion to appoint an independent monitor to review defendants' financial records "for the purpose of identifying assets, preventing dissipation of funds, and recommending future steps"); *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1019 (N.D. Cal. 2007) (appointing monitor due to "need for an objective party to oversee [defendant's] conduct as he continues to manage funds").

The proposed independent monitor in this case would oversee GPB Capital and its affiliates and provide the Court, the Commission and the investors an unbiased and independent assessment of GPB Capital's business. The independent monitor would also serve a vital role in helping ensure that GPB Capital maintains its existing agreements with automobile manufacturers and lenders in view of the lawsuits filed by the Commission and the various state securities regulators—and Gentile's arrest—and any resulting change in leadership or control of GPB Capital.

As described above, GPB Capital's automobile dealerships, which represent at least 70% of its revenues, operates on a franchise model, which requires GPB Capital to have agreements with individual manufacturers to operate a dealer for that manufacturer's brands. The Commission is concerned that manufacturers, in light of recent events, may terminate GPB Capital's dealerships that sell their brands or force a sale of those dealerships. This could have a cascading effect on existing lenders who could begin calling in outstanding loans or cease extending credit. A termination of GPB Capital's dealerships or forced divestiture would also have a catastrophic impact on the value of limited partner investments and the performance of

6

the Funds which include automotive assets (*i.e.*, Automotive Portfolio and Holdings II). Similarly, liquidation of GPB Capital's assets would likely result in fire-sale prices.

The Commission, therefore, respectfully requests that the Court issue the proposed Order Appointing Monitor, Decl. Ex. 2, with authority to, among other things, approve or disapprove: (1) proposed material corporate transactions; (2) extensions of credit; (3) material changes in business strategy; (4) material changes to compensation of any executive officer, affiliate or related party; (5) any retention of any management-level professional or person; (6) any decision to resume distributions to investors; and (7) any decision to file, or cause to be filed, any bankruptcy or receivership petitions.

The monitor would have full access to the books, records, officers and employees of GPB Capital, and be required to file with the Court quarterly reports reflecting the status of GPB Capital's reviews of its, among other things, internal controls, valuations, investment strategy, and annual budgets. The powers the Commission recommends for the proposed monitor are narrowly focused, thereby limiting the expense of the monitor. Decl. Ex. 2 (proposed Order).

## II.     Joseph T. Gardemal III Is Qualified To Serve As Monitor

The Commission conducted a diligent search for a person with the skill and experience required to perform the necessary duties, and could do so in a cost-conscious manner. The Commission proposes Joseph T. Gardemal III, a managing director in the Washington, D.C. office of Alvarez & Marsal, a nationally known bankruptcy and restructuring firm. Mr. Gardemal has the unique skills and experiences needed to address the different issues facing GPB Capital. He has over 30 years of experience as a Certified Public Accountant and chief fiscal officer, specializing in forensic accounting investigations, valuation, auditing, and financial

management for publicly-traded, closely-held, and public sector entities. Decl. Ex. 1 (Gardemal biographical experience).

Mr. Gardemal has also been a leading valuation and damages expert in the auto industry for over 20 years, and is therefore particularly well-suited to serve as the monitor for GPB Capital. Mr. Gardemal has provided services to many of dealer groups and auto manufacturers and has also served as an expert to the U.S. Department of Justice on matters related to auto dealerships. He has intimate knowledge of, and has often provided consulting services related to, the relationship between auto manufacturers and their dealerships. His knowledge base includes compliance with sales and service agreements; buy-sell agreements; and terminations, relocations, and additions. He has served as an expert or consultant on matters involving the key issues facing the industry over the past decades including the bankruptcies of Chrysler and General Motors and the subsequent dealer network restructurings; sales reporting and vehicle allocation; and the growth of manufacturer-based incentive programs and their resulting impact on the operations and profitability of dealerships.

In addition, the Alvarez & Marsal firm has provided operational and financial management and advisory services to a number of key automotive companies including manufacturers, suppliers, and dealerships. The firm's expertise in addressing issues associated with unprofitable operations includes identifying and managing cost and revenue drivers; identifying and extracting benefits from merger and acquisition activities; evaluating businesses and business units; understanding customer/vendor relationships; and developing rationalization and growth strategies to improve profitability and maximize value.

As contemplated by the proposed order for the monitorship accompanying this motion, any terms and conditions of the monitor's retention, including all aspects of Mr. Gardemal's and

Alvarez & Marsal's compensation, would be negotiated and agreed to between Mr. Gardemal, the Commission, and GPB Capital.

Should it be necessary for Mr. Gardemal to retain other third party advisors, he would do only after obtaining an Order of the Court authorizing such engagement, and notice provided to GPB Capital with an opportunity to be heard. Finally, in view of concerns about GPB Capital's condition and viability, the Order should require Mr. Gardemal to submit a report to the Court within 60 days of his appointment recommending either continuation of the monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. Mr. Gardemal is available to appear before the Court to address any questions the Court might have regarding his qualifications.[4]

---

[4] In July 2020, the Commission provided counsel for GPB Capital with a proposed monitor order that would provide for the appointment of Mr. Gardemal as an independent monitor. After the filing of this action on February 4, 2021, the Commission again sought GPB Capital's consent to the appointment of a monitor. The parties, however, have been unable to reach a consensual agreement.

## **CONCLUSION**

For the foregoing reasons, the Commission respectfully requests that the Court issue the Order to Show Cause and grant its application for the appointment of an independent monitor over GPB Capital.

Dated: New York, New York
February 8, 2021

                           Respectfully submitted,

                           /s/ David Stoelting

By: _____
     David Stoelting
     Kristin M. Pauley
     Lindsay S. Moilanen
     *Attorneys for Plaintiff*
     U.S. Securities and Exchange Commission
     New York Regional Office
     200 Vesey Street, Suite 400
     New York, New York 10281-1022
     Tel: (212) 336-0174 (Stoelting)