Clerk's Office
Filed Date:

4/14/2021

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW
YORK
BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| -against- | : | **21-cv-00583-MKB-VMS** |
| | : | |
| **GPB CAPITAL HOLDINGS,** | : | |
| **LLC ASCENDANT CAPITAL,** | : | |
| **LLC; ASCENDANT** | : | |
| **ALTERNATIVE STRATEGIES,** | : | |
| **LLC;** | : | |
| **DAVID GENTILE;** | : | |
| **JEFFRY SCHNEIDER; and** | : | |
| **JEFFREY LASH,** | | |
| **Defendants.** | | |

### AMENDED ORDER APPOINTING
### MONITOR

**WHERAS** on February 23, 2021, this Court entered, upon the consent of plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") and defendant GPB Capital Holdings, LLC ("GPB" or "Defendant"), an Order Appointing Monitor (Dkt. 23), which appointed Joseph T. Gardemal III as the independent Monitor in this action;

**WHEREAS** the SEC and GPB have conferred and propose that the Order Appointing Monitor be amended in the form set forth below;

**WHEREAS** for good cause shown the Court approves the amendments proposed by the SEC and GPB;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.   This Amended Order Appointing Monitor supersedes the Order Appointing Monitor.

2.   The Monitor shall remain in place until terminated by Order of the Court.

3.   GPB shall grant the Monitor access to all non-privileged books, records, and

account statements for the entities and assets listed on Exhibit A (the "Portfolio Companies") and Exhibit B (the "GPB Funds") hereto; and (2) cooperate fully with requests by the Monitor reasonably calculated to fulfill the Monitor's duties, including, but not limited to, making available any officer, employee, or outside advisor that the Monitor deems relevant to executing his or her duties.

4.      Should GPB disagree with any of the Monitor's decisions below, GPB or the Monitor may, first, present the dispute to a Court-appointed Federal Magistrate Judge sitting in the same district as the Federal Judge presiding over this matter (the "Magistrate") for mediation. In the event the dispute cannot be resolved by the Magistrate, or a Magistrate is not appointed, either party may petition the Court in a timely manner for resolution.

5.      Among the reasons GPB may disagree with the Monitor's decision or recommendation are, if GPB, in good faith, considers the decision or recommendation unduly burdensome, inconsistent with applicable law or regulation, excessively expensive, or detrimental to investors. In this event, GPB may propose to the Monitor an alternative procedure or practice designed to comport with the Monitor's decision or recommendation.

## I.

## General Powers and Duties of the Monitor

6.      The Monitor will have the authority to approve or disapprove the following actions:

   a.   Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate. The Monitor will negotiate a protocol with GPB for the review of information concerning proposed material transactions.

b.  any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws. The Monitor will negotiate a protocol with GPB for the review of information concerning such extensions of credit;

c.  any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.  any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.  any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

f.  any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

g.  any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

7.  The Monitor will negotiate a protocol with management governing the timing and form of the approval process. The Monitor's approval for any of the aforementioned actions shall not be unreasonably withheld.

8.  GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.

9.  For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.

3

10.     If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.

11.     The Monitor is authorized and empowered to:

a.  Review the finances and operations of the GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.  Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.  Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.  Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.  Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will  promptly deliver to the Monitor upon completion;

f.  Review the minutes of all meetings of all boards of directors of the GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.  Review the status of all litigation involving GPB, Highline, the GPB Funds, or

4

the Portfolio Companies.

h.  Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.  Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or  Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.  Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.  Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

12.   GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.

13.   GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.

14.   GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment

objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.

15.     Commencing May 12, 2021, GPB will provide the Monitor with the GPB Funds' annual budgets and detail of underlying assumptions. Updates to budget documents will be provided promptly by GPB.

16.     GPB shall provide the Monitor with prompt access to all non-privileged books, records, and account statements for all of the Subject Assets for purposes of implementing this Order. For all non-privileged books, records and account statements maintained online, GPB shall provide the Monitor with immediate online access; for all other books, records, and account statements, GPB shall provide the Monitor with timely access as the review of privileged information allows.

