UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------- x
SECURITIES AND EXCHANGE          :
COMMISSION,                      :
                                 :
                Plaintiff,       :
                                 :
        -against-                :      **REPORT AND RECOMMENDATION**
                                 :
GPB CAPITAL HOLDINGS, LLC,       :      21 Civ. 583 (MKB) (VMS)
ASCENDANT CAPITAL, LLC,          :
ASCENDANT ALTERNATIVE            :
STRATEGIES, LLC, DAVID GENTILE,  :
JEFFREY SCHNEIDER, and JEFFREY   :
LASH,                            :
                                 :
                Defendants.      :
----------------------------------------------------- x

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Securities and Exchange Commission ("Plaintiff") commenced this action

against Defendants GPB Capital Holdings, LLC ("GPB"); Ascendant Capital, LLC ("Ascendant

Capital"); Ascendant Alternative Strategies, LLC ("Ascendant Strategies"); David Gentile ("Mr.

Gentile"); Jeffrey Schneider ("Mr. Schneider"); and Jeffrey Lash ("Mr. Lash"[1] and, collectively

with GPB, Ascendant Capital, Ascendant Strategies, Mr. Gentile and Mr. Schneider,

"Defendants").  See ECF No. 1.  Plaintiff alleged claims (1) against GPB, Ascendant Capital,

Ascendant Strategies, Mr. Gentile and Mr. Schneider for violations of 15 U.S.C. § 77q(a); (2)

against Mr. Gentile, Mr. Schneider and Mr. Lash for aiding and abetting violations of 15 U.S.C.

§ 77q(a) pursuant to 15 U.S.C. § 77o(b); (3) against GPB, Ascendant Capital, Ascendant

Strategies, Mr. Gentile and Mr. Schneider for violations of 15 U.S.C. § 78j(b) and 17 C.F.R. §

---

[1] The District Court entered a consent judgment as to Mr. Lash on June 9, 2023.  See ECF No.
150.

240.10b-5; (4) against Mr. Gentile, Mr. Schneider and Mr. Lash for aiding and abetting violations of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 pursuant to 15 U.S.C. § 78t(e); (5) against GPB and Mr. Gentile for violations of 15 U.S.C. §§ 80b-6(1) and 80b-6(2); (6) against Mr. Gentile for aiding and abetting violations of 15 U.S.C. §§ 80b-6(1) and 80b-6(2) pursuant to 15 U.S.C. §§ 80b-9(d) and 80b-9(f); and (7) against GPB for violations of 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-2, 15 U.S.C. § 80b-6(4) and 17 C.F.R. § 275.206(4)-7, 15 U.S.C. § 78l(g), and 15 U.S.C. § 78u-6 and 17 C.F.R. § 240.21F-17(a).  See id.

The Court appointed a monitor, Joseph T. Gardemal III (the "Monitor"), over GPB.  See ECF Nos. 23, 39.  Mr. Gentile filed a motion for relief from the Amended Order Appointing Monitor (the "Amended Order"), see ECF No. 39, pursuant to Fed. R. Civ. P. 60(b)(5), see ECF Nos. 79, 80, 81, 82 & 83.  Plaintiff, see ECF No. 85, and interested party Bohenkamp Living Trust ("Bohenkamp"), see ECF No. 86, each filed informal letter responses to the motion.  Mr. Gentile then filed an informal letter response to Plaintiff's letter response.  See ECF No. 87. Plaintiff opposed.  See ECF No. 96.  Mr. Gentile replied.  See ECF No. 98.

Plaintiff filed a motion requesting that the Monitor be appointed as a receiver and that the Court impose a litigation injunction.  See ECF Nos. 88, 89, 90 & 91.  Ascendant Capital and Mr. Schneider opposed.  See ECF No. 99.  Mr. Lash filed a response in support of Plaintiff's position.  See ECF No. 100.  GPB filed a response in support of Plaintiff's position.  See ECF No. 101.  Mr. Gentile opposed.  See ECF No. 102.  Plaintiff replied.  See ECF Nos. 103, 104 & 105.  The Monitor filed an informal letter response to the motion.  See ECF No. 130.  Mr. Gentile then filed an informal letter response to the Monitor's letter response.  See ECF No. 131.

## I.     MR. GENTILE'S MOTION FOR RELIEF FROM THE AMENDED ORDER

Because the relief requested in Mr. Gentile's motion for relief from the Amended Order

and the relief requested in Plaintiff's motion are mutually exclusive, the Court's decision,

discussed below, to respectfully recommend that the District Court grant Plaintiff's motion

would render Mr. Gentile's motion for relief from the Amended Order moot, should the District

Court adopt the report and recommendation.[2]

## II.     PLAINTIFF'S MOTION TO CONVERT THE MONITORSHIP TO A RECEIVERSHIP AND IMPOSE A LITIGATION INJUNCTION

Plaintiff's motion has two components: a request for the conversion of the monitorship to

a receivership and a request for the imposition of a litigation injunction.  See ECF No. 89.  As an

initial matter, the Court notes that the chief executive officer of GPB and its wholly owned

subsidiary, Highline Management Inc. ("Highline"), both of which would be covered by the

---

[2] Mr. Gentile's motion for relief from the Amended Order was filed pursuant to Federal Rule of Civil Procedure 60(b), which provides, in pertinent part, that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged[,] . . . or applying it prospectively is no longer equitable."  The Advisory Committee notes to the Rule expressly state that the word "final" applies to the judgments, orders and proceedings within the scope of the Rule:

> [t]he addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment.  A final "order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision."  Petrello v. White, 533 F.3d 110, 113 (2d Cir. 2008) (citation omitted).  The Amended Order falls outside the scope of this definition.  Further, the Court's independent research has not located a decision of a federal court applying Federal Rule of Civil Procedure 60(b) to a non-final order appointing a monitor.  The filing of Mr. Gentile's motion pursuant to an inapplicable Federal Rule of Civil Procedure would constitute an independent basis for denial of the motion.  If the District Court were not to adopt the recommendation to appoint a receiver, the Court respectfully would recommend that Mr. Gentile's motion be denied on these procedural grounds.

receivership, have consented to the motion.  See ECF No. 91-1 at 2.[3]  For the reasons set forth

below, the Court respectfully recommends that the District Court grant both requests.

### A.    Receivership

The Court addresses the positions of the parties as to the requested receivership, then

discusses the applicable legal standard in the context of the circumstances presently before the

Court.

### i.    Positions Of The Parties[4]

Plaintiff, Ascendant Capital and Mr. Schneider, Mr. Lash, GPB and Mr. Gentile each

submitted filings in relation to Plaintiff's motion, as summarized below.[5]

### a.    Plaintiff

Plaintiff argues for the conversion of the monitorship to a receivership on the basis of the

Court's equitable power to fashion remedies for federal securities law violations, see ECF No. 89

---

[3] The [Proposed] Order Appointing Receiver and Imposing Litigation Injunction (the "Proposed Order") sets forth the proposed receivership entities at Schedule 1: GPB, Highline, two entities characterized as "general partners," ten entities characterized as "LP (GPB Fund)," and six entities characterized as "SLP."  See ECF No. 91-1 at 27.  In the text of the Proposed Order, Plaintiff describes GPB as the general partner of eight limited partnerships, defined as the "GPB Funds," each owning or having owned controlling interests in various operating companies, and describes the "GPB Funds" as having approximately 17,000 limited partner investors.  See id. at 1-2.  The Proposed Order defines the proposed receivership assets as all assets and proceeds of the proposed receivership entities.  See id. at 2-3.  On or before August 2, 2023, Plaintiff is to file a letter clarifying the relationships among the proposed receivership entities, particularly as to the "GPB Funds," given the apparent inconsistency as to whether they amount to eight or ten.  If an amendment to the Proposed Order is needed, Plaintiff should submit the proposed revised text.