17.     The Monitor may engage and employ persons, including accountants, attorneys and experts, to assist in the carrying out of the Monitor's duties and responsibilities hereunder ("Retained Personnel"), subject to the fee guidelines set forth below. Before any engagement, the Monitor shall request a budget from any Retained Personnel, which shall be presented to GPB's Chief Financial Officer, and must be reasonable in relation to the Monitor's duties and responsibilities.

18.     If the Monitor believes that some further inquiry not authorized in this Order is required, he shall so report to GPB and the SEC and if, after consultation in good faith, the parties cannot agree as to the need for and scope of such proposed inquiry, they shall submit the dispute, first, to the Magistrate, and if the Magistrate cannot resolve the dispute, the dispute shall be submitted to the Court.

19.     The Monitor shall have the authority to share any findings, documents, or information with the SEC.

20.     If the Monitor believes GPB is in some way not materially in compliance with the terms of this Order, upon notice of noncompliance to GPB, GPB shall have 10 business days in which to cure any claimed material noncompliance (the "Cure Period").

21.     If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership.

22.     Substantive amendments to this Order must be made in writing and approved by the Court.

## II.

## <u>Recommendations and Reports</u>

23.     Within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").

24.     The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.

25.     The Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the

Monitorship.

## III.

### Liability of Monitor

26.     The Monitor and the Monitor's agents shall not be responsible for the operation of GPB's businesses. The Monitor and the Monitor's agents, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Monitor or the Monitor's agents be liable to anyone for their good faith compliance with their duties and responsibilities as Monitor or Monitor's agents, except as provided by law.

27.     This Court shall retain jurisdiction over any action filed against the Monitor or the Monitor's agents based upon acts or omissions committed in their representative capacities.

28.     In the event the Monitor decides to resign, the Monitor shall first give written notice to the SEC's counsel, the Court, and counsel for GPB of its intention, and the resignation shall not be effective until the Court appoints a successor. The Monitor shall then follow such instructions as the Court may provide. Either the SEC or GPB may request that the Monitor be removed. The Monitor can only be dismissed by Court Order upon good cause shown.

29.     In communicating with the Monitor, GPB does not intend to waive any attorney-client privilege, attorney work product protection, or any other applicable privilege, and the Monitor has no authority to waive such privileges.

## IV.

### Fees, Expenses and Accountings

30.     The terms and conditions of the Monitor's retention, including all aspects of the Monitor's compensation, shall be negotiated and agreed to between the Monitor, the SEC, and GPB. Any disputes over the terms of the Monitor's retention shall be determined by the Court. Any modifications of paragraphs 31-36, below, shall be done by Order of the Court.

31.     Subject to the specific provisions of this Order, the Monitor is authorized to utilize Retained Personnel to assist the Monitor in carrying out the duties and responsibilities described in this Order. The Monitor shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement, and notice provided to GPB with an opportunity to be heard.

32.     The Monitor and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Subject Assets in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (available at www.sec.gov/oiea/Article/billinginstructions.pdf) (the "Billing Instructions"), except as otherwise set forth in this order, specifically with respect to Monthly Fee Statements, agreed to by the Monitor and Retained Personnel. Such compensation shall require the approval of the Court.

33.     Except as may otherwise be provided in orders of this Court authorizing the retention of specific professionals, the Monitor and Retained Personnel may seek monthly compensation in accordance with the following procedures:

> a. On or before the twentieth (20th) day of each month, following the month for which compensation is sought, the Monitor and Retained Personnel seeking compensation under this Order shall serve a monthly statement (a "Monthly Fee Statement"), by e-mail or overnight delivery on (i) GPB

Capital ; (ii) counsel to GPB, (iii) SEC (collectively, the "Notice Parties").

b.  On or before the twentieth (20th) day of each month, following the month for which compensation is sought, the Monitor and Retained Personnel shall also file a Monthly Fee Statement with the Court.