[4] By considering the submissions of Ascendant Capital and Mr. Schneider, Mr. Lash and Mr. Gentile, the Court does not find that they have standing to respond, but, rather, the Court considers the arguments in the interest of completeness.

[5] In his submission pertaining to factual updates invited by the Court, the Monitor states "that the Monitor has continued to hear directly from aggrieved investors seeking the return of their remaining investment capital."  ECF No. 144 at 1.

at 12, and GPB's violation of the Amended Order, through the actions of Mr. Gentile, see id. at 13-14.  By way of background, the original Order Appointing Monitor (the "Original Order") was entered as "necessary and appropriate for the protection of investors."  ECF No. 23 at 1.

As to the former, Plaintiff contends that the need for the Court to exercise its equitable powers to convert the monitorship to a receivership, both inherent and conferred by 15 U.S.C. § 78u(d)(5), arises from (1) Mr. Gentile's purported appointment of three new managers to GPB's board of managers and direction of the current GPB chief executive officer to cooperate with such newly appointed managers, see ECF No. 89 at 8, 13; (2) the purported subsequent modification of the Limited Liability Company Agreement of GPB Capital Holdings, LLC, dated March 20, 2013 (the "LLC Agreement"), by Mr. Gentile and the three purported new managers "to benefit [Mr.] Gentile personally, continuing his pattern of self-dealing," by (a) providing for increased access to information for Mr. Gentile and the three purported new managers, (b) affording "lucrative compensation packages" to the three purported new managers, (c) permitting further amendments to the LLC Agreement by unilateral action of Mr. Gentile, (d) requiring tax distributions to Mr. Gentile, (e) conferring exclusive jurisdiction to the Delaware Chancery Court for all actions relating to the LLC Agreement, and (f) providing for advanced expenses, see id.; (3) Mr. "Gentile's distortion of the factual record in an effort to gain control over GPB, . . . [its f]unds, and the $1 billion in cash earmarked for investors," including his contentions (a) that he is the sole owner of GPB, where GPB is the general partner of its funds having beneficial owners of approximately 17,000 investors, (b) that GPB's funds are required to follow Mr. Gentile's original investment strategy, and (c) that the Monitor and current GPB management are not properly managing the assets of GPB's funds, see id. at 9-10; and (4) the inability of GPB management and Highline "to provide any actionable distribution plan or proposal to the

Monitor for his approval," despite "the availability of significant cash holdings approximating $1 billion," largely due to the "ill-defined duties" of Highline's board of directors "and the circuitous governance framework between it and GP[B] . . . management," see id. at 10.

As to the latter, Plaintiff relies upon the Amended Order in asserting that Mr. "[G]entile has caused GPB['s] . . . direct violation of . . . provisions" requiring approval by the Monitor of "appointment of any management-level professional or person, or any material change to compensation of any executive officer, affiliate, or related party." ECF No. 103 at 7. Plaintiff further notes that paragraphs 24 and 25 of the Amended Order contemplate the conversion of the monitorship to a receivership. See id.

In its reply, Plaintiff also responds to the assertion in Mr. Gentile's opposition, as well as the assertion in the opposition of Ascendant Capital and Mr. Schneider, as to Plaintiff's lack of discussion on the likelihood of success. See ECF No. 103 at 9-12.

In its supplemental submission pertaining to factual updates invited by the Court, Plaintiff states (1) that Mr. Gentile "still has made no attempt to bring GPB . . . back into compliance with the [Amended] . . . Order by rescinding his appointment of his nominees notwithstanding his knowledge that his action has further delayed a return of funds back to investors," ECF No. 142 at 2; (2) that "investors are no closer to having access to their funds," id.; and (3) that Mr. "Gentile's pre-trial motion to dismiss his indictment in his criminal case was denied," with that trial set for June 3, 2024, id. (citations omitted); see also USA v. Gentile, No. 21 Crim. 54 (DG) (PK), ECF No. 210 (E.D.N.Y. Apr. 17, 2023).

### b.    Ascendant Capital And Mr. Schneider

The Court notes that Ascendant Capital and Mr. Schneider do not address, let alone dispute, Plaintiff's contentions that Mr. Gentile purported to appoint three new managers and

that Mr. Gentile and the three new purported managers amended the LLC Agreement.  See supra, Sec. II(A)(i)(a).  Instead, as to both, Ascendant Capital and Mr. Schneider disagree as to the legal conclusions to be drawn from such conduct.  Thus, the Court does not need to conduct fact-finding on this motion, but rather evaluates the legal arguments offered.  Nonetheless, for completeness, the Court considers the position of Ascendant Capital and Mr. Schneider.

Ascendant Capital and Mr. Schneider contend that "the SEC has failed to meet [its] . . . extremely high burden" including, for example, by failing to address its likelihood of success on the merits of its claims.  ECF No. 99 at 10.

### c.    Mr. Lash

Mr. Lash supports Plaintiff's application.  See ECF No. 100 at 1; see also supra, n. 1.

### d.    GPB

GPB supports Plaintiff's motion, as GPB "supports [Plaintiff's] . . . efforts to expedite the distribution of money to investors through the conversion of a monitorship to a receivership under" the Monitor and to avoid "unnecessary and exorbitant expenditures flowing from [Mr.] Gentile's recent purported amendments to the Company's operating agreement."  ECF No. 101 at 2-3.

In its supplemental submission pertaining to factual updates invited by the Court, GPB states (1) that, "in the last year[, Mr. Gentile] . . . has at least twice falsely represented himself to be a Manager of GPB or a GPB-related entity," ECF No. 143 at 1 n.1; (2) that "investors are being taxed on income that they have not received," id. at 3; (3) that "[f]ive major financial institutions . . . denied applications to open new accounts for [GPB] . . . and the Funds because of Mr. Gentile's continued ownership of GPB and the financial institutions' concerns about the limited controls offered by the Amended . . . Order," id.; and (4) that GPB "and the Funds have

continued to incur substantial litigation defense costs for several pre-existing civil cases which reduce the amount of cash available for distribution to limited partners," id. at 3-4.

### e.    Mr. Gentile

The Court notes that Mr. Gentile does not dispute the Plaintiff's contention, see supra, Sec. II(A)(i)(a), that Mr. Gentile purported to appoint three new managers.  See, e.g., ECF No. 102 at 5 (referring to Mr. Gentile's "appointment of supplemental GPB managers"); id. at 6 (noting that Mr. Gentile "appoint[ed] supplemental managers"); id. at 7 (noting Mr. Gentile's "announce[ment] [of] his contemporaneous appointment of additional managers"); id. at 16 (stating that "Mr. Gentile . . . appointed three new managers").  Mr. Gentile does not directly address, let alone dispute, Plaintiff's contention, see supra, Sec. II(A)(i)(a), that Mr. Gentile and the three new purported managers attempted to amend the LLC Agreement; Mr. Gentile does, however, implicitly recognize such fact when referring, in the plural form, to "GPB[']s operating agreements."  ECF No. 141 at 3.  Instead, as to both, Mr. Gentile disagrees as to the legal conclusions to be drawn from such conduct.  Thus, the Court need not conduct fact-finding on the alleged appointments and LLC Agreement amendment, but rather it evaluates the legal arguments offered.