c.  Except as otherwise permitted by an order of the court authorizing the retention of a professional, each Monthly Fee Statement must contain a list of the individuals – and their respective titles (e.g., attorney, accountant, or paralegal) – who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries for each individual in increments of tenths (1/10) of an hour.

d.  If any Notice Party has an objection to the compensation or reimbursement sought in a particular Monthly Fee Statement, such Notice Party shall, by no later than seven (7) days after receipt of such Monthly Fee Statement, or the next business day if such day is not a business day (the "Objection Deadline"), file with the Court, and serve upon the Monitor and the Retained Personnel whose Monthly Fee Statement is objected to, a written "Notice Of Objection To Fee Statement," setting forth the nature of the objection and the amount of fees or expenses at issue (an "Objection").

e.  At the expiration of the Objection Deadline, GPB shall promptly pay ninety percent (90%) of the fees and one hundred percent (100%) of the expenses identified in each Monthly Fee Statement to which no Objection

has been served in accordance with paragraph (d).

f.  If an Objection to a particular Monthly Fee Statement is filed, GPB shall withhold payment of that portion of the Monthly Fee Statement to which the Objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (e) above.

g.  If an Objection is resolved by the parties, the Monitor shall file a statement indicating that the Objection has been withdrawn and describing in detail the terms of the resolution. Upon the filing of such statement, GPB shall promptly pay, in accordance with paragraph (e), that portion of the Monthly Fee Statement which is no longer subject to an Objection.

h.  All Objections that are not resolved by the parties or by Court order shall be preserved and presented to the Court with the next Quarterly Fee Application (see paragraph (34) below).

i.  The service of an Objection in accordance with paragraph (d) shall not prejudice the objecting party's right to object to any Quarterly Fee Application made to the Court in accordance with paragraph (34) below on any ground, whether raised in the Objection or not. Furthermore, the decision of any party not to object to a Monthly Fee Statement shall not be a waiver of any kind or prejudice that party's right to object to any Quarterly Fee Application subsequently made to the court in accordance with this order.

j.  For the avoidance of doubt, no prior approval from the Court shall be necessary prior to payment of Monthly Fee Statements under this

paragraph.

34.     Within forty-five (45) days after the end of each calendar quarter, the Monitor and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Subject Assets (the "Quarterly Fee Applications"). At least fifteen (15) days prior to filing each Quarterly Fee Application with the Court, the Monitor will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format  to be provided by the SEC.

35.     Upon approval by the court of each Quarterly Fee Application, GPB shall promptly pay the remaining fees held back from payment of the Monthly Fee Statements for the months contained in each Quarterly Fee Application.

36.     All Quarterly Fee Applications will be interim and will be subject to final reviews at the close of the Monitorship. At the close of the Monitorship, the Monitor will file a final fee application, describing in detail the activities pursued by the Monitor during the course of the Monitorship.

37.     If the parties cannot agree to any of the above regarding fees, the dispute shall be brought before the Magistrate.

38.     Each Quarterly Fee Application shall:

a.      comply with the terms of the Billing Instructions agreed to by the Monitor;and

b.      contain representations (in addition to the certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the investors, and; (ii) with the exception ofthe Billing Instructions, the Monitor has not entered into

12

any agreement, written or oral, express or implied, with any person or
entity concerning theamount of compensation paid or to be paid to the
Monitor or any sharing thereof.

39.     Prior to any bankruptcy filing, the Monitor and Retained Personnel may
increase any retainer on file sufficient to cover any incurred fees as of any filing date,
regardless of whether such fees are allowed as of the date of filing.

**Access to Information By Certain State Regulatory Authorities**

40.     Non-party the People of the State of New York, by their attorney, Letitia
James, Attorney General of the State of New York ("NYOAG"), shall be copied on any report
provided by the Monitor pursuant to paragraph 18 of this Amended Order.