Mr. Gentile opposes Plaintiff's application, arguing that no imminent danger of the diminution or loss of GPB's assets is present to necessitate the appointment of a receiver, as (1) Mr. Gentile's purported appointment of three new GPB managers (a) was done in view of the Court, the United States Attorney's Office, Plaintiff, the Monitor and investors, (b) does not infringe upon the Monitor's oversight authority, and (c) was of experienced individuals; (2) GPB has recently experienced "dramatic financial success," with its "maximum valuation . . . yet to be achieved"; (3) the Monitor, if appointed as a receiver, would be subject to "multiple claims of

breach of fiduciary duty by investors who are unsatisfied with their returns because the receiver prematurely liquidated GPB's assets and failed to act in keeping with GPB's business strategy"; (4) Plaintiff has not presented evidence as to its likelihood of success on the merits of its claims; and (5) the Monitor's continued oversight of GPB is sufficient.  ECF No. 102 at 20-25.

In his supplemental submission pertaining to factual updates invited by the Court, in which Ascendant Capital and Mr. Schneider joined, Mr. Gentile states (1) that "the Monitor has admitted to already preparing a plan for distributions to investors" and being "in a position to make distributions"; (2) that Mr. Gentile has "affirmed his express support" for "GPB making distributions to investors" and for "GPB's ability to make distributions, without converting to a receivership, as supported by the relevant facts and circumstances related to each fund and investor . . . in accordance with the relevant funds' governing documents, applicable law, and binding court decisions"; (3) that "the Monitor has inexplicably failed to take any further action" as to making distributions to investors" and, along with GPB, has made "baseless claims to excuse their inaction and wrongfully deflect blame to Mr. Gentile and others," including in an April 27, 2023 letter to GPB investors referencing ongoing legal expenses in relation to the failure to make distributions; (4) that GPB investors have "unequivocally opposed the receivership and have expressed frustration with the . . . alienation of them and Mr. Gentile" by the Monitor and GPB; (5) that the Monitor and his counsel have incurred "significant fees . . . , including for work that exceeds the scope of the Amended . . . Order"; and (6) that "the Monitor has deliberately refused to engage and cooperate with Mr. Gentile – in his ongoing role as the 'Tax Matters Partner' responsible for all of . . . [GPB's] tax obligations – and with GPB creditors of past-due loans," resulting in "completely avoidable litigation" commenced by Mr. Gentile and creditors.  ECF No. 141 at 1-3.

### ii.    Discussion

Plaintiff seeks for the Court to appoint the Monitor as a receiver on two independent bases: (1) the Amended Order, see ECF No. 89 at 13, and (2) the Court's statutory and equitable power to remedy violations of federal securities laws, see id. at 12-15.  The Court addresses each in turn below.

### a.    The Amended Order

The Court below sets forth the legal standard for enforcing the Amended Order; identifies and discusses the relevant provisions of the Amended Order; and respectfully recommends that the District Court find that, based on the undisputed facts, GPB, through the actions of Mr. Gentile and the three new managers purportedly appointed by him, violated the Amended Order.

### 1.    Legal Standard

Courts are empowered to "take any reasonable action . . . to secure compliance" with their orders, with the "choice of how to enforce the order . . . reviewed for abuse of discretion." In re Tronox Inc., 855 F.3d 84, 112 (2d Cir. 2017) (citations & quotations omitted).  As set forth below, the Court has the authority to exercise the powers set forth in the Amended Order.  See infra, Sec. II(A)(ii)(b).

### 2.    Relevant Provisions Of The Amended Order

Paragraph 6 of the Amended Order provides that

[t]he Monitor will have the authority to approve or disapprove the following actions:

* * *

d. any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;
e. any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation

commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor.

ECF No. 39 at 3.

Paragraph 20 of the Amended Order provides that, "[i]f the Monitor believes GPB is in some way not materially in compliance with the terms of this Order, upon notice of noncompliance to GPB, GPB shall have 10 business days in which to cure any claimed material noncompliance (the 'Cure Period')." Id. at 7.  Paragraph 21 of the Amended Order provides that,

[i]f GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership.  GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership.

Id.[6]  Both Plaintiff and GPB consented to the entry of the Amended Order, as well as the Original Order, see id. at 1, and Mr. Gentile did not oppose the imposition of the monitorship, see ECF No. 102 at 12.

---

[6] Plaintiff also relies on paragraphs 24 and 25 of the Amended Order.

Paragraph 24 required the Monitor to "submit a report to the Court within 60 days of his initial appointment recommending either continuation of the monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities.  The Monitor may seek to extend the 60-day period for good cause shown."  ECF No. 39 at 7.

Plaintiff does not seek relief pursuant to paragraph 24 of the Amended Order but rather cites it (1) in the context of its explanation for the Monitor's decision to decline to earlier recommend the conversion of the monitorship to a receivership and (2) to argue that "[t]he fact that the Monitor Order itself, which [Mr.] Gentile was aware of and did not oppose, contains provisions that contemplate the conversion of the monitorship to a receivership confirms that the appointment of a receiver under the particular circumstances of this case is not an extraordinary remedy."  ECF No. 103 at 7.

Paragraph 25 permits the Monitor to,
within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship.  GPB shall be afforded the opportunity to

### 3. Analysis

In his capacity as "the Member holding 99% of the Distribution Percentage of GPB,"[7]

Mr. Gentile notified GPB of his appointment of "three new, additional Managers to direct GPB,"

pursuant to Article VI, Section 1[8] and Article VII, Section 1(e)[9] of the LLC Agreement.[10]  ECF

---

respond to the Monitor's recommendation to the Court regarding any proposed
expansion or continuation of the Monitorship.
ECF No. 39 at 7-8.

The rationale for Plaintiff's citation to paragraph 25 of the Amended Order is not expressly stated, but the Court construes such citation as an attempt to evidence the Amended Order's contemplation of the Monitor's continuing review of his own authority, rather than as a request for relief pursuant to that provision of the Amended Order.  See ECF No. 103 at 7.

[7] The LLC Agreement reflects that Mr. Gentile is the sole Member of GPB, with its entire distribution percentage.  See ECF No. 102-4 at 35.  The source of the discrepancy in the distribution percentages is unclear from the record; however, the recitation of facts assumed to be true in the expert opinion of former Justice of the Delaware Supreme Court Jack B. Jacobs (the "Expert") includes, without citation, the statements that Mr. "Gentile came to be the holder of 99% of the Distribution Percentage (i.e., Member interests) in GPB . . . directly and in his personal capacity" and that "Mr. Gentile controls indirectly the remaining 1% that is held of record by GPB Capital Member, Inc., of which Mr. Gentile is the sole shareholder and the President."  See ECF No. 102-7 at 4-5; see also id. at 9 (stating, without citation, that "GPB Capital Member, Inc., an entity wholly owned by Mr. Gentile, was admitted as an additional member with a 1% Distribution Percentage interest effective as of October 18, 2018").

[8] Article VI, Section 1 provides, among other things, that "[t]he number of Managers may be increased or decreased by resolution of the Members[,] and any vacancies created by an increase shall be filled by the Members."  ECF No. 102-4 at 18.

[9] Article VII, Section 1(e) provides, in pertinent part, that
    [a]ny action which may be taken at a meeting of Members may be taken without a
    meeting, without prior notice and without a vote, if a consent or consents in
    writing, setting forth the action so taken, shall be signed by the Members having
    not less than a majority of the total Distribution Percentages and shall be
    delivered to the Company by delivery to its registered office, its principal place of
    business or to an officer or agent of the Company having custody of the books in
    which proceedings of Members are recorded.
ECF No. 102-4 at 20.

[10] The LLC Agreement defines various terms pertinent to the discussion here.