41.     The Monitor or the SEC may provide NYOAG with any findings, documents
or information that the Monitor provides to the SEC pursuant to Paragraph 19 of this Amended
Order.

42.     The Monitor shall serve the Quarterly Report(s) provided for in Paragraph 23
of this Amended Order on the NYOAG at the same time they are served on the SEC and GPB.

43.     The Monitor shall provide NYOAG with any notice of resignation provided
for in Paragraph 28 of this Amended Order.

44.     Pursuant to Paragraph 29 of this Amended Order, GPB does not intend to
waive any attorney- client privilege, attorney work product protection, or any other applicable
privilege and the production of information by the Monitor to NYOAG shall not constitute an
independent waiver of any such privilege.

45.     Any non-public documents provided to the NYOAG by the Monitor will be
treated as confidential and not disclosed in any public filing without offering GPB an

opportunity to seek a protective order to maintain the confidentiality of those documents.

46.     The NYOAG may share any non-public documents, reports or other information it receives pursuant to this Order with the state regulatory agencies that have filed actions against GPB and are listed in Dkt 11-5, specifically, Alabama, Georgia, Illinois, Massachusetts, Missouri, New Jersey and South Carolina, provided that any recipient agency must first complete the confidentiality undertaking set forth as Exhibit C.


SO ORDERED:
s/ MKB 4/14/2021

_____
MARGO K. BRODIE
United States District Judge

## EXHIBIT A ("PORTFOLIO COMPANIES")[1]

| |
|---|
| 35 Bypass Realty, LLC (RC Accessories) |
| 50 Buttermilk Hollow Realty, LLC (KRAG Chevy N. Huntington) |
| 54 Caprara Drive Realty, LLC (FX Ford/Chevy) |
| 111 E. Highway 6 Realty, LLC (Ron Carter Autoland) |
| 124 S Middle Neck Realty, LLC (Tower Ford) |
| 211 Schermerhorn Development LLC |
| 510 Sunrise Realty, LLC |
| 750 Bridgeport Ave, LLC (Bob's Buick GMC) |
| 1855 Hylan Realty, LLC (Staten Island GMC) |
| 2006 North Center Ave, Realty (KRAG Chevy Cad. Somerset) |
| 3005 FM Realty, LLC (RC Ford/CDJR) |
| 3200 Library Road Realty, LLC (KRAG KRAG Ford South) |
| 3205 FM Realty, LLC (Ron Carter Chevrolet Buick GMC) |
| 3670 W Oceanside Realty, LLC (Rockville Centre GMC) |
| 11250 US 30 Realty, LLC (KRAG Chevy N. Huntington) |
| 11310 Center Highway Realty, LLC (KRAG Mazda) |
| 11331 US 30 Realty, LLC (KRAG Subaru) |
| 11333 US 30 Realty, LLC (KRAG KRAG Mazda) |
| 18476 Route 11 Realty, LLC (FX CDJR Watertown) |
| 18478 US Route 11 Realty, LLC (FX Used Cars) |
| 18493 Route 11 Realty LLC (FX VW) |
| 18675 US Route 11 Realty, LLC (FX Kia) |
| 18712 US Route 11 Realty, LLC (FX Used Crs) |
| 18447 US Route 11 Realty, LLC (FX Watertown) |
| 22010 Perry Highway Realty, LLC (KRAG Chevy Cranberry) |
| 22030 Perry Highway Realty, LLC (KRAG Nissan) |
| 44170 NY – 12 Realty LLC (FX CDJR Alexandria Bay) |
| Advent Rehabilitation, LLC |
| AGR Customer Service, LLC (dba EnergyCare) |
| AGR Group, LLC |
| AGR Group Nevada, LLC |
| AGPB Holdings, LLC |
| Agility Health Rehabilitation, LLC |

---

[1] Any affiliates, subsidiaries, predecessors, or successors of the entities listed herein are considered Portfolio Companies.