No. 102-3 at 2.  Per paragraph 20 of the Amended Order, the Monitor notified GPB, with copies to his counsel, GPB's counsel, Plaintiff, and Mr. Gentile and his counsel, that the Monitor had been informed that Mr. Gentile had purported to take the following actions: "(i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation with respect to non-employee Managers."  ECF No. 102-6 at 2.  The Monitor therefore provided the GPB notice that these purported actions, among other things, violated Sections 6(d) and 6(e) of the Amended

---

"Member" is defined as

> any Person named as a member of the Company on <u>Schedule A</u> hereto and includes any Person admitted as an Additional Member or a Substitute Member pursuant to the provisions of this Agreement, and "Members" means two or more of such Persons when acting in their capacities as members of the Company.  For purposes of the Delaware Act, the Members shall constitute one class or group of members.

ECF No. 102-4 at 12.

"Manager" or "Managers" is defined as "the Persons designated by Members in Article VI, Section 1 hereof to act collectively as the manager of the Company within the meaning of the Delaware Act and shall include all successors appointed pursuant to the provisions of this Agreement."  <u>Id.</u> at 12.  Article VI, Section 1 provides, among other things, that "[t]he management of the Company's business shall be vested in its Managers designated as provided in this Article VI, Section 1 and referred to as Managers in this Agreement."  <u>Id.</u> at 18.

"Person" is defined as "any individual, corporation, association, partnership (general or limited), joint venture, trust, estate, limited liability company, or other legal entity or organization."  <u>Id.</u> at 12.

"Company" is defined as "GPB Capital Holdings, LLC, the limited liability company formed under and pursuant to the Delaware Act and this Agreement."  <u>Id.</u> at 11.

"Delaware Act" is defined as the Delaware Limited Liability Company Act, 6 Del. C. §§ 18-101 <u>et</u> <u>seq.</u>  <u>See</u> <u>id.</u>

"Agreement" is defined as "this Limited Liability Company Agreement, as amended, modified, supplemented or restated from time to time."  <u>Id.</u> at 10.

Order, "that the Company ha[d] ten . . . business days in which to cure the Material Non-Compliance, and [that] if such cure does not occur . . . , the remedies described in Section 21 of the Amended Order may be invoked with immediate effect." Id. at 2-3. The absence of curative action is not in dispute by any of the parties addressing the issue, namely Plaintiff and Mr. Gentile. See ECF No. 89 at 14 (Plaintiff stating that, "[u]pon information and belief, [Mr.] Gentile has failed to cure these GPB . . . breaches, which he caused"); ECF No. 102 at 21 (Mr. Gentile contending that "there was nothing illegal, inappropriate or untoward in Mr. Gentile's appointment of additional managers"); ECF No. 103 at 8 (Plaintiff referring to Mr. "Gentile's attempt to assert managerial control resulting in a serious uncured breach of the Monitor Order"). Plaintiff and Mr. Gentile do, however, disagree as to whether curative action was required.

As explained below, the Court respectfully recommends that the District Court find that Mr. Gentile's actions caused GPB to violate both paragraph 6(e) and paragraph 6(d) of the Amended Order.

### (a) Mr. Gentile's Actions Caused GPB To Violate Paragraph 6(e) Of The Amended Order, Warranting Relief Pursuant To Paragraph 21 Of The Amended Order.

Mr. Gentile's actions in purportedly appointing three new managers to GPB caused GPB to violate paragraph 6(e) of the Amended Order.

Mr. Gentile's raises two arguments as to why GPB did not violate paragraph 6(e) of the Amended Order, the first of which being a purported challenge to the effect of the Amended Order on his rights and the second of which being a textual argument based on the opinion of Mr. Gentile's expert, neither of which the Court finds persuasive.

First, Mr. Gentile contends that GPB is not empowered to unilaterally limit his right to appoint additional managers. See ECF No. 102 at 13 (stating that "without Mr. Gentile's

consent, the Company has no authority to limit his appointment rights"); id. at 21 (arguing that "Mr. Gentile was duly authorized under Delaware law and the Operating Agreement to appoint additional managers and that the Company cannot limit – even in its consent to the Monitor Order – those rights").

In support of this argument, Mr. Gentile cites paragraphs 16 and 17 of his Expert's opinion. See id. at 13, 21. Those portions of the Expert's opinion provide as follows:

> 16. The Operating Agreement contains no provision that limits or otherwise qualifies or restricts the power legally conferred upon the Members holding a majority of the Distribution Percentages to determine the number of Managers or to fill any newly created Manager positions. That statement is pertinent here, because I understand that the SEC has taken the position that Mr. Gentile is not a party to the Monitor Order entered by this Court (the Eastern District of New York). To the extent the SEC's contention presents a question of federal law, this Opinion expresses no view. However, if and to the extent the SEC's position rests on a claim that it or the Monitor has a superseding consent right to appoint the Managers for GPB, and insofar as that claim, in turn, rests on the proposition that GPB—the entity itself—was lawfully empowered to—and did—supersede the power of the Members to appoint Managers, (a) that proposition has no basis or support in Delaware law or the Operating Agreement; and (b) no Delaware court would validate or give legal effect to a Delaware LLC unilaterally arrogating unto itself its Members' exclusive contractual right to determine the number and identity of the LLC managers without the Members' prior consent.
>
> * * *
>
> 17. The foregoing analysis leads me to conclude that Mr. Gentile, as the Member holding a majority of the Distribution Percentages of the Company, was the person exclusively empowered to increase the number of its Manager positions and to fill the resulting Manager vacancies by written consent, so long as he satisfied the conditions prescribed by the Operating Agreement. Based upon the facts assumed here, Mr. Gentile satisfied those conditions. Therefore, a Delaware court would determine that the written consent actions Mr. Gentile took to increase the number of Managers and to fill the resulting vacancies were legally valid under Delaware law.

ECF No. 102-7 at 9-10.

Mr. Gentile's argument is not on point. The portion of the Expert's opinion cited concerns constraints on GPB's authority to limit Mr. Gentile's right to appoint managers. See id. Mr. Gentile's reliance on the Expert's assessment that GPB limited its own authority in a way

that thwarts Mr. Gentile's authority under the LLC Agreement, contrary to Delaware law, is based on a fundamentally incorrect assessment of the nature of the controlling document. GPB has not placed conditions on Mr. Gentile's right to appoint managers. Rather, by entering the Amended Order, the Court placed conditions on GPB retaining any "management-level" professional, which the Court understands to include the three new proposed managers, as discussed next. Both Plaintiff and GPB consented to the entry of the Amended Order, as well as entry of the Original Order, see ECF No. 39 at 1, and Mr. Gentile did not oppose the imposition of the monitorship, see ECF No. 102 at 12. Neither the Original Order nor the Amended Order has been appealed, and the Amended Order is the governing Order for limits on how GPB may operate. The question here is not whether Mr. Gentile can appoint managers under the LLC Agreement, but, rather, is whether any such managers may be retained by GPB; without the Monitor's approval, the answer is no. Mr. Gentile's attempted appointment has placed GPB in the untenable position of being able to comply only with either the Court's Amended Order or Mr. Gentile's attempted action. Because it can only choose to follow the Court's Amended Order, the attempted action by Mr. Gentile contrary to that of the Amended Order is a violation of the Amended Order. The Amended Order is not a contract entered into by GPB but an Order issued by the District Court, exercising its statutory and equitable authority. If that indirectly limits Mr. Gentile's powers under state law, so be it.