| |
|---|
| Alexium International Group Ltd. Inc. |
| Aliantza Caribe Holdings, LLC |
| All Global Resources, LLC |
| Alliance Intermediate HoldCo, LLC |
| Alliance Physical Therapy Group, LLC dba Amor Physical Therapy, Holland Physical Therapy |
| Alliance Physical Therapy Partners, LLC |
| Ally HR Group, Inc. |
| Alvin Autoworld LLC (dba Ron Carter Ford/Chrysler) |
| AMR Auto Holdings LN, LLC |
| AMR Auto Holdings TH, LLC |
| AMR Auto Holdings TO, LLC |
| AMR Auto Holdings TY, LLC |
| AMR Auto Holdings – AC, LLC (Prime Acura) |
| AMR Auto Holdings – AM, LLC (Subaru Manchester) |
| AMR Auto Holdings – BG, LLC (Buick/GMC) |
| AMR Auto Holdings – BN, LLC (dba South Shore BMW) |
| AMR Auto Holdings – NB, LLC (dba BMW of Norwood) |
| AMR Auto Holdings – CH, LLC (Prime Chevrolet) |
| AMR Auto Holdings – FA, LLC (Ford) |
| AMR Auto Holdings – HNR, LLC (dba Prime Honda 128) |
| AMR Auto Holdings – JS, LLC (dba Prime CDJR) |
| AMR Auto Holdings – LC, LLC (Land Rover Cape) |
| AMR Auto Holdings – LH, LLC (Land Rover) |
| AMR Auto Holdings – MH, LLC (Mercedes Hanover) |
| AMR Auto Holdings – MM, LLC (Mercedes) |
| AMR Auto Holdings – MN, LLC (dba Prime Mazda) |
| AMR Auto Holdings – MINR, LLC (dba South Shore Mini) |
| AMR Auto Holdings-MW, LLC (Mercedes Westwood) (also dba Prime Collision Center) |
| AMR Auto Holdings – NC, LLC (Norwell Collision Center) |
| AMR Auto Holdings – PA, LLC (Porsche Audi) |
| AMR Auto Holdings – PO, LLC (Porsche of Westwood) |
| AMR Auto Holdings – SH, LLC (Prime Subaru Hyannis) |
| AMR Auto Holdings – SN, LLC (Subaru) |
| AMR Auto Holdings – SM, LLC (Subaru Manchester) |
| AMR Auto Holdings – VH, LLC (Volvo) |
| AMR Auto Holdings VWN, LLC (dba Volkswagen of Norwoood) |
| AMR Auto Holdings – WPWN, LLC |
| AMR Real Estate Holdings, LLC |
| Armada E&P OH, LLC (dba Buckeye Water Services) |

| |
|---|
| Armada WM SLP, LLC |
| Armada WM Real Estate Holdings, LLC |
| Armada Waste Management, LP |
| Armada Waste Management GP, LLC |
| Armada Waste Management Holdings, LLC |
| Armada Waste MA, LLC |
| Armada Waste MA II, LLC (dba Sunrise Scavenger) |
| Armada Waste NJ, LLC |
| Armada Waste OH, LLC |
| Armada Waste OH-OH, LLC (dba Capitol Waste and Recycling Services) |
| Armada Waste OH-PA, LLC (dba Iron City Express) |
| Armada Waste VA-MD, LLC |
| Armada Waste VA, LLC |
| Armada Waste Portfolio, LLC |
| Arrow Physical Therapy & Rehabilitation, LLC |
| Automile Holdings, LLC |
| Automile Parent Holdings, LLC |
| Automile TY Holdings, LLC |
| AVPI Maryland LLC |
| Babar Enterprises, LLC (dba Excel Sports and Physical Therapy) |
| Back in Motion Physical Therapy, LLC |
| Biocorrect, LLC |
| Biotex Pharma Investments II LLC |
| Blackhill Road Realty, LLC (KRAG Ford North Huntington) |
| Block 5020 Finance, LLC |
| Block 5020 Finance II, LLC |
| Boerum Hill LLC |
| Border Therapy Services, LLC |
| Cantata Health, LLC |
| Capstone Automotive Group, LLC |
| Capstone Automotive Group II, LLC |
| Capstone Automotive Group III LLC |
| Capstone Cars of Syracuse LLC (dba FX Caprara Auto Sales) |
| Capstone KRAG Holdings, LLC |
| Cardio Focus |
| Casa Inc. |
| Continuum Wellness Clinic, LLC |
| Dance Biopharm Holdings, Inc. & Dance Biopharm |
| D1 Holdings, LLC |