Second, Mr. Gentile argues that the Amended Order does not address the type of manager that he purportedly appointed. He contends that the "management-level professionals" described in paragraph 6(e) of the Amended Order, and over which the Monitor has the authority to approve or disapprove retention, are different than the "managers" defined in the LLC Agreement, three of which Mr. Gentile purported to newly appoint. See ECF No. 102 at 13

(stating that, "under Delaware law, ['managers'] are distinct from the 'management-level professionals' contemplated under Section 6(e) of the Amended Monitor Order" because "'managers' . . . are akin to corporate directors – whose appointment is not subject to approval by the Monitor – and not individuals bearing operational responsibilities, whose appointment is subject to approval by the Monitor" (emphasis in original)).  In support of this argument, Mr. Gentile relies upon the following statements in the Expert's opinion, as well as paragraphs 16 and 17 of the Expert's opinion referenced above:

> 9. The issues addressed in this Opinion are governed by the text of the Operating Agreement, which in turn derives its legal authority and force from the Delaware Limited Liability Act, 6 Del. C. § 18-101 et. seq. (the "LLC Act").  The Operating Agreement (described generically in the LLC Act as a "limited liability company agreement") is an agreement among its members that sets forth their collective intention "as to the affairs of a limited liability company and the conduct of its business."  LLC Act at § 101(9).  A "Member" of an LLC is an owner of the LLC, analogous to a stockholder of a corporation.  Membership typically requires formal admission to the LLC in accordance with LLC Act Section 18-301.  A "Manager" of an LLC, analogous to a director of a corporation, is "a person who is named as a manager of [the LLC] pursuant to [an LLC] agreement."  LLC Act at § 101[](12).

ECF No. 102-7 at 6.

Mr. Gentile's argument on this point is unpersuasive.  First, the Amended Order generally gives the Monitor two traunches of responsibility.  The first is to approve or disapprove major action that would fundamentally affect the structure, assets or liabilities of GPB.  The second is to review and comment on GPB operations in detail and to report on the findings of that review.  Paragraph 6(e) is the only subparagraph in the approval/disapproval paragraph 6 that relates to personnel and leadership of GPB.  In order for the Monitor to exercise sufficient control to support the legal and operational integrity of GPB, it is necessary and consistent with the Monitor's overall authority to bring within such authority oversight over all key leadership positions.  To permit the dilution of centralized authority without the Monitor's approval would

17

be inconsistent with the overall structure of the Monitor's powers and responsibilities.  Mr. Gentile's view that the voting authority of the sole manager could be diluted to one quarter of its current voting power, see ECF No. 89 at 6 n.5 (citation omitted); see ECF No. 102-4 at 18-19, Art. VI(2), without the Monitor's approval is inconsistent with the stewardship and oversight responsibilities required of the Monitor by paragraph 6 and would undermine the entire Amended Order.

Second, although Mr. Gentile cites paragraphs 9, 16 and 17 of his Expert's opinion in support of Mr. Gentile's contention that "managers" in the LLC Agreement and "management-level professionals" in the Amended Order are different, paragraphs 16 and 17 do not address this point, and paragraph 9 only partially addresses this point.  Paragraph 9 of the Expert's opinion partially addresses Mr. Gentile's contention, to the extent that it defines "[a] 'Manager' of an LLC, analogous to a director of a corporation, [as] . . . 'a person who is named as a manager of [the LLC] pursuant to [an LLC] agreement.  LLC Act at § 101[](12)."  Id. at 6.  The Expert does not take a position, however, on whether "management-level professionals" fall within the scope of this definition.  In fact, the Expert did not rely upon, let alone review, the Amended Order in rendering his opinion, and his opinion expressly states that it "addresses only the application of Delaware law to the facts assumed in this specific setting and is not intended to express any view on matters of federal law or the law of any other state or jurisdiction."  Id. at 5, 10.  Mr. Gentile's conclusory assertion that "management-level professionals" are those "bearing operational responsibilities" and that, because of such unsubstantiated definition, "management-level professionals" are not "managers" is unaddressed and unsupported by its sole citation to the Expert's opinion.  ECF No. 102 at 13.

Given the absence of a definition of "management-level professionals" provided by Mr. Gentile's Expert, the Court looks to the plain language meaning of the words "managers" and "management-level professionals" and determines that the respective meanings of such words are not distinct.  Black's Law Dictionary defines a "manager" as "[s]omeone who administers or supervises the affairs of a business, office, or other organization."  Manager, Black's Law Dictionary (11th ed. 2019); see also Advanced Litig., LLC v. Herzka, No. 19789, 2006 WL 4782445, at *10 (Del. Ch. Aug. 10, 2006) (considering whether an individual counter-defendant was a manager of the plaintiff limited liability company, reciting the evidence presented on the issue, noting Black's Law Dictionary's now prior definition of "a manager as [a] person who administers the affairs of a business, office, or other organization," and concluding that factual disputes precluded resolution of the issue on a motion for summary judgment (citation & quotations omitted)).  Black's Law Dictionary defines "management" as "[t]he people in an organization who are vested with a certain amount of discretion and independent judgment in managing its affairs," with the subcategory of "top management" defined as "[a] high level of company management at which major policy decisions and long-term business plans are made."  Management, Black's Law Dictionary (11th ed. 2019).  This text supports the conclusion that the LLC Agreement[11] and the Amended Order use the terms "manger" and "management" with their common understandings.

_____

[11] Mr. Gentile's argument is also unsupported by the LLC Agreement.  Article VI, Section I, provides that

> [t]he management of the Company's business shall be vested in its Managers designated as provided in this Article VI, Section 1 and referred to as Managers in this Agreement.  The Managers may be but need not be Members.  The Members hereby agree that there shall initially be one Manager who shall be David Gentile. Managers shall serve at the pleasure of the Members and may be removed at any time with or without cause.  The number of Managers may be increased or

Issues arising from Mr. Gentile's retention of control over GPB, whether on his own or through individuals selected by him, were expressly contemplated and sought to be protected against in Plaintiff's application for an order to show cause that resulted in entry of the Original Order;[12] Plaintiff specifically argued that "Gentile and his handpicked management team should not have unchecked authority over incoming cash that could be used to redeem investors." ECF No. 12 at 5. Both the terms of the Amended Order and the context in which it, and the Original Order, were entered support the deduction that "managers" are not distinct from "management-level professionals."

In sum, Mr. Gentile, in his capacity as a member of GPB, unilaterally attempted to appoint three new managers without the approval of the Monitor, thus violating paragraph 6(e) of the Amended Order. This act was a legal nullity, to the extent GPB retained these individuals, which was attempted without the Monitor's approval. The Monitor notified GPB, among others, of breach of the Amended Order and the need for curative action, in accordance with paragraph 20 of the Amended Order. No curative action has been taken in response to either the Monitor's notice or the Court's request for an update. See 4/28/2023 Order; ECF Nos. 141, 142, 143 & 144. Given the breach, paragraph 21 of the Amended Order, which provides that, "[i]f GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership," ECF No. 39 at 7, authorizes the Court to convert the monitorship to a receivership.

_____

decreased by resolution of the Members[,] and any vacancies created by an increase shall be filled by the Members.

ECF No. 102-4 at 18.

[12] The Original Order and the Amended Order contain do not differ in any way relevant to the analysis here. See generally ECF No. 38.

**(b) Mr. Gentile's Actions Caused GPB To Violate Paragraph 6(d) Of The Amended Order, Warranting Relief Pursuant To Paragraph 21 Of The Amended Order.**

As discussed above, Mr. Gentile's actions in purportedly appointing three new managers to GPB caused GPB to violate paragraph 6(e) of the Amended Order. Given that the three purported new managers should never have been appointed or retained without the Monitor's approval, their compensation is contrary to paragraph 6(d) of the Amended Order.