| |
|---|
| DecisionOne Corp. |
| DJD Holdings LLC |
| DJD Holdings 2 LLC |
| Duos Technology Inc. |
| Emmaus |
| Energy Professionals, LLC |
| Environmental Packing Technologies, Inc. |
| Erus Holdings, LLC |
| Franklin Rehabilitation, Inc. |
| FX Caprara Chevrolet Buick LLC (dba FX Caprara Chevrolet Buick) |
| FX Caprara CDJR of Watertown LLC (dba FX Caprara CDJR of Watertown) |
| FX Caprara VW, LLC (dba FX Caprara VW) |
| GK Brand, LLLP |
| Guided Therapeutics |
| GPB Auto SLP, LLC |
| GPB Cars 12 LLC (dba North Plainfield Nissan) |
| GPB Cold Storage Holdings I, LLC |
| GPB Cold Storage Holdings II, LLC |
| GPB Cold Storage Holdings III, LLC |
| GPB Debt Holdings II, LLC |
| GPB Debt Holdings III, LLC |
| GPB Energy Holdings, LLC |
| GPB Energy Holdings III, LC |
| GPB H2 SLP, LLC |
| GPB H3 SLP, LLC |
| GPB H II SLP, LLC |
| GPB HPI Holding LLC |
| GPB Holdings Automotive, LLC |
| GPB Holdings III GP, LLC |
| GPB IT Holdings, LLC |
| GPB IT Holdings II, LLC |
| GPB IT Holdings III, LLC |
| GPB Life Science Holdings, LLC |
| GPB NYC Development LP |
| GPB NYCD SLP LLC |
| GPB PEO Acquisition, LLC |
| GPB PEO Holdings, LLC |
| GPB Portfolio Automotive, LLC |
| GPB Prime |

| |
|---|
| GPB Prime Holdings, LLC |
| GPB Riverwalk LLC |
| GPB SLP, LLC |
| GPB Special Situations III, LLC |
| GPB Waste Holdings III, LLC |
| GPB Waste NY LLC (dba Five Star Carting, LLC) |
| Great Neck Ford, LLC (Tower Ford) |
| Greenwave Energy, LLC |
| Greenwave Energy Holdings, LLC |
| Hanover Automotive Holdings, LLC |
| HIS Holdings, Inc. |
| HPI Parent Delaware LLC |
| Health Prime International, LLC (HPI) |
| Health Prime International Maryland LLC |
| Health Prime Services Pvt. Ltd. |
| Health Prime Services Costa Rica S.R.L. |
| Health-Right Discoveries, Inc. |
| Hotel Internet Services LLC |
| Hyannis Automotive Holdings, LLC |
| Hycor Biomedical Inc. |
| Icagen |
| Insightra Medical, Inc. |
| Intelagen, LLC |
| IP Light Inc. |
| Joe Morea & Sons Private Sanitation, Inc. |
| Kinestral, Inc. |
| KRAG Chevrolet of North Huntington, LLC (dba Kenny Ross Chevrolet) |
| KRAG Chevrolet of Somerset, LLC (dba Kenny Ross Chevrolet Cadillac) |
| KRAG Ford of Adamsburg, LLC (dba Kenny Ross Ford South) |
| KRAG Ford of Pittsburgh, LLC (dba Kenny Ross Ford N Huntington) |
| KRAG Holdings, LLC |
| KRAG M, LLC (dba Kenny Ross Mazda) |
| KRAG Subaru, LLC (dba Kenny Ross Subaru) |
| Lash Realty LLC |
| LUPO LLC |
| Matrix PEO Holdings, LLC |
| MDS Medical, LLC |
| Medite Cancer Diagnostics, Inc. |
| Meta Healthcare IT Solutions, LLC |