Plaintiff and Mr. Gentile do not dispute that Mr. Gentile purported to appoint three new managers, see ECF No. 89 at 8; ECF No. 102 at 16-17, who were given compensation packages of up to $400,000 per year, see ECF No. 89 at 8. Plaintiff argues that these changes constitute a "material change to compensation of any executive officer, affiliate, or related party of GPB," per paragraph 6(d) of the Amended Order. ECF No. 39 at 3; see also ECF No. 89 at 13 n.7. Mr. Gentile fails to present an argument as to how or why his unilateral attempted appointment of three new managers, with their attendant compensation packages, did not violate paragraph 6(d) of the Amended Order. See generally ECF No. 102. Mr. Gentile's actions contravened the Amended Order such that he placed GPB in violation of paragraph 6(d) thereof, authorizing the imposition of a receivership pursuant to paragraph 21 of the Amended Order. See ECF No. 39 at 7.

**b.    The Court's Power To Remedy Violations Of Federal Securities Laws**

The Court below identifies the legal standard for exercising judicial power to appoint a receiver; analyzes whether such exercise is warranted in this case; and, in view of the foregoing, as well as GPB's qualifying violations of the Amended Order discussed, supra, Sec. II(A)(ii)(a), respectfully recommends that the District Court convert the monitorship to a receivership by so-

ordering the Proposed Order, with the sole proposed modification discussed below and

subsequent to the clarification to be provided by Plaintiff, see supra, n.3.

### 1.    Legal Standard

15 U.S.C. § 78u(d)(5) provides that, "[i]n any action or proceeding brought or instituted

by the Commission under any provision of the securities laws, the Commission may seek, and

any Federal court may grant, any equitable relief that may be appropriate or necessary for the

benefit of investors."  As such, district courts are vested with "broad power to remedy violations

of federal securities laws," Eberhard v. Marcu, 530 F.3d 122, 131 (2d Cir. 2008) (citation

omitted), which includes "the power to appoint trustees or receivers," S.E.C. v. Am. Bd. of

Trade, Inc., 830 F.2d 431, 436 (2d Cir. 1987) (citation omitted).  Reasons for exercising such

power to appoint a receiver in such a case include

> preserv[ing] the status quo while the various transactions [are] unraveled . . . to
> obtain an accurate picture of what transpired[,] . . . conserv[ing] the existing
> estate[,] . . . marshal[ing] the assets of the defendant[,] prevent[ing] the
> dissipation of [the] defendant's assets pending further action by the court[,] . . .
> [and] investigat[ing] the defendant's transactions.

Eberhard, 530 F.3d at 131 (citations & quotations omitted).  Factors weighing in favor of

appointment of a receiver include:

> [f]raudulent conduct on the part of defendant; the imminent danger of the property
> being lost, concealed, injured, diminished in value, or squandered; the inadequacy
> of the available legal remedies; the probability that harm to plaintiff by denial of
> the appointment would be greater than the injury to the parties opposing
> appointment; and, in more general terms, plaintiff[']s probable success in the
> action and the possibility of irreparable injury to his interests in the property.

S.E.C. v. Amerindo Inv. Advisors Inc., No. 5 Civ. 5231 (RJS), 2013 WL 1385013, at *13

(S.D.N.Y. Mar. 11, 2013) (citation & quotations omitted) (concluding that, "[b]ased on the

Individual Defendants' extensive fraudulent conduct, the risk that the value of restrained assets

will irreversibly dissipate, and the risk of harm to the SEC, the individual victims, and other

investors, the Court finds that the appointment of a receiver is warranted in the instant case"),
modified on reconsid. on other grounds, No. 5 Civ. 5231 (RJS), 2014 WL 405339 (S.D.N.Y.
Feb. 3, 2014), aff'd, 639 F. App'x 752, 755 (2d Cir. 2016) (rejecting the appellants' argument
"that the district court erred in its appointment of a receiver," as "[t]here is no question that
district courts may appoint receivers as part of their broad power to remedy violations of federal
securities laws" (citation & quotations omitted)).

### 2.    Analysis

The Court respectfully recommends that the grounds for and factors that may be
considered in appointing a receiver warrant such relief here.  The Court notes that it is applying
the factors set forth in Eberhard and Amerindo, and not the standard suggested by Mr. Gentile,
see supra, Sec. II(A)(i)(e), which is not consistent with the statutes or case law.  The Court has
already determined that the Monitor is necessary to protect investors; the question here is
whether recent events require the additional step of converting the monitorship to a receivership.

As to preserving the status quo, conserving the existing estate, and preventing the
dissipation of assets discussed in Eberhard, and the danger of property loss and irreparable injury
discussed in Amerindo, the three purported managers newly appointed by Mr. Gentile, without
approval of the Monitor, will receive "up to $400,000 per year in compensation," have caused
"GPB . . . and the Monitor [to] incur[] substantial legal expenses," and "have already attempted
to reverse a reduction in force implemented by GPB . . . with Monitor consent to reduce
unnecessary expense," whereas, "[i]f a receiver is appointed, the streamlined management
structure will help to reduce the current $7 million quarterly expense related to management and
operating service fees charged by GPB . . . and Highline to the GPB Funds."  ECF No. 103 at 10.

As to marshaling assets discussed in <u>Eberhard</u>, "sales of GPB assets have returned approximately $1 billion in gross proceeds to the GPB limited partnerships," which, "[f]ollowing the appointment of a [r]eceiver, . . . would begin to be returned to the limited partners themselves, namely the investors in the GPB partnerships, to whom these monies belong."  ECF No. 144 at 2.  The Court gave Defendants an opportunity to update the record as to progress in resolving outstanding issues of concern, such as the claimed appointment of unauthorized managers and distribution of assets, but Defendants did not report any meaningful progress.  <u>See generally</u> ECF Nos. 141 & 143.

As to the inadequacy of legal remedies discussed in <u>Amerindo</u>, in view of the current role of the Monitor, legal remedies have proven inadequate under the Original Order and the Amended Order and appear to be inadequate to redress the ongoing harms.  <u>See</u> ECF No. 103 at 11.  Thus, while Plaintiff pursued a cautious approach in requesting the initial appointment of the Monitor, the undisputed self-serving conduct of Mr. Gentile and the actions of the three managers purportedly appointed by him, both of which caused GPB to violate the Amended Order, necessitate consideration of the more fulsome restrictions of a receivership.

As to the balancing of the parties' interests discussed in <u>Amerindo</u>, Plaintiff and, by extension, GPB's investors, will obtain the aforementioned benefits if a receiver is appointed, and GPB supports such relief, <u>see generally</u> ECF Nos. 101 & 143, whereas Mr. Gentile has "already relinquished control over GPB . . . voluntarily in February 2021."  ECF No. 103 at 11.  Plaintiff has also highlighted the need to protect the investors by preventing Mr. Gentile and the new purported managers from undermining GPB's finances through improper access to funds and information.  <u>See</u> ECF No. 89 at 10.  The investors' and GPB's interests outweigh Mr. Gentile's interests.