| |
|---|
| Meta Holdings, Inc. |
| Micro Development Services |
| Moblty, INc. |
| MTECH Holdings LLC |
| MTF Realty, LLC |
| Mud Masters, LLC |
| NS Halo LLC |
| On-Demand Container, LL |
| Orangeburg Subaru LLC (Bill Kolb, Jr. Subaru) |
| Panther Physical Therapy, LLC |
| Peak Performance Sports and Physical Therapy, LLC |
| PM Waste & Rubbish Contractors, LLC |
| Power 3 Partners, LLC |
| Prime Managed Billing LLC |
| Project Halo Buyer, LLC |
| Project Halo Holdings, LLC |
| Pulaski Ford LLC (dba FX Caprara Ford) |
| Q1 Holding LLC |
| Quantum Energy Holdings, LLC |
| Quello Holdings, LLC |
| Rockville Center GMC LLC (dba Rockville Center) |
| Rehab Access, Inc. |
| Riverwalk Tower LLC |
| Riverwalk Tower Member LLC |
| Rollover Partners |
| Ron Carter Accessories, LLC |
| Ron Carter Autoworld LLC (dba Ron Carter Chevy Buick GMC) |
| Saco Auto Holdings – FLMM, LLC (Mazda, Ford Lincoln/Mercury) |
| Saco Auto Holdings – HN, LLC (Honda North) |
| Saco Auto Holdings – VW, LLC (Volkswagen) |
| Sales Verification Company, LLC |
| Sawdran, LLC (Mercedes) |
| Skinquarter Land, LLC |
| Specialists in Sports & Orthopedic Rehabilitation, LLC |
| Sports & Orthopedic Leaders Physical Therapy, Inc. |
| Staretz LLC (Hyundai) |
| Staten Island Buick GMC LLC |
| Staten Island Carting, Inc. |
| Surge PEO Holdings, LLC |

| |
|---|
| Tactual Labs |
| TeamWorks Marketing, LLC |
| Theragen LLC |
| TRD Riverwalk LLC |
| Trinity Health MI / Saint Mary's |
| U.S. Power & Gas Inc. |
| Utilities Marketing Group, LLC (dba AGR Group) |
| Utility Sales Management LLC (dba Executive Energy) |
| Westchester Buick GMC LLC (dba White Plains Buick GMC) |
| Whatcom Physical Therapy, Inc. P.S. |
| Work-Fit, LLC |
| World CDJR LLC |
| World Subaru LLC |

## EXHIBIT B ("GPB FUNDS")[1]

| |
|---|
| Armada Waste Management, LP (fka GPB Waste Management, LP) |
| GPB Automotive Income Fund, Ltd. |
| GPB Automotive Portfolio, LP |
| GPB Cold Storage, LP |
| GPB Holdings, LP |
| GPB Holdings Qualified, LP |
| GPB Holdings II, LP |
| GPB Holdings III, LP |
| GPB NYC Development, LP |

---

[1]     Any affiliates, subsidiaries, predecessors, or successors of the entities listed herein are considered GPB Funds.

## EXHIBIT C ("CONFIDENTIALITY UNDERTAKING")

**Undertaking with Respect to the Amended Order Appointing Monitor in**
***Securities and Exchange Commission v. GPB Capital Holdings, LLC***
***No. 21-cv-00583 (MKB) (VMS)***

I, _____, on behalf of _____, have read the foregoing Amended Order Appointing Monitor ("Amended Order"), understand the terms of the Amended Order, including paragraph 45 of the Amended Order, and agree to be bound by its terms.

Signed: _____
        Name: _____
        Title:  _____
        Agency:_____

Dated: _____, 2021

2

24