As to the fraudulent conduct and the likelihood of Plaintiff's success in the action discussed in Amerindo, Mr. Gentile takes the position that, because "there has been no judicial determination as to Mr. Gentile's liability[,] . . . [there is] no evidence of the SEC's likelihood of success warranting a receivership"; in support of this position, he contends (1) that "courts in the Second Circuit must consider," among other things, the "plaintiff's probable success in the related action" and (2) that "the allegations against Mr. Gentile remain pending without a trial date."[13]  He points out that Plaintiff's application "largely relies on authority in which the defendant had already pled guilty or there had been a finding of civil liability against the defendant at the time that a receiver was appointed," implying that a receiver may not be appointed without such a plea or finding.  ECF No. 102 at 19-20, 24 n. 26, 25 (citations omitted). As to the former, Mr. Gentile's statement that consideration of all factors cited in Amerindo is mandatory is incorrect, as the Amerindo Court only recited factors that, if present, would support the appointment of a receiver.  See Amerindo, 2013 WL 1385013, at *13 (citation omitted).  As to the latter, Mr. Gentile's implicit position that a court may not appoint a receiver until after a finding of civil liability or criminal culpability is belied by decisions in the Second Circuit doing so.  See generally, e.g., S.E.C. v. Credit Bancorp, Ltd., 290 F.3d 80, 85 (2d Cir. 2002); S.E.C. v. Legend Venture Partners LLC, 23 Civ. 5326 (LAK), 2023 WL 4719659, at * 3 (S.D.N.Y. July 11, 2023); Baliga v. Link Motion Inc., 385 F. Supp. 3d 212, 221-23 (S.D.N.Y. 2019); S.E.C. v. Callahan, 193 F. Supp. 3d 177, 182-83 (E.D.N.Y. 2016), reconsid. denied, No. 12 Civ. 1065 (ADS) (AYS), 2016 WL 11499455 (E.D.N.Y. Oct. 4, 2016), appeal withdrawn, No. 16-3737, 2017 WL 5201905 (Feb. 13, 2017); S.E.C. v. H.S. Simmons & Co., 190 F. Supp. 432, 433

---

[13] A trial date of June 3, 2024 has since been set in the criminal case.  See USA v. Gentile, No. 21 Crim. 54 (DG) (PK), ECF No. 210 (E.D.N.Y. Apr. 17, 2023).

(S.D.N.Y. 1961).  Mr. Gentile's argument is inconsistent with the goal of the receivership to

protect investors and the limited liability company.  He essentially argues that, despite his

indictment, he should be permitted to continue running the company pending his trial, despite his

continued disregard of the corporate form, conduct similar to that which formed part of the

underlying indictment as well.  See generally USA v. Gentile, No. 21 Crim. 54 (DG) (PK), ECF

No. 1 (E.D.N.Y. Jan. 29, 2021).  To permit this would be contrary to the goal of redress for

victims and investors.  See S.E.C. v. Credit Bancorp, Ltd., No. 99 Civ. 11395 (RWS), 2000 WL

1752979, at *1 (S.D.N.Y. Nov. 29, 2000), aff'd, 290 F.3d 80 (2d Cir. 2002).

      In sum, the actions of Mr. Gentile and the three new managers that he purportedly

appointed, as they affect GPB, have resulted in a fracture in GPB's leadership that is

irremediable without Court intervention.  On one hand, GPB, under the purview of the Monitor,

has been working to address the state in which Mr. Gentile left it and move forward in a manner

that is productive to its investors.  On the other hand, GPB is in the precarious position of

operating with three new "purported" managers and a "purportedly" amended LLC Agreement,

both of which may actively undermine the aforementioned efforts.  Two tangible examples are

(1) the compensation packages of up to $400,000 per year provided to the three new purported

managers, who were appointed by Mr. Gentile without approval of the Monitor, which are

depleting GPB assets, see ECF No. 89 at 8, and (2) the decision of "[f]ive major financial

institutions . . . [to] den[y] applications to open new accounts for [GPB] . . . and the Funds

because of Mr. Gentile's continued ownership of GPB and the financial institutions' concerns

about the limited controls offered by the Amended . . . Order," ECF No. 143 at 3.  The

uncertainty of GPB's position is creating significant consequences, which are damaging its

financial health and, by extension, the finances of its investors.  At this point, the conversion of

the monitorship to a receivership is necessary to cabin the damages.  As such, the Court respectfully recommends that the District Court find that it has the statutory and equitable power to appoint a receiver, and, given Mr. Gentile's conduct and failure to correct such conduct, in contravention of the Amended Order, as discussed, supra, Sec. II(A)(ii)(a), that the Court exercise such authority.

**B.    Litigation Injunction**

The Court first addresses the positions of the parties as to the requested litigation injunction, then discusses the applicable legal standard in the context of the circumstances presently before the Court.

**i.    Positions Of The Parties**[14]

Plaintiff, Ascendant Capital and Mr. Schneider, Mr. Lash, GPB and Mr. Gentile each submitted filings in relation to Plaintiff's application.

**a.    Plaintiff**

Plaintiff requests the entry of a litigation injunction "to consolidate all claims against GPB . . . and . . . [its f]unds in order to effectuate an orderly claims and distribution process." ECF No. 89 at 15.  Plaintiff argues that GPB and its funds "are facing a number of complicated and uncertain actions by investors and others that threaten to delay distributions to investors" and result in "potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control."  Id. at 16.

---

[14] By considering the submissions of Ascendant Capital and Mr. Schneider, Mr. Lash and Mr. Gentile, the Court does not find that they have standing to respond, but, rather, the Court considers the arguments in the interest of completeness.

### b.    Ascendant Capital and Mr. Schneider

Ascendant Capital and Mr. Schneider oppose the imposition of a litigation injunction.

See ECF No. 99 at 14.

### c.    Mr. Lash

Mr. Lash supports the imposition of a litigation injunction.  See ECF No. 100 at 1.

### d.    GPB

GPB supports the imposition of a litigation injunction.  See ECF No. 101 at 4.

In its supplemental submission, GPB noted that "the Funds have continued to incur

substantial litigation defense costs for several pre-existing civil cases which reduce the amount

of cash available for distribution to limited partners."  ECF No. 143 at 3-4.

### e.    Mr. Gentile

Mr. Gentile contends that the imposition of a litigation injunction is premature.  See ECF

No. 102 at 28.

### ii.    Discussion

The Court below identifies the legal standard for the imposition of a litigation injunction

and analyzes whether a litigation injunction is warranted here.

Where a "stay provides that parties may seek leave of the district court to proceed against

the receivership entities, . . . a district court in an SEC enforcement action may, upon an

appropriate showing of necessity, stay proceedings against a court-imposed receivership, and . . .

such a stay can be made effective against persons not parties to the SEC action who have notice

of the stay."  S.E.C. v. Wencke, 622 F.2d 1363, 1371, 1373 (9th Cir. 1980).  The rationale is that

> [a] receiver appointed by a court in the wake of a securities fraud scheme may
> encounter difficulties sorting out the financial status of the defrauded entity or
> entities[,] . . . a genuine danger that some litigation against receivership entities
> amounts to little more than a continuation of the original fraudulent scheme[,] . . .

> finances of the receivership entities so obscure or complex that the receiver is hampered in conducting litigation[, and] expense involved in defending the many lawsuits which are often filed against an entity in the wake of a securities fraud scheme,

such that "[a] stay of proceeding against receivership entities except by leave of the court may be an appropriate response to the above concerns." Id.  In sum, "[o]nce assets are placed in receivership, a district court's equitable purpose demands that the court be able to exercise control over claims brought against those assets," given its "interest in both the value of the claims themselves and the costs of defending any suit as a drain on receivership assets," such that "the receivership court may issue a blanket injunction, staying litigation against the named receiver and the entities under his control unless leave of court is first obtained," which extends to "non-parties to the underlying litigation . . . , so long as the non-parties have notice of the injunction."  Liberte Capital Grp. v. Capwill, 462 F.3d 543, 551-52 (6th Cir. 2006) (citations omitted).[15]  Although "[a]n anti-litigation injunction is simply one of the tools available to courts to help further the goals of the receivership" such that it is "to be used sparingly, there are situations in which [it is] . . . entirely appropriate."  Byers, 609 F.3d at 92-93 (noting that "this litigation[, where] the receivership must manage hundreds of Wextrust entities that sprawl across the Middle East, Africa and the United States, Many of which have co-mingled assets[,] . . . is precisely the situation in which an anti-litigation injunction may assist the district court and receiver who will want to maintain maximum control over the assets").

The litigation injunction set forth in section 7 of the Proposed Order, see ECF No. 91-1 at 13-14, as modified, is warranted in this case.  Plaintiff has invoked the reasoning, which the

---

[15] The Court of Appeals for the Second Circuit has adopted the reasoning and holding of the Wencke and Liberte Courts as to the imposition of litigation injunctions in the receivership context that are beyond the scope of Federal Rule of Procedure 65.  See S.E.C. v. Byers, 609 F.3d 87, 91 (2d Cir. 2010).

Court finds persuasive, held to justify the imposition of litigation injunction by the <u>Wencke</u> and <u>Liberte</u> Courts, including that GPB and its "[f]unds are facing a number of complicated and uncertain actions by investors and others that threaten to delay distributions to investors" and that the relief requested "is necessary to centralize all claims to the assets before this Court" and "prevent potentially disparate actions in different courts that could affect the receivership assets subject to this Court's jurisdiction and control."  ECF No. 89 at 16.

### C.    Proposed Order

Plaintiff submitted the Proposed Order with its application.  <u>See generally</u> ECF No. 91-1. Ascendant Capital and Mr. Schneider raise two issues with the Proposed Order.  <u>See</u> ECF No. 99 at 10-13.  Plaintiff contends that these objections are premature.  <u>See</u> ECF No. 103 at 12-13.

The Monitor has explained:

> [T]he proposed Receivership order provides for a litigation injunction to centralize the claims process in this Court. There are a number of pending litigation proceedings, including class action litigation, that will require potential reserves, and there are limited funds available for these purposes.  I would also note that the proposed litigation injunction includes a carve-out for federal and state regulatory actions, and it will be my priority to resolve such proceedings for the benefit of investors.

ECF No. 90 at 12.

To comply with the dictates of <u>Wencke</u> and <u>Liberte</u>, the undersigned respectfully recommends that Paragraph 18 of the Proposed Order be modified to add, as a final sentence, the following: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets."

As to the objections raised by Ascendant Capital and Mr. Schneider, first, they argue that paragraphs 6(g)[16] and 16(c)[17] of the Proposed Order are in apparent conflict with Delaware orders and judgments providing for the advancement of legal fees and expenses to Mr. Schneider, which, if entered, could result in the infringement of Mr. Schneider's "Sixth Amendment right[] to counsel in the companion criminal case" or violation of "the requirement that lawfully obtained Delaware Court Orders and Judgments are entitled to full faith and credit."

---

[16] Paragraph 6(g) of the Proposed Order provides the receiver with the following powers and duties:

> Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, but in no event shall the Receiver, without prior order of the Court, make any payments or transfers of property of a value in excess of $50,000 (fifty-thousand dollars), except that the Receiver may pay the following fees, costs, expenses and other charges in the ordinary course without regard to the foregoing cap and without prior order of the Court: (i) compensation and benefits to employees, including temporary non-payroll staff, (ii) rent, (iii) insurance premiums and related costs, (iv) the fees and costs of Phoenix American Financial Services related to administering the GPB Funds and all other expenses necessary to administer and operate the GPB Funds, (v) the fees and costs of TransPerfect related to records management, (vi) other routine costs and expenses of the Receivership Estate, including, without limitation, those related to: information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal and other utilities and services, and (vii) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court.

ECF No. 91-1 at 4-6.

[17] Paragraph 16(c) of the Proposed Order enjoins the receivership entities and all persons or entities who receive the Proposed Order from taking or causing to be taken any action that, without the receiver's express written agreement, would:

> Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets.

ECF No. 91-1 at 12-13.

ECF No. 99 at 10-12. Ascendant Capital and Mr. Schneider have not provided the Court with a copy of the judgments and orders to which they refer, so the Court cannot evaluate the interaction of the judgments and orders referenced and the Proposed Order, if any. Even assuming that Ascendant Capital and Mr. Schneider have accurately described that the referenced judgments and orders provide for the advancement of legal fees and expenses to Mr. Schneider, neither paragraph 6(g) nor paragraph 16(c) of the Proposed Order would prohibit the payment of such fees and expenses. As to paragraph 6(g), the provision would require that this Court authorize any such payment of a value exceeding $50,000. See ECF No. 91-1 at 5-6. As to paragraph 16(c), the provision would essentially prohibit the dissipation or diminution of assets without written agreement of the receiver. See id. at 12-13. This provision must be read in the context of the entire Proposed Order; for example, paragraph 6(g) expressly provides for the dissipation and diminution of assets, including by, among other things, payments ordered by the Court. See id. at 5-6. In context, paragraph 16(c) cannot be read as a wholesale bar to the dissipation or diminution of assets if funds were to be spent on approved activities.

Second, they contend that paragraph 28 of the Proposed Order, permitting the receiver to waive, assign or release privileges, is unnecessary and would implicate common interest and joint defense privileges among GPB, Ascendant Capital and Mr. Schneider. See ECF No. 99 at 12-13. Paragraph 28 provides that any privileges or immunities either (1) held by the receivership entities, which amount to a list of twenty entities, see id. at 27, the Monitor and the monitorship or (2) attaching to or arising from their documents, data or communications are transferred to the receiver and may be enforced, waived, assigned or released by the receiver. See id. at 16-17. The holder of any privileges or immunities may exercise those privileges or immunities as he, she, or it sees fit, subject to applicable law. See, e.g., U.S. v. Agnello, 135 F.

Supp. 2d 380, 383 (E.D.N.Y. 2001) (stating that "[a] client who is part of a joint defense arrangement is entitled to waive the privilege for his own statements, and his co-defendants cannot preclude him from doing so"), aff'd, 16 F. App'x 57 (2d Cir. 2001). The Proposed Order does not excuse the receiver from its obligation to comply with applicable law in the exercise of such privileges or immunities. Therefore, if GPB, Ascendant Capital and Mr. Schneider share certain common interest and joint defense privileges, whether by operation of law or by agreement, which has not been provided to the Court, the receiver would be bound by any applicable limitations imposed by law.

## IV. CONCLUSION

The undersigned respectfully recommends that Mr. Gentile's motion for relief from the Amended Order be denied as moot and that Plaintiff's application for conversion of the monitorship to a receivership and for the imposition of a litigation injunction be granted, subsequent to the clarification to be provided by Plaintiff, see supra, n.3, with Paragraph 18 of the Proposed Order modified to add, as a final sentence, the following: "Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets."[18]

---

[18] The application for leave to submit amicus curiae briefs by Western International Securities, Inc., FSC Securities Corp., Triad Advisors, LLC, royal Alliance Associates, Inc., Sagepoint Financial, Inc., Woodbury Financial Services, Inc., and twenty-six other broker-dealers and investment adviser firms, see ECF No. 149 at 1, is denied as moot. As such, the Court has not addressed Mr. Gentile's opposition thereto, in which Mr. Schneider and Ascendant Capital joined. See generally ECF No. 154.

## IV.    OBJECTIONS

Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen days of service.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen-day period for filing objections. Failure to file objections within fourteen days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.  See Miller v. Brightstar Asia, Ltd., 43 F. 4th 112, 120 (2d Cir. 2022) (reasoning that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate's recommended decision, it waives any right to further review of that decision" (internal citation & quotations omitted)).

Dated: Brooklyn, New York
      July 28, 2023

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

34