**Hogan Lovells**

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T  +1 202 637 5600
F  +1 202 637 5910
www.hoganlovells.com

Douglas A. Fellman
Partner
202.637.5714
douglas.fellman@hoganlovells.com

November 3, 2023

**BY ECF**

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

RE:  **SEC v. GPB Capital Holdings LLC, et al.**, No. 21-cv-00583-MKB-VMS

Dear Judge Scanlon:

We represent the Court-appointed monitor, Joseph T. Gardemal III (the "Monitor"), in the above-referenced matter.  On October 3, 2023, pursuant to the Court's September 18, 2023 order, the Securities and Exchange Commission filed a joint letter describing the outcome of a meet and confer concerning redactions to certain of the Monitor's previously-filed quarterly reports, which was attended by counsel for the parties to this case, as well as counsel for the Monitor and the Bohnenkamp Living Trust (Dkt. No. 177) (the "October 3rd Joint Letter").  As detailed in the October 3rd Joint Letter, the Monitor agreed to review the four quarterly reports that were previously filed with redactions (Dkt. Nos. 123, 127, 137, and 158) in order to determine which redactions were still necessary to protect "sensitive and proprietary information" and, to the extent the Monitor determined that any redactions were no longer necessary, to refile those four quarterly reports with any such redactions removed.

As a preliminary matter, it is important to note that the Monitor has always been judicious and deliberate when exercising his responsibility to protect sensitive and proprietary information in his quarterly reports.  Despite the fact that both the original and amended orders appointing the Monitor (the "Monitor Orders")  expressly authorized the Monitor to file

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in:  Abu Dhabi   Alicante   Amsterdam   Baltimore   Beijing   Berlin   Boulder   Brussels   Caracas   Colorado Springs   Denver   Dubai   Dusseldorf   Frankfurt   Hamburg   Hanoi   Ho Chi Minh City   Hong Kong   Houston   London   Los Angeles   Madrid   Miami   Milan   Moscow   Munich   New York   Northern Virginia   Paris   Philadelphia   Prague   Rome   San Francisco   Shanghai   Silicon Valley   Singapore   Tokyo   Ulaanbaatar   Warsaw   Washington DC  Associated offices: Budapest   Jeddah   Riyadh   Zagreb

The Honorable Vera M. Scanlon
United States Magistrate Judge
November 3, 2023
Page 2 of 2

quarterly reports "under seal or in redacted form to protect sensitive, proprietary information" (Dkt. No. 39, at ¶23), the Monitor has never filed a quarterly report under seal and did not redact any portions of his first six quarterly reports. The Monitor only began redacting entries in his seventh quarterly report, when redactions of sensitive and proprietary information became necessary to protect the interests of investors in the GPB funds.

      The Monitor has completed his review of the four previously-filed quarterly reports that contained redactions and, where possible, has unredacted certain entries that had been redacted. These four quarterly reports are attached to this letter as exhibits. To assist the Court and the parties, any entries that were redacted in the previously-filed reports and that have now been unredacted in the attached reports are highlighted in yellow. Pursuant to the Monitor Orders, the Monitor has continued to redact certain entries, where necessary, to protect sensitive and proprietary information. As a general matter, the redactions that remain relate to items such as forensic reviews and investigations, possible third-party claims, and ongoing transactions and litigation.

      As also detailed in the October 3rd Joint Letter, the Monitor will, going forward, continue to be judicious when making redaction decisions for his quarterly reports, as reflected in the most recent quarterly report, which was filed on October 30, 2023. (Dkt. No. 182). In addition, with each newly-filed quarterly report, the Monitor will continue the process of reviewing redactions made to the previously-filed quarterly reports and filing on the docket updated reports that remove redactions that the Monitor determines are no longer necessary to protect sensitive and proprietary information.

      Respectfully submitted,

HOGAN LOVELLS US LLP

By: _____
      Douglas A. Fellman
      Robert B. Buehler
      Counsel to Joseph T. Gardemal III, Monitor

# Exhibit 1

# GPB CAPITAL HOLDINGS LLC

October 31, 2022

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

## Q3 2022 – Quarterly Report of Joseph T. Gardemal III, Court-appointed Monitor over GPB Capital Holdings LLC

Joseph T. Gardemal III, CPA
Managing Director
Alvarez & Marsal
655 Fifteenth Street NW
Washington, DC 20005
(202) 729-2131
JGardemal@alvarezandmarsal.com



# Contents

| I. | Introduction | 2 |
|---|---|---|
| II. | Background | 4 |
| III. | Status of Monitor's Review | 11 |
| IV. | Monitor Achievements | 19 |
| V. | Monitor Fee Summary | 30 |

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# I. Introduction



# Introduction

This is my sixth quarterly report since my appointment as Monitor. In this report, I will provide background information about my appointment, an update on the status of my review as Monitor, and some additional information bearing on the Monitorship. In addition, I want to share my recent message to investors in which I confirmed that my top priority has been and remains achieving the maximum recovery for investors and the distribution of such proceeds as soon as possible. As I wrote:

> As you know, on February 11, 2021, I was appointed as the independent Monitor over GPB Capital Holdings pursuant to an order entered by the Honorable Margo K. Brodie, United States District Judge for the Eastern District of New York. In Q4 2021, following considerable work by the Monitor team, company management, and supporting professionals, GPB Capital Holdings announced the successful sale of key assets in the automotive and healthcare sectors. Management continues to oversee a portfolio of operating companies.

> You rightfully expect distribution of the available proceeds from such transactions, and it is my priority to achieve this objective. As the Monitor I work to protect your interests but in the current framework can only approve any distribution proposed by management when financial, regulatory, and legal conditions permit.

> Please be assured that I will approve the distribution of funds as soon as conditions so permit, and my objective is for this to happen as soon as possible.

Because much of our ongoing work is sensitive and involves litigation and efforts to maximize the value of investments, I have redacted certain sections of this report to maintain confidentiality.

**Joseph T. Gardemal III**
Court-appointed Monitor, GPB Capital Holdings, LLC
Washington, D.C.
October 31, 2022

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# II. Background



# Background

**On February 11, 2021, I, Joseph T. Gardemal III, a Managing Director with Alvarez & Marsal in Washington, DC, was appointed as the independent Monitor over GPB Capital Holdings LLC by the Honorable Chief Judge Margo K. Brodie, United States District Judge for the Eastern District of New York. The Order states that the Monitor shall remain in place until terminated by Order of the Court.**

**On April 14, 2021, Chief Judge Brodie approved amendments to the order as proposed by the SEC and GPB.**

**The Order outlines the Monitor's general powers and duties as follows:**

1.  **The authority to approve or disapprove the following actions (Paragraph 6):**

    a.  Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate;

    b.  Any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws;

    c.  Any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

    d.  Any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

    e.  Any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

    f.  Any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

    g.  Any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order outlines the Monitor's general powers and duties as follows (Continued):**

**2.   The authorization and empowerment to: (Paragraph 11):**

a.   Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.   Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.   Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.   Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.   Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;

f.   Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.   Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.

h.   Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.   Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.   Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.   Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order requires the Monitor to provide the following recommendations and reports:**

1. **Paragraph 23 – within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").**

   • This report will provide an overview of the status of each contemplated review outlined in paragraphs 8 through 14

2. **Paragraph 24 – The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the Monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.**

   • On April 12, 2021, the Monitor submitted his recommendation to continue the Monitorship for a period of at least 180 days

3. **Paragraph 25 – the Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.**

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.™

# Background (Continued)

**Overview of recent developments between GPB, David Gentile and the SEC:**

1. **Violation of court order and notice to GPB:**

   a. On May 29, 2022, I was informed through Mayer Brown LLP, counsel to GPB Capital Holdings, that David Gentile had documents delivered to the Company reflecting that Mr. Gentile had purported to take actions, as of May 27, 2022, (i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation arrangements with respect to non-employee Managers ((i) and (ii) collectively, the "May 27, 2022 Purported Actions").

   b. On May 31, 2022, I provided formal notice to GPB in my capacity as Monitor under the Amended Order, that the May 27, 2022 Purported Actions, among other things, violate Sections 6(d) and 6(e) of the Amended Order (the "Material Non-Compliance"). In accordance therewith, I further provided the Company notice that the Company had ten (10) business days in which to cure the Material Non-Compliance, and if such cure did not occur within such period, the remedies described in Section 21 of the Amended Order may be invoked with immediate effect.

2. **The SEC requested the conversion of the Monitorship to a receivership:**

   a. Section 21 of the Amended Order outlines the remedies for the SEC in the event of GPB's non-compliance with the Amended Order: "If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership."

   b. On June 13, 2022, the SEC filed a motion to request the conversion of the Monitorship to a receivership as a result of the continuing violation by GPB, following the above referenced notice provided by me in my capacity as Monitor under the Amended Order, and pursuant to the remedies provided for in Section 21 of the Amended Order.

   c. On July 1, 2022, GPB Capital Holdings LLC filed a memorandum in response to the SECs motion for the order appointing a receiver and imposing a litigation injunction, stating that, ***"Defendant GPB Capital Holdings, LLC respectfully submits this memorandum to reiterate its consent, on behalf of its Chief Executive Officer ("CEO"), Rob Chmiel, to the relief the Securities and Exchange Commission ("SEC") requests in its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction (the "Receivership Motion")."***

   d. Concurrent with the SEC's motion on June 13, 2022, and subsequently on July 8, 2022, I provided written declarations in support of the SEC's motion for appointment of a receiver over GPB Capital Holdings LLC and its affiliates.

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (1/2):**

1. **Financial Reporting:**

   a.  On May 14, 2021, the Form 10 for Automotive Portfolio LP was initially filed for the 3-year period ended 12/31/2020. The filing was last amended on September 9, 2021, and the amendment covered the additional period ending 3/31/2021.

   b.  On August 26, 2021, the first 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2021.

   c.  In November 2021, the audit for Cold Storage LP for the year ended 12/31/2020 was finalized and published to investors.

   d.  GPB, with my approval, has engaged new valuation and tax service providers.

   e.  Fair Market Value statements as of 9/30/2021 have been sent to all investors in Holdings I LP, Holdings II LP, Automotive Portfolio LP, Waste Management LP, Cold Storage LP, and New York City Development LP.

   f.  Fair Market Value statements as of 12/31/2021 have been sent to all investors in Holdings II LP, Automotive Portfolio LP, Waste Management LP, and Cold Storage LP.

   g.  On April 14, 2022, the first 10-K for Automotive Portfolio LP was filed for the year ended 12/31/2021.

   h.  On May 13, 2022, the Form 10 for Holdings II LP was initially filed for the 3-year period ended 12/31/2021. The filing was last amended on July 22, 2022, and the amendment covered the additional period ending 3/31/2022.

   i.  On August 11, 2022, the most recent 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2022. Quarterly and annual reports for Automotive Portfolio LP continue to be filed timely since the final amendment to the Form 10 on September 9, 2021.

   j.  On August 12, 2022, the first 10-Q for Holdings II LP was filed for the quarter ended 06/30/2022. Quarterly and annual reports for Holdings II LP continue to be filed timely since the final amendment to the Form 10 on July 7, 2022.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (2/2):**

2. **GPB Investments:**

    a. In November 2021, GPB completed the sale of Prime Automotive Group and substantially all of its auto related assets to Group 1 Automotive.

    b. In December 2021, GPB completed the sale of Alliance Physical Therapy Group to Chicago-based healthcare investment firm BPOC.

    c. In Q1, 2022, GPB completed the sales of Greenwave Energy, as well as certain assets of Waste Management LP.

    d. On April 7, 2022, GPB finalized the sale of the ±30-acre parcel of land owned by Cold Storage LP.

    e. The completed sale transactions to date have returned approximately $1 billion in gross proceeds to GPB partnerships.

    f. Under the supervision of the Monitor, GPB continues to market certain of its assets for sale and will update investors upon any successful exit.

    g. Several Limited Partnerships are expected to enter wind-down following the exit of investments within the respective Limited Partnerships.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# III. Status of Monitor's Review



# Status of the Monitor's Review

**Upon appointment by the Court, the Monitor and GPB worked diligently to establish an efficient protocol to effectuate the Monitor approval process required by Paragraph 6 of the Order.**

**The Monitor team provided a diligence list identifying specific data and documents needed to perform its duties as outlined in Paragraph 11.**

- As of the date of this report GPB has substantially completed the diligence requests by the Monitor, who has obtained the data needed to perform his reviews contemplated in the Order

**As required by the Order, and to the extent appropriate, the status of the contemplated reviews in Paragraphs 8 through 14 have been classified as the following:**

- Complete: the review process as contemplated in the order has been finalized
- Ongoing: the review process has commenced; additional procedures are needed
- Pending: the review process has not yet begun; awaiting additional data or documents

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# Status of the Monitor's Review (Continued)

**Paragraph 8: GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.**

- Through the date of this report GPB has taken reasonable efforts to fulfill the Monitor's requests for documents. While requests may continue to arise as the Monitor completes his reviews, the Monitor has not experienced any unreasonable delays and any currently outstanding requests are related to follow up questions from the Monitor's review of the initial information provided

**Paragraph 9: For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.**

- All Monitor requests have been made to either GPB's General Counsel or Chief Financial Officer/Chief Executive Officer

**Paragraph 10: If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.**

- GPB's General Counsel and Chief Financial Officer/Chief Executive Officer have been appropriately receptive and responsive to follow up questions and/or requests

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11a: Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to historical activity. Ongoing with respect to current operations

**Paragraph 11b: Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information.**

- Status: Ongoing

**Paragraph 11c: Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11d: Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to consultants retained at the appointment of the Monitor. Ongoing with respect to continuing operations

**Paragraph 11e: Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;**

- Status: Ongoing – audited financial statements of GPB, Highline, and the GPB funds have been reviewed to the extent they are final and have been published. Additional audits for certain of the relevant entities are still in progress

**Paragraph 11f: Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;**

- Status: Complete with respect to historical minutes. Ongoing with respect to current operations

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11g: Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Ongoing – the initial review has been completed. However, the Monitor continues to be updated by GPB/Highline as litigation involving the relevant entities continues

**Paragraph 11h: Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies.**

- Status: Ongoing – the Monitor continues to be notified and reviews new developments. The review of any commencement or settlement of litigation involving the relevant entities continues as new matters arise

**Paragraph 11i: Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change.**

- Status: Ongoing

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11j: Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities.**

- Status: Complete

**Paragraph 11k: Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.**

- Status: Ongoing. The Monitor continues to work actively with GPB/Highline on updates to investor communications and the GPB website content

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 12: GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.**

- Status: Complete

**Paragraph 13: GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.**

- Status: Ongoing – the Monitor team has reviewed the valuation reports of GPB/Highline's new valuation service provider. Consequently, Fair Market Value statements were finalized and sent to investors. The Monitor will continue to review updated reports

**Paragraph 14: GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.**

- Status: Complete. The Monitor continues to work with Management related to the operation of the Funds

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# IV. Monitor Achievements

*(a) Portfolio Company M&A / Transactions*
*(b) Oversight of Portfolio Operations*
*(c) Oversight of General Partner Management*
*(d) Forensic Review of GPB's Operations / Financials*
*(e) Distribution Planning*
*(f) Further Workstreams Related to Monitor Approvals*



# (a) Portfolio Company M&A / Transactions (1/4)

This section depicts Monitor team activities related to GPB portfolio company sale transactions. The scope and nature of these transactions required substantial and ongoing analysis to guide GPB and ultimately approve transactions that maximize value to LPs and ultimately investors.

To date, efforts by GPB with the support of the Monitor have combined to realize over $1 billion in proceeds to GPB investors from portfolio company transactions.

**Prime Automotive Group** *(sale occurred November 2021, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Advised on strategic alternatives to recover and maximize value for LPs, as Prime Automotive Group was facing imminent risk of loss of value due to OEMs' and lenders' attempts to terminate franchise and loan agreements due to the association with GPB
  - Strategic alternatives included SPAC sale, management buyout/ separation proposal, going-concern sale, sale in parts, etc.
- Provided sale process oversight and strategic direction throughout, including i.e. participation in management meetings, and resolving conflicts between key individuals at GPB/Highline and Prime and the attempt by management to separate from GPB
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Managed GPB/Prime relationships with OEMs, in ███████████████
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Guided discussions related to the structuring, extending, and replacing of four financing agreements following several threatened and/or actual terminations by ██████████████████████████, including vetting new potential credit providers
- Advised on the sale of several one-off dealerships and associated real estate
- Continue to support post-transaction work, including negotiation of (and performance under) transition service agreements, OEM litigation oversight with Subaru New England, claims management oversight, receivables collection, asset liquidation, review of equity structures and minority stakeholders, and review of staffing and compensation for wind-down team

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $907 million[1] | $466 million[2] | 195% |

[1] Includes net proceeds from Prime Automotive Group and real estate also included in the GPB Automotive Portfolio. Please refer to page F-27 of the 2021 GPB Automotive Portfolio 10-K and page F-25 of the GPB Holdings II Form 10
[2] Book value as of 12/31/2020, pursuant to the GPB Automotive Portfolio LP and GPB Holdings II LP Form 10 filings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (2/4)

**Alliance Physical Therapy** *(sale occurred December 2021)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale and structure of the same
  - Continued to provide strategic oversight throughout the process with respect to escrow considerations, review of M&A agreements, structuring of the sale, evaluation of potential buyers, etc.
- Reviewed all candidates and supported advisor selecting for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $119 million | $56 million[1] | 213% |

[1] Book value as of 12/31/2020. The nearest third-party fair market valuation (as of 6/30/2019) indicated a FMV within ~4% of the 12/31/2020 book value

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (a) Portfolio Company M&A / Transactions (3/4)

**Armada Waste Management**

*(Sale of Capitol Waste, Iron City Express, MudMasters complete with wind-down ongoing, sale of Buckeye ongoing)*
Assets in the Armada portfolio have been sold separately in five transactions to date. Efforts include:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale options in parts or as one entity
- Continue to support management in the reevaluation of different divestment alternatives as the sale process repeatedly proved difficult due to the lack of financial performance of the assets
- Reviewed all candidates and supported advisor selecting for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Provided guidance with respect to various performance issues at Armada entities, ███████████████████████████
  ███████████████████
- Provide general project/sale management oversight (multiple different subsidiaries were sold to multiple different buyers)
- Reviewed relevant agreements (asset purchase agreements) as part of advising on sale terms, considerations, and structure
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Continue to review and evaluate ███████████████

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| Sale not complete | $26 million | N/A |

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (4/4)

**Cold Storage** *(sale occurred April 2022, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of a ±30-acre parcel of land that was owned by GPB Cold Storage. Efforts included:

- Reviewed and discussed several potential options/alternatives for cash flow, including leasing a portion of the real estate, and eventually structuring an agreement to sell the asset
- Provided guidance on sale process following a previously failed attempt by GPB to sell the property in 2020
- Repeatedly engaged in discussions around title insurance due to heightened concern of third party providers over engagement with GPB entities

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
| --- | --- | --- |
| $78 million | $58 million | 134% |

**Other Sale or Restructuring Transactions of GPB investments / Portfolio Companies**
Other GPB positions that have received substantial Monitor support include:

- Sale process of Greenwave Energy, ITelagen
- Restructuring transaction of failed investment Insightra
- Pursuit of recovery actions with respect to debt positions Hycor and Tampa Riverwalk
- Ongoing oversight of negotiations to reduce fund-level indebtedness at NYC Development

ALVAREZ & MARSAL
LEADERSHIP. **ACTION.** **RESULTS.**

# (b) Oversight of Portfolio Operations

Additional Monitor involvement has included:

## ▶ Maximization of Portfolio Company Value

### 1) Health Prime International (HPI) – oversight of integration and GPB growth strategy

██████████████████████████████████████. The Monitor has spent considerable time working with GPB to drive accretive value and position the company for an eventual sale. In total, Holdings II investors may net an incremental ████████████████████████████████████████████████████████

Significant efforts have included:
- Initiating discussions with HPI management on vision forward and next steps
- Aided HPI management in strengthening its Board of Directors
- Oversight (and evaluation) of HPI platform tuck-in acquisitions:
  - Evaluated acquisition target, transaction structure, financing structure, and other considerations
  - Reviewed integration process of first tuck-in acquisition
  - Evaluated strategic viability and value creation of subsequent tuck-ins
- Oversight (and review) of merger transaction between HPI and another GPB portfolio company (MDS Medical)

### 2) Cantata / Experience Care – underperforming asset support
- Evaluate together with GPB management weaknesses in the investment management ████████████████████████████████
  - Oversee replacement of investment professionals at underperforming investment positions and support transition of investment professionals through Monitor team healthcare expert
- Interface with portfolio companies in collaboration with GPB investment manager to recover value and determine strategic alternatives

## ▶ Portfolio Company Management Support, Replacement, and Incentives
- Reviewed GPB proposals, evaluated alternatives, and provided extensive feedback on portfolio company management incentive programs (as addressed in prior section, "Portfolio Company M&A/Transactions")
- Evaluated possible candidates for management positions and approved executive team hires at energy portfolio companies Erus and Quantum
- Support management retention efforts at portfolio companies together with GPB management (necessary due to the flight risk related to GPB affiliation)

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (c) Oversight of General Partner Management

**General Partner Measures**

The GPB decision-making process has been formalized by the Monitor via an RFA (request for approval) process. The Monitor has worked with GPB on 300+ RFAs across the various types of transactions which require approval pursuant to the Monitor Order. Other Monitor responsibilities have included:

- Advise management and continue to evaluate various options with respect to driving significant cost savings ($5M+ to date) at the General Partner via Reduction in Force implementation, lease transitions, and lower management fees

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (1/2)

The Monitor Order authorizes various historical and financial reviews. The Monitor completed initial reviews as identified specifically in the Monitor Order, as well as identified supplementary detailed reviews necessary to evaluate claims against various third parties and reviews necessary to support distribution strategies (i.e. comingling of assets, interfund transactions, insider payments). Monitor work has included the following:

## Initial Monitor Order Reviews

- Analyzed and summarized GP-level, fund-level, and sub-fund-level historical bank statements and transactions
- Reviewed and analyzed historical corporate transactions (including acquisitions and divestments)
- Analyzed and summarized all trial balance and general ledger entries to create full sources and uses for each fund
- Reviewed executive compensation structure
- Reviewed and summarized executive, consultants, and advisor compensation, including:
  - Created compensation matrix of all former and current executives
  - Reviewed general ledger, payroll system, and bank detail to triangulate correct information
  - Reviewed expense reimbursements
  - Reviewed charge-back / pass-through practices by GPB
- Reviewed and summarized 2013-2021 complete payroll registers (W2 and 1099 pay)
- Analyzed historical financials for 2013-2020 (including accounting records for funds and sub-funds)
- Reviewed financial statements and provided detailed feedback on all audits published to date (AP/H2 Form 10s, 10-Ks/Qs)
- Reviewed all BoD / acquisition committee ("AC") minutes and documentation
- Created litigation tracker and participated in discussions regarding ongoing litigation, including:
  - Reviewed all litigation settlements (often requiring extensive work to support settlement decisions)
- Reviewed all insurance policies
- Reviewed all past communications to investors and brokers, including fund marketing materials

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (2/2)

Included below are supplemental forensic reviews to support third party claims and distribution strategy decisions arising out of the initial reviews:

**Follow-up Workstreams**



- Reconciled investor-level contributions, commissions, distributions, and redemptions to GPB general ledger
- Created a comprehensive LP / fund-level valuation matrix

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (e) Distribution Planning

**Distribution Planning**

Prior to and since the filing of the receivership motion, the Monitor team has continuously engaged in extensive discussions with GPB and Mayer Brown (GPB counsel) to further the development of a distribution plan, including the preparation of a motion, plan exhibit, and supporting analysis. Key efforts include:

- Evaluated possible structure and related issues with respect to making distributions
  - Created investor recovery analysis and full model of investor-by-investor returns to evaluate distribution scenarios across funds
  - Reviewed distribution plan issues (i.e. comingling, interfund loans, co-investments, etc.)
  - Researched precedent for Monitorship / Receivership distribution plans
  - Evaluated GPB proposals of possible distribution scenarios, including:



- Prepared and evaluated alternative scenarios from GPB's proposals

- Prepared declarations in support of the Receivership Motion, including various supporting analyses to substantiate findings

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (f) Further Workstreams Related to Monitor Approvals

**Litigation Support**

Consistent with the Monitor Order, the Monitor has evaluated and approved the resolution of several current litigation matters in order to achieve the best possible return for investors. The below encompasses some of the key activities of the Monitor to assist GPB in litigation-related matters, with efforts to date including (but not limited to) the following:

- Ongoing litigation review and analysis leading to approval
- Resolved Prime Automotive litigation related to David Rosenberg

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

# V. Monitor Fee Summary



# Summary of Fees to Date

Below is a summary of fees invoiced by the Monitor through September 30, 2022:

|  | 1Q 2021 | 2Q 2021 | 3Q 2021 | 4Q 2021 | 1Q 2022 | 2Q 2022 | 3Q 2022 |
|---|---|---|---|---|---|---|---|
| **Monitor Fees** | $ 843,712 | $ 1,994,162 | $ 1,797,863 | $ 1,053,178 | $ 1,554,739 | $ 1,309,741 | $ 1,048,741 |

During the period reflected herein, total legal fees incurred by the Monitor and not included above total approximately $3.35 million.

Monitor Fees in comparison to GPB LP Income:

- As approved by the Monitor, GPB currently invests available cash from portfolio company sales in US Treasury Securities, as a means to generate LP returns in a risk-free manner until distributions to investors can be made

- The interest earned on such invested cash totals approximately $4.1 million as of 9/30/2022, after having been invested for less than six months. Therefore, the interest on cash alone exceeds the total Monitor fees incurred in 2022 to date

- Due to the higher interest rate environment, interest earned in the current quarter is expected to be approximately $2.6 million per month, far exceeding Monitor fees

- Notwithstanding the foregoing, it remains the Monitor's top priority to achieve distribution of available proceeds to investors as soon as possible

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Exhibit 2

# GPB CAPITAL HOLDINGS LLC

January 30, 2023

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

## Q4 2022 – Quarterly Report of Joseph T. Gardemal III, Court-appointed Monitor over GPB Capital Holdings LLC

Joseph T. Gardemal III, CPA
Managing Director
Alvarez & Marsal
655 Fifteenth Street NW
Washington, DC 20005
(202) 729-2131
JGardemal@alvarezandmarsal.com

# Contents

| I. | Introduction | 2 |
|----|--------------|---|
| II. | Background | 4 |
| III. | Status of Monitor's Review | 11 |
| IV. | Monitor Achievements | 19 |
| V. | Monitor Fee Summary | 30 |

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# I. Introduction



# Introduction

This is my seventh quarterly report since my appointment as Monitor. In this report I provide background information about my appointment, an update on the status of the reviews required by the Monitor Order, and some additional information bearing on the Monitorship. My top priority has been and remains achieving the maximum recovery for investors and the distribution of such proceeds as soon as possible.

You rightfully expect distribution of the available proceeds, and it is my priority to achieve this objective. As the Monitor I work to protect your interests but in the current framework can only approve any distribution proposed by management when financial, regulatory, and legal conditions permit.

Pending before the Court is a Motion and proposed Order to convert the Monitorship to a Receivership. One of the requirements set forth in the proposed Order is that the Receiver present a distribution plan to the Court within 45 days of the entry of the Order. If the pending motion is approved, we will move at least that quickly to provide a distribution plan to the Court.

Because much of our ongoing work is sensitive and involves litigation and efforts to maximize the value of investments, I have redacted certain sections of this report to maintain confidentiality.

**Joseph T. Gardemal III**
Court-appointed Monitor, GPB Capital Holdings, LLC
Washington, D.C.
January 30, 2023

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

## II. Background



# Background

**On February 11, 2021, I, Joseph T. Gardemal III, a Managing Director with Alvarez & Marsal in Washington, DC, was appointed as the independent Monitor over GPB Capital Holdings LLC by the Honorable Chief Judge Margo K. Brodie, United States District Judge for the Eastern District of New York. The Order states that the Monitor shall remain in place until terminated by Order of the Court.**

**On April 14, 2021, Chief Judge Brodie approved amendments to the order as proposed by the SEC and GPB.**

**The Order outlines the Monitor's general powers and duties as follows:**

1.   **The authority to approve or disapprove the following actions (Paragraph 6):**

   a.   Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate;

   b.   Any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws;

   c.   Any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

   d.   Any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

   e.   Any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

   f.   Any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

   g.   Any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order outlines the Monitor's general powers and duties as follows (Continued):**

**2.  The authorization and empowerment to: (Paragraph 11):**

a.  Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.  Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.  Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.  Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.  Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;

f.  Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.  Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.

h.  Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.  Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.  Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.  Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order requires the Monitor to provide the following recommendations and reports:**

1. **Paragraph 23 – within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").**

   • This report will provide an overview of the status of each contemplated review outlined in paragraphs 8 through 14.

2. **Paragraph 24 – The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the Monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.**

   • On April 12, 2021, the Monitor submitted his recommendation to continue the Monitorship for a period of at least 180 days.

3. **Paragraph 25 – the Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.**

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of recent developments between GPB, David Gentile and the SEC:**

1. **Violation of court order and notice to GPB:**

   a. On May 29, 2022, I was informed through Mayer Brown LLP, counsel to GPB Capital Holdings, that David Gentile had documents delivered to the Company reflecting that Mr. Gentile had purported to take actions, as of May 27, 2022, (i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation arrangements with respect to non-employee Managers ((i) and (ii) collectively, the "May 27, 2022 Purported Actions").

   b. On May 31, 2022, I provided formal notice to GPB in my capacity as Monitor under the Amended Order, that the May 27, 2022 Purported Actions, among other things, violate Sections 6(d) and 6(e) of the Amended Order (the "Material Non-Compliance"). In accordance therewith, I further provided the Company notice that the Company had ten (10) business days in which to cure the Material Non-Compliance, and if such cure did not occur within such period, the remedies described in Section 21 of the Amended Order may be invoked with immediate effect.

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   a. Section 21 of the Amended Order outlines the remedies for the SEC in the event of GPB's non-compliance with the Amended Order: "If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership."

   b. On June 13, 2022, the SEC filed a motion to request the conversion of the Monitorship to a receivership as a result of continuing violations of the Order, following the above-referenced notice provided by me in my capacity as Monitor under the Amended Order, and pursuant to the remedies provided for in Section 21 of the Amended Order.

   *(continued in next page)*

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of recent developments between GPB, David Gentile, and the SEC (cont.):**

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   c.   On July 1, 2022, GPB Capital Holdings LLC filed a memorandum in response to the SEC's motion for the order appointing a receiver and imposing a litigation injunction, stating that, *"Defendant GPB Capital Holdings, LLC respectfully submits this memorandum to reiterate its consent, on behalf of its Chief Executive Officer ("CEO"), Rob Chmiel, to the relief the Securities and Exchange Commission ("SEC") requests in its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction (the "Receivership Motion")."*

   d.   Concurrent with the SEC's motion on June 13, 2022, and subsequently on July 8, 2022, I provided written declarations in support of the SEC's motion for appointment of a receiver over GPB Capital Holdings LLC and its affiliates.

---

**It is my opinion that GPB Investors will benefit from a receivership in several ways:**
1.   Investors will be able to receive cash distributions, which will offset tax liabilities caused by phantom income incurred to date.
2.   GPB will reduce the cost to run the funds by eliminating duplicative professional fees.

---

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (1/2):**

1. **Financial Reporting:**

   a. On May 14, 2021, the Form 10 for Automotive Portfolio LP was initially filed for the 3-year period ended 12/31/2020. The filing was last amended on September 9, 2021, and the amendment covered the additional period ending 3/31/2021.

   b. On August 26, 2021, the first 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2021.

   c. In November 2021, the audit for Cold Storage LP for the year ended 12/31/2020 was finalized and published to investors.

   d. GPB, with my approval, has engaged new valuation and tax service providers.

   e. Fair Market Value statements as of 9/30/2021 have been sent to all investors in Holdings I LP, Holdings II LP, Automotive Portfolio LP, Waste Management LP, Cold Storage LP, and New York City Development LP.

   f. Fair Market Value statements as of 12/31/2021 have been sent to all investors in Holdings II LP, Automotive Portfolio LP, Waste Management LP, and Cold Storage LP.

   g. On April 14, 2022, the first 10-K for Automotive Portfolio LP was filed for the year ended 12/31/2021.

   h. On May 13, 2022, the Form 10 Registration Statement for Holdings II LP was initially filed for the 3-year period ended 12/31/2021. The filing was last amended on July 22, 2022, and the amendment covered the additional period ending 3/31/2022.

   i. The Company is current on all SEC filings and continues to file all required financial statements on time.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (2/2):**

2. **GPB Investments:**

   a.  In November 2021, GPB completed the sale of Prime Automotive Group and substantially all of its auto related assets to Group 1 Automotive.

   b.  In December 2021, GPB completed the sale of Alliance Physical Therapy Group to Chicago-based healthcare investment firm BPOC.

   c.  In Q1, 2022, GPB completed the sales of Greenwave Energy, as well as certain assets of Waste Management LP.

   d.  On April 7, 2022, GPB finalized the sale of the ±30-acre parcel of land owned by Cold Storage LP.

   e.  The completed sale transactions to date have returned approximately $1 billion in gross proceeds to GPB partnerships.

   f.  Under the supervision of the Monitor, GPB continues to market certain of its assets for sale and will update investors upon any successful exit.

   g.  Completed two tuck-in acquisitions to enhance the remaining portfolio value for investors.

   h.  Several Limited Partnerships are expected to enter wind-down following the exit of investments within the respective Limited Partnerships.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# III. Status of Monitor's Review



# Status of the Monitor's Review

**Upon appointment by the Court, the Monitor and GPB worked diligently to establish an efficient protocol to effectuate the Monitor approval process required by Paragraph 6 of the Order.**

**The Monitor team provided a diligence list identifying specific data and documents needed to perform its duties as outlined in Paragraph 11.**

- As of the date of this report GPB has substantially completed the diligence requests by the Monitor, who has obtained the data needed to perform his reviews contemplated in the Order.

**As required by the Order, and to the extent appropriate, the status of the contemplated reviews in Paragraphs 8 through 14 have been classified as the following:**

- Complete: the review process as contemplated in the order has been finalized.
- Ongoing: the review process has commenced; additional procedures are needed.
- Pending: the review process has not yet begun; awaiting additional data or documents.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 8: GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.**

- Through the date of this report GPB has taken reasonable efforts to fulfill the Monitor's requests for documents. While requests may continue to arise as the Monitor completes his reviews, the Monitor has not experienced any unreasonable delays and any currently outstanding requests are related to follow up questions from the Monitor's review of the initial information provided.

**Paragraph 9: For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.**

- All Monitor requests have been made to either GPB's General Counsel or Chief Financial Officer/Chief Executive Officer.

**Paragraph 10: If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.**

- GPB's General Counsel and Chief Financial Officer/Chief Executive Officer have been appropriately receptive and responsive to follow up questions and/or requests.

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11a: Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to historical activity. Ongoing with respect to current operations.

**Paragraph 11b: Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information.**

- Status: Ongoing.

**Paragraph 11c: Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete.

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11d: Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to consultants retained at the appointment of the Monitor. Ongoing with respect to continuing operations.

**Paragraph 11e: Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;**

- Status: Ongoing – audited financial statements of GPB, Highline, and the GPB funds have been reviewed to the extent they are final and have been published. Additional audits for certain of the relevant entities are still in progress.

**Paragraph 11f: Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;**

- Status: Complete with respect to historical minutes. Ongoing with respect to current operations.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# Status of the Monitor's Review (Continued)

**Paragraph 11g: Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Ongoing – the initial review has been completed. However, the Monitor continues to receive updates from GPB/Highline as litigation involving the relevant entities continues.

**Paragraph 11h: Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies.**

- Status: Ongoing – the Monitor continues to be notified and reviews new developments. The review of any commencement or settlement of litigation involving the relevant entities continues.

**Paragraph 11i: Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change.**

- Status: Ongoing.

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11j: Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities.**

- Status: Complete with respect to policies in place at the Monitor's appointment. Ongoing with respect to current operations.

**Paragraph 11k: Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.**

- Status: Ongoing. The Monitor continues to work actively with GPB/Highline on updates to investor communications and the GPB website content.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 12: GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.**

- Status: Complete.

**Paragraph 13: GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.**

- Status: Ongoing – the Monitor team has reviewed the valuation reports of GPB/Highline's valuation service provider. Fair Market Value statements were finalized and sent to investors. The Monitor continues to review updated reports.

**Paragraph 14: GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.**

- Status: Complete. The Monitor continues to work with Management related to the operation of the Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**

# IV. Monitor Achievements

*(a) Portfolio Company M&A / Transactions*

*(b) Oversight of Portfolio Operations*

*(c) Oversight of General Partner Management*

*(d) Forensic Review of GPB's Operations / Financials*

*(e) Distribution Planning*

*(f) Further Workstreams Related to Monitor Approvals*



# (a) Portfolio Company M&A / Transactions (1/4)

This section depicts Monitor team activities related to GPB portfolio company sale transactions. The scope and nature of these transactions required substantial and ongoing analysis to guide GPB and ultimately approve transactions that maximize value to LPs and ultimately investors.

To date, efforts by GPB with the support of the Monitor have combined to realize over $1 billion in proceeds to GPB investors from portfolio company transactions.

**Prime Automotive Group** *(sale occurred November 2021, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Advised on strategic alternatives to recover and maximize value for LPs, as Prime Automotive Group was facing imminent risk of loss of value due to OEMs' and lenders' attempts to terminate franchise and loan agreements due to the association with GPB
  - Strategic alternatives included SPAC sale, management buyout/ separation proposal, going-concern sale, sale in parts, etc.
- Provided sale process oversight and strategic direction throughout, including i.e. participation in management meetings, and resolving conflicts between key individuals at GPB/Highline and Prime and the attempt by management to separate from GPB
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Managed GPB/Prime relationships with OEMs, in particular ███████████████
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Guided discussions related to the structuring, extending, and replacing of four financing agreements following several threatened and/or actual terminations by ███████████████████████████, including vetting new potential credit providers
- Advised on the sale of several one-off dealerships and associated real estate
- Continue to support post-transaction work, including negotiation of (and performance under) transition service agreements, OEM litigation oversight with Subaru New England, claims management oversight, receivables collection, asset liquidation, review of equity structures and minority stakeholders, and review of staffing and compensation for wind-down team

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| **$907 million**[1] | **$466 million**[2] | **195%** |

[1] Includes net proceeds from Prime Automotive Group and real estate also included in the GPB Automotive Portfolio. Please refer to page F-27 of the 2021 GPB Automotive Portfolio 10-K and page F-25 of the GPB Holdings II Form 10
[2] Book value as of 12/31/2020, pursuant to the GPB Automotive Portfolio LP and GPB Holdings II LP Form 10 filings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (2/4)

**Alliance Physical Therapy** *(sale occurred December 2021)*
The Monitor team was heavily involved in GPB's disposition of Alliance Physical Therapy. Efforts included:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale and structure of the same
  - Continued to provide strategic oversight throughout the process with respect to escrow considerations, review of M&A agreements, structuring of the sale, evaluation of potential buyers, etc.
- Reviewed all candidates and supported advisor selecting for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| **$119 million** | **$56 million**[1] | **213%** |

[1] Book value as of 12/31/2020. The nearest third-party fair market valuation (as of 6/30/2019) indicated a FMV within ~4% of the 12/31/2020 book value

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (3/4)

**Armada Waste Management**

*(Sale of Capitol Waste, Iron City Express, MudMasters complete with wind-down ongoing, sale of Buckeye ongoing)*
Assets in the Armada portfolio have been sold separately in five transactions to date. Efforts include:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale options in parts or as one entity
- Continue to support management in the reevaluation of different divestment alternatives as the sale process repeatedly proved difficult due to the lack of financial performance of the assets
- Reviewed all candidates and supported advisor selecting for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Provided guidance with respect to various performance issues at Armada entities, ███████████████████████████████
███████████████████
- Provide general project/sale management oversight (multiple different subsidiaries were sold to multiple different buyers)
- Reviewed relevant agreements (asset purchase agreements) as part of advising on sale terms, considerations, and structure
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Continue to review and evaluate ███████████████

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| **Sale not complete** | **$26 million** | **N/A** |

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (4/4)

**Cold Storage** *(sale occurred April 2022, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of a ±30-acre parcel of land that was owned by GPB Cold Storage. Efforts included:

- Reviewed and discussed several potential options/alternatives for cash flow, including leasing a portion of the real estate, and eventually structuring an agreement to sell the asset
- Provided guidance on sale process following a previously failed attempt by GPB to sell the property in 2020
- Repeatedly engaged in discussions around title insurance due to heightened concern of third party providers over engagement with GPB entities

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $78 million | $58 million | 134% |

**Other Sale or Restructuring Transactions of GPB investments / Portfolio Companies**
Other GPB positions that have received substantial Monitor support include:

- Sale process of Greenwave Energy, ITelagen
- Restructuring transaction of failed investment Insightra
- Pursuit of recovery actions with respect to debt positions Hycor and Tampa Riverwalk
- Ongoing oversight of negotiations to reduce fund-level indebtedness at NYC Development

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (b) Oversight of Portfolio Operations

Additional Monitor involvement has included:

## ▶ Maximization of Portfolio Company Value

**1) Health Prime International (HPI) – oversight of integration and GPB growth strategy**
████████████████████████████████████. The Monitor has spent considerable time working with GPB to drive accretive value and position the company for an eventual sale. In total, Holdings II investors may net an incremental ████████████████████████████████████

Significant efforts have included:
- Initiating discussions with HPI management on vision forward and next steps
- Aided HPI management in strengthening its Board of Directors
- Oversight (and evaluation) of HPI platform tuck-in acquisitions:
  - Evaluated acquisition target, transaction structure, financing structure, and other considerations
  - Reviewed integration process of first tuck-in acquisition
  - Evaluated strategic viability and value creation of subsequent tuck-ins
- Oversight (and review) of merger transaction between HPI and another GPB portfolio company (MDS Medical)

**2) Cantata / Experience Care – underperforming asset support**
- Evaluate together with GPB management weaknesses in the investment management ████████████████████████
  - Oversee replacement of investment professionals at underperforming investment positions and support transition of investment professionals through Monitor team healthcare expert
- Interface with portfolio companies in collaboration with GPB investment manager to recover value and determine strategic alternatives

## ▶ Portfolio Company Management Support, Replacement, and Incentives

- Reviewed GPB proposals, evaluated alternatives, and provided extensive feedback on portfolio company management incentive programs (as addressed in prior section, "Portfolio Company M&A/Transactions")
- Evaluated possible candidates for management positions and approved executive team hires at energy portfolio companies Erus and Quantum
- Support management retention efforts at portfolio companies together with GPB management (necessary due to the flight risk related to GPB affiliation)

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (c) Oversight of General Partner Management

**General Partner Measures**

The GPB decision-making process has been formalized by the Monitor via an RFA (request for approval) process. The Monitor has worked with GPB on 300+ RFAs across the various types of transactions which require approval pursuant to the Monitor Order. Other Monitor responsibilities have included:

- Advise management and continue to evaluate various options with respect to driving significant cost savings ($5M+ to date) at the General Partner primarily <mark>due to Reduction in Force implementation</mark>
- Due to continued efforts to reduce costs and overhead, 2022 management fees charged and paid by all GBP funds were approximately $9.2M less than the management fees allowed under the partnership agreements

- ███████████████████████████████████████████████████

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.™

# (d) Forensic Review of GPB's Operations / Financials (1/2)

The Monitor Order authorizes various historical and financial reviews. The Monitor completed initial reviews as identified specifically in the Monitor Order, as well as identified supplementary detailed reviews necessary to evaluate claims against various third parties and reviews necessary to support distribution strategies (i.e. comingling of assets, interfund transactions, insider payments). Monitor work has included the following:

## Initial Monitor Order Reviews

- Analyzed and summarized GP-level, fund-level, and sub-fund-level historical bank statements and transactions
- Reviewed and analyzed historical corporate transactions (including acquisitions and divestments)
- Analyzed and summarized all trial balance and general ledger entries to create full sources and uses for each fund
- Reviewed executive compensation structure
- Reviewed and summarized executive, consultants, and advisor compensation, including:
  - Created compensation matrix of all former and current executives
  - Reviewed general ledger, payroll system, and bank detail to triangulate correct information
  - Reviewed expense reimbursements
  - Reviewed charge-back / pass-through practices by GPB
- Reviewed and summarized 2013-2021 complete payroll registers (W2 and 1099 pay)
- Analyzed historical financials for 2013-2020 (including accounting records for funds and sub-funds)
- Reviewed financial statements and provided detailed feedback on all audits published to date (AP/H2 Form 10s, 10-Ks/Qs)
- Reviewed all BoD / acquisition committee ("AC") minutes and documentation
- Created litigation tracker and participated in discussions regarding ongoing litigation, including:
  - Reviewed all litigation settlements (often requiring extensive work to support settlement decisions)
- Reviewed all insurance policies
- Reviewed all past communications to investors and brokers, including fund marketing materials

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (2/2)

Included below are supplemental forensic reviews to support third party claims and distribution strategy decisions arising out of the initial reviews:

**Follow-up Workstreams**



- Reconciled investor-level contributions, commissions, distributions, and redemptions to GPB general ledger
- Created a comprehensive LP / fund-level valuation matrix

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**

# (e) Distribution Planning

## Distribution Planning

Prior to and since the filing of the receivership motion, the Monitor team has continuously engaged in extensive discussions with GPB and Mayer Brown (GPB counsel) to further the development of a distribution plan, including the preparation of a motion, plan exhibit, and supporting analysis. Key efforts include:

- Evaluated possible structure and related issues with respect to making distributions
  - Created investor recovery analysis and full model of investor-by-investor returns to evaluate distribution scenarios across funds
  - Reviewed distribution plan issues (i.e. comingling, interfund loans, co-investments, etc.)
  - Researched precedent for Monitorship / Receivership distribution plans
  - Evaluated GPB proposals of possible distribution scenarios, including:

  - Prepared and evaluated alternative scenarios from GPB's proposals

- Prepared declarations in support of the Receivership Motion, including various supporting analyses to substantiate findings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (f) Further Workstreams Related to Monitor Approvals

**Litigation Support**

Consistent with the Monitor Order, the Monitor has evaluated and approved the resolution of several current litigation matters in order to achieve the best possible return for investors. The below encompasses some of the key activities of the Monitor to assist GPB in litigation-related matters, with efforts to date including (but not limited to) the following:

- Ongoing litigation review and analysis leading to approval
- Resolved Prime Automotive litigation related to David Rosenberg

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# V. Monitor Fee Summary



# Summary of Fees to Date

Below is a summary of fees invoiced by the Monitor and his financial advisors through December 31, 2022:

| | **2021** | **2022** |
|---|---|---|
| Monitor Fees | $5,688,915 | $4,502,240 |

During the period reflected herein, total legal fees incurred by the Monitor and not included above total approximately $3.7 million.

## Monitor Fees in comparison to GPB LP Interest Income:

- As approved by the Monitor, GPB currently invests available cash from portfolio company sales in US Treasury Securities, as a means to generate LP returns in a risk-free manner until distributions to investors can be made.

- The interest earned on such invested cash totals approximately $10.9 million as of December 31, 2022, after having been invested for less than nine months. Therefore, the interest on cash alone exceeds the total Monitor fees incurred in 2022.

- Due to the higher interest rate environment, interest earned in the current quarter is expected to be approximately $3.0 million per month, far exceeding Monitor fees.

- Notwithstanding the foregoing, it remains the Monitor's top priority to achieve distribution of available proceeds to investors as soon as possible.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Exhibit 3

# GPB CAPITAL HOLDINGS LLC

April 28, 2023

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

## Q1 2023 – Quarterly Report of Joseph T. Gardemal III, Court-appointed Monitor over GPB Capital Holdings LLC

Joseph T. Gardemal III, CPA
Managing Director
Alvarez & Marsal
655 Fifteenth Street NW
Washington, DC 20005
(202) 729-2131
JGardemal@alvarezandmarsal.com



# Contents

| I. | Introduction | 2 |
|---|---|---|
| II. | Background | 4 |
| III. | Status of Monitor's Review | 12 |
| IV. | Monitor Achievements | 20 |
| V. | Monitor Fee Summary | 31 |

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# I. Introduction



# Introduction

This is my eighth quarterly report since my appointment as Monitor.

I, along with management and investors, continue to be frustrated by GPB's inability to make distributions. You rightfully expect distribution of the available proceeds from the sale of fund assets, and it is my priority to achieve this objective. As the Monitor I work to protect your interests but, as I note below, under the current framework I can only approve any distribution proposed by GPB management when financial, regulatory, and legal conditions permit. The available funds that GPB has raised from the sale of assets are currently invested in conservative vehicles that are generating a reasonable return, as discussed later in this report.

Pending before the Court since June 13, 2022 is a motion and proposed order to convert the Monitorship to a Receivership. By letter dated February 27, 2023, my legal counsel has confirmed to the Court that the motion is fully briefed. As I have previously written, one of the requirements set forth in the proposed order accompanying the motion is that the Receiver present a distribution plan to the Court within 45 days of the entry of the Order.  If the pending motion is approved, we will move at least that quickly to provide a distribution plan to the Court.

In the related criminal case, the U.S. District Court for the Eastern District of New York has now set a trial date in June 2024. Under agreements entered into prior to the indictment (which GPB management unsuccessfully attempted to challenge with respect to Mr. Schneider), GPB is required to advance legal fees and costs to the criminal defendants and certain other parties. Given that the criminal trial will not begin for over a year, GPB management believes that these expenses will continue to be material.

As with my prior reports, because much of our ongoing work is sensitive and involves litigation and efforts to maximize the value of investments, I have redacted certain sections of this report to maintain confidentiality.

**Joseph T. Gardemal III**
Court-appointed Monitor, GPB Capital Holdings, LLC
Washington, D.C.
April 28, 2023

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# II. Background



# Background

On February 11, 2021, I, Joseph T. Gardemal III, a Managing Director with Alvarez & Marsal in Washington, DC, was appointed as the independent Monitor over GPB Capital Holdings LLC by the Honorable Chief Judge Margo K. Brodie, United States District Judge for the Eastern District of New York. The Order states that the Monitor shall remain in place until terminated by Order of the Court.

On April 14, 2021, Chief Judge Brodie approved amendments to the order as proposed by the SEC and GPB.

The Order outlines the Monitor's general powers and duties as follows:

1.   The authority to approve or disapprove the following actions (Paragraph 6):

   a.   Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate;

   b.   Any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws;

   c.   Any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

   d.   Any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

   e.   Any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

   f.   Any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

   g.   Any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order outlines the Monitor's general powers and duties as follows (Continued):**

**2.   The authorization and empowerment to: (Paragraph 11):**

a.   Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.   Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.   Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.   Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.   Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;

f.   Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.   Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.

h.   Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.   Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.   Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.   Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order requires the Monitor to provide the following recommendations and reports:**

1. **Paragraph 23 – within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").**

   - This report will provide an overview of the status of each contemplated review outlined in paragraphs 8 through 14.

2. **Paragraph 24 – The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the Monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.**

   - On April 12, 2021, the Monitor submitted his recommendation to continue the Monitorship for a period of at least 180 days.

3. **Paragraph 25 – the Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.**

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Background (Continued)

**Overview of recent developments between GPB, David Gentile and the SEC:**

1. **Violation of court order and notice to GPB:**

   a. On May 29, 2022, I was informed through Mayer Brown LLP, counsel to GPB Capital Holdings, that David Gentile had documents delivered to the Company reflecting that Mr. Gentile had purported to take actions, as of May 27, 2022, (i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation arrangements with respect to non-employee Managers ((i) and (ii) collectively, the "May 27, 2022 Purported Actions").

   b. On May 31, 2022, I provided formal notice to GPB in my capacity as Monitor under the Amended Order, that the May 27, 2022 Purported Actions, among other things, violate Sections 6(d) and 6(e) of the Amended Order (the "Material Non-Compliance"). In accordance therewith, I further provided the Company notice that the Company had ten (10) business days in which to cure the Material Non-Compliance, and if such cure did not occur within such period, the remedies described in Section 21 of the Amended Order may be invoked with immediate effect.

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   a. Section 21 of the Amended Order outlines the remedies for the SEC in the event of GPB's non-compliance with the Amended Order: "If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership."

   b. On June 13, 2022, the SEC filed a motion to request the conversion of the Monitorship to a receivership as a result of continuing violations of the Order, following the above-referenced notice provided by me in my capacity as Monitor under the Amended Order, and pursuant to the remedies provided for in Section 21 of the Amended Order.

   *(continued in next page)*

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of recent developments between GPB, David Gentile, and the SEC (cont.):**

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   c.  On July 1, 2022, GPB Capital Holdings LLC filed a memorandum in response to the SEC's motion for the order appointing a receiver and imposing a litigation injunction, stating that, *"Defendant GPB Capital Holdings, LLC respectfully submits this memorandum to reiterate its consent, on behalf of its Chief Executive Officer ("CEO"), Rob Chmiel, to the relief the Securities and Exchange Commission ("SEC") requests in its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction (the "Receivership Motion")."*

   d.  Concurrent with the SEC's motion on June 13, 2022, and subsequently on July 8, 2022, I provided written declarations in support of the SEC's motion for appointment of a receiver over GPB Capital Holdings LLC and its affiliates.

3. **The SEC's motion to convert the Monitorship to a receivership is fully submitted and remains pending with the Court.**

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (1/2):**

1. **Financial Reporting:**

   a.  On May 14, 2021, the Form 10 for Automotive Portfolio LP was initially filed for the 3-year period ended 12/31/2020. The filing was last amended on September 9, 2021, and the amendment covered the additional period ending 3/31/2021.

   b.  On August 26, 2021, the first 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2021.

   c.  In November 2021, the audit for Cold Storage LP for the year ended 12/31/2020 was finalized and published to investors.

   d.  GPB, with my approval, has engaged new valuation and tax service providers.

   e.  Fair Market Value statements as of 9/30/2021 have been sent to all investors in Holdings I LP, Holdings II LP, Automotive Portfolio LP, Waste Management LP, Cold Storage LP, and New York City Development LP.

   f.  Fair Market Value statements as of 12/31/2021 have been sent to all investors in Holdings II LP, Automotive Portfolio LP, Waste Management LP, and Cold Storage LP.

   g.  On April 14, 2022, the first 10-K for Automotive Portfolio LP was filed for the year ended 12/31/2021.

   h.  On May 13, 2022, the Form 10 Registration Statement for Holdings II LP was initially filed for the 3-year period ended 12/31/2021. The filing was last amended on July 22, 2022, and the amendment covered the additional period ending 3/31/2022.

   i.  The Company is current on all SEC filings and continues to file all required financial statements on time.

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (2/2):**

2. **GPB Investments:**

   a.  In November 2021, GPB completed the sale of Prime Automotive Group and substantially all of its auto related assets to Group 1 Automotive.

   b.  In December 2021, GPB completed the sale of Alliance Physical Therapy Group to Chicago-based healthcare investment firm BPOC.

   c.  In Q1, 2022, GPB completed the sales of Greenwave Energy, the real estate of its former Tower Ford dealership, as well as certain assets of Waste Management LP.

   d.  On April 7, 2022, GPB finalized the sale of the ±30-acre parcel of land owned by Cold Storage LP.

   e.  The completed sale transactions to date have returned approximately $1 billion in gross proceeds to GPB partnerships.

   f.  Under the supervision of the Monitor, GPB continues to market certain of its assets for sale and will update investors upon any successful exit.

   g.  Completed three tuck-in acquisitions to enhance the remaining portfolio value for investors.

   ————

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**

# III. Status of Monitor's Review



# Status of the Monitor's Review

**Upon appointment by the Court, the Monitor and GPB worked diligently to establish an efficient protocol to effectuate the Monitor approval process required by Paragraph 6 of the Order.**

**The Monitor team provided a diligence list identifying specific data and documents needed to perform its duties as outlined in Paragraph 11.**

- As of the date of this report GPB has substantially completed the diligence requests by the Monitor, who has obtained the data needed to perform his reviews contemplated in the Order.

**As required by the Order, and to the extent appropriate, the status of the contemplated reviews in Paragraphs 8 through 14 have been classified as the following:**

- Complete: the review process as contemplated in the order has been finalized.
- Ongoing: the review process has commenced; additional procedures are needed.
- Pending: the review process has not yet begun; awaiting additional data or documents.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 8: GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.**

- Through the date of this report GPB has taken reasonable efforts to fulfill the Monitor's requests for documents. While requests may continue to arise as the Monitor completes his reviews, the Monitor has not experienced any unreasonable delays and any currently outstanding requests are related to follow up questions from the Monitor's review of the initial information provided.

**Paragraph 9: For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.**

- All Monitor requests have been made to either GPB's General Counsel or Chief Financial Officer/Chief Executive Officer.

**Paragraph 10: If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.**

- GPB's General Counsel and Chief Financial Officer/Chief Executive Officer have been appropriately receptive and responsive to follow up questions and/or requests.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11a: Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to historical activity. Ongoing with respect to current operations.

**Paragraph 11b: Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information.**

- Status: Ongoing.

**Paragraph 11c: Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete.

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION.** **RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11d: Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to consultants retained at the appointment of the Monitor. Ongoing with respect to continuing operations.

**Paragraph 11e: Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;**

- Status: Ongoing – audited financial statements of GPB, Highline, and the GPB funds have been reviewed to the extent they are final and have been published. Additional audits for certain of the relevant entities are still in progress.

**Paragraph 11f: Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;**

- Status: Complete with respect to historical minutes. Ongoing with respect to current operations.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11g: Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Ongoing – the initial review has been completed. However, the Monitor continues to receive updates from GPB/Highline as litigation involving the relevant entities continues.

**Paragraph 11h: Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies.**

- Status: Ongoing – the Monitor continues to be notified and reviews new developments. The review of any commencement or settlement of litigation involving the relevant entities continues.

**Paragraph 11i: Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change.**

- Status: Ongoing.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# Status of the Monitor's Review (Continued)

**Paragraph 11j: Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities.**

- Status: Complete with respect to policies in place at the Monitor's appointment. Ongoing with respect to current operations.

**Paragraph 11k: Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.**

- Status: Ongoing. The Monitor continues to work actively with GPB/Highline on updates to investor communications and the GPB website content.

ALVAREZ & MARSAL

LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 12: GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.**

- Status: Complete.

**Paragraph 13: GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.**

- Status: Ongoing – the Monitor team continues to review updated valuation reports provided by GPB/Highline's valuation service provider.

**Paragraph 14: GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.**

- Status: Complete. The Monitor continues to work with Management related to the operation of the Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# IV. Monitor Achievements

(a) Portfolio Company M&A / Transactions
(b) Oversight of Portfolio Operations
(c) Oversight of General Partner Management
(d) Forensic Review of GPB's Operations / Financials
(e) Distribution Planning
(f) Further Workstreams Related to Monitor Approvals



# (a) Portfolio Company M&A / Transactions (1/4)

This section depicts Monitor team activities related to GPB portfolio company sale transactions. The scope and nature of these transactions required substantial and ongoing analysis to guide GPB and ultimately approve transactions that maximize value to LPs and ultimately investors.

To date, efforts by GPB with the support of the Monitor have combined to realize over $1 billion in proceeds to GPB investors from portfolio company transactions.

**Prime Automotive Group** *(sale occurred November 2021, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Advised on strategic alternatives to recover and maximize value for LPs, as Prime Automotive Group was facing imminent risk of loss of value due to OEMs' and lenders' attempts to terminate franchise and loan agreements due to the association with GPB
  - Strategic alternatives included SPAC sale, management buyout/ separation proposal, going-concern sale, sale in parts, etc.
- Provided sale process oversight and strategic direction throughout, including i.e. participation in management meetings, and resolving conflicts between key individuals at GPB/Highline and Prime and the attempt by management to separate from GPB
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Managed GPB/Prime relationships with OEMs, in particular ███████████████
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Guided discussions related to the structuring, extending, and replacing of four financing agreements following several threatened and/or actual terminations by ████████████████████████████, including vetting new potential credit providers
- Advised on the sale of several one-off dealerships and associated real estate
- Continue to support post-transaction work, including negotiation of (and performance under) transition service agreements, OEM litigation oversight with Subaru New England, claims management oversight, receivables collection, asset liquidation, review of equity structures and minority stakeholders, and review of staffing and compensation for wind-down team

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| **$907 million**[1] | **$466 million**[2] | **195%** |

[1] Includes net proceeds from Prime Automotive Group and real estate also included in the GPB Automotive Portfolio. Please refer to page F-27 of the 2021 GPB Automotive Portfolio 10-K and page F-25 of the GPB Holdings II Form 10
[2] Book value as of 12/31/2020, pursuant to the GPB Automotive Portfolio LP and GPB Holdings II LP Form 10 filings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (2/4)

**Alliance Physical Therapy** *(sale occurred December 2021)*

The Monitor team was heavily involved in GPB's disposition of Alliance Physical Therapy. Efforts included:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale and structure of the same
  - Continued to provide strategic oversight throughout the process with respect to escrow considerations, review of M&A agreements, structuring of the sale, evaluation of potential buyers, etc.
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $119 million | $56 million[1] | 213% |

[1] Book value as of 12/31/2020. The nearest third-party fair market valuation (as of 6/30/2019) indicated a FMV within ~4% of the 12/31/2020 book value

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (3/4)

**Armada Waste Management**

*(Sale of Capitol Waste, OnDemand Container, Iron City Express, Buckeye, and MudMasters Ohio complete with sale of* ██████████ *ongoing)*

Assets in the Armada portfolio have been sold separately in four transactions to date. Efforts include:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale options in parts or as one entity
- Continue to support management in the reevaluation of different divestment alternatives as the sale process repeatedly proved difficult due to the lack of financial performance of the assets
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Provided guidance with respect to various performance issues at Armada entities, ████████████████████ ████████████████
- Provide general project/sale management oversight (multiple different subsidiaries were sold to multiple different buyers)
- Reviewed relevant agreements (asset purchase agreements) as part of advising on sale terms, considerations, and structure
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Continue to review and evaluate ██████████████

| Realized LP Proceeds in Monitorship to date | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $13 million | $26 million | N/A |

**ALVAREZ & MARSAL**

LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (4/4)

**Cold Storage** *(sale occurred April 2022, wind-down activities ongoing)*

The Monitor team was heavily involved in GPB's disposition of a ±30-acre parcel of land that was owned by GPB Cold Storage. Efforts included:

- Reviewed and discussed several potential options/alternatives for cash flow, including leasing a portion of the real estate, and eventually structuring an agreement to sell the asset
- Provided guidance on sale process following a previously failed attempt by GPB to sell the property in 2020
- Repeatedly engaged in discussions around title insurance due to heightened concern of third-party providers over engagement with GPB entities

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $78 million | $58 million | 134% |

**Other Sale or Restructuring Transactions of GPB investments / Portfolio Companies**

Other GPB positions that have received substantial Monitor support include:

- Sale process of Greenwave Energy, ITelagen
- Restructuring transaction of failed investment Insightra
- Pursuit of recovery actions with respect to debt and equity positions Hycor and Tampa Riverwalk
- Ongoing oversight of negotiations to reduce fund-level indebtedness at NYC Development
- Review of recent financial performance of ████████

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# (b) Oversight of Portfolio Operations

Additional Monitor involvement has included:

**▶ Maximization of Portfolio Company Value**

**1) Health Prime International (HPI)** **– oversight of integration and GPB growth strategy**
███████████████████████████████████████████. The Monitor has spent considerable time working with GPB to drive accretive value and position the company for an eventual sale. In total, Holdings II investors may net an incremental ████████████████████████████ Significant efforts have included:
- Initiating discussions with HPI management on vision forward and next steps
- Aided HPI management in strengthening its Board of Directors
- Oversight (and evaluation) of HPI platform tuck-in acquisitions:
  - Evaluated acquisition target, transaction structure, financing structure, and other considerations
  - Reviewed integration process of first and second tuck-in acquisitions
  - Evaluated strategic viability and value creation of subsequent tuck-ins
- Oversight (and review) of merger transaction between HPI and another GPB portfolio company (MDS Medical)

**2) Cantata / Experience Care**████████████████ **underperforming asset support**
- Evaluate together with GPB management weaknesses in the investment management ████████████████████████████
  - Oversee replacement of investment professionals at underperforming investment positions and support transition of investment professionals through Monitor team industry experts
- Interface with portfolio companies in collaboration with GPB investment manager to recover value and determine strategic alternatives

**▶ Portfolio Company Management Support, Replacement, and Incentives**

- Reviewed GPB proposals, evaluated alternatives, and provided extensive feedback on portfolio company management incentive programs (as addressed in prior section, "Portfolio Company M&A/Transactions")
- Continued evaluation of possible candidates for management positions and board members at portfolio companies
- Support management retention efforts at portfolio companies together with GPB management (necessary due to the flight risk related to GPB affiliation)

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (c) Oversight of General Partner Management

**General Partner Measures**

The GPB decision-making process has been formalized by the Monitor via an RFA (request for approval) process. The Monitor has worked with GPB on 340+ RFAs across the various types of transactions which require approval pursuant to the Monitor Order. Other Monitor responsibilities have included:

- Advise management and continue to evaluate various options with respect to driving significant cost savings ($19M+ reduction in operating costs between FYE 2021 and FYE 2022) primarily due to ongoing Reduction in Force implementation and reduction in professional fees

- The above reduction in operating costs and fees was partially offset by increased legal fees due to the legal fee advancement obligations of ongoing criminal and civil litigations of GPB Capital Holdings in the amount of $13M in FYE 2022, vs $9M in FYE 2021

- Due to continued efforts to reduce costs and overhead, 2022 management fees charged and paid by all GBP funds were approximately $9.2M less than the management fees allowed under the partnership agreements

- ███████████████████████████████████████████████████████████████

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (1/2)

The Monitor Order authorizes various historical and financial reviews. The Monitor completed initial reviews as identified specifically in the Monitor Order, as well as identified supplementary detailed reviews necessary to evaluate claims against various third parties and reviews necessary to support distribution strategies (i.e., comingling of assets, interfund transactions, insider payments). Monitor work has included the following:

## Monitor Order Reviews

- Analyzed and summarized GP-level, fund-level, and sub-fund-level historical bank statements and transactions
- Reviewed and analyzed historical corporate transactions (including acquisitions and divestments)
- Analyzed and summarized all trial balance and general ledger entries to create full sources and uses for each fund
- Reviewed executive compensation structure
- Reviewed and summarized executive, consultants, and advisor compensation, including:
  - Created compensation matrix of all former and current executives
  - Reviewed general ledger, payroll system, and bank detail to triangulate correct information
  - Reviewed expense reimbursements
  - Reviewed charge-back / pass-through practices by GPB
- Reviewed and summarized 2013-2021 complete payroll registers (W2 and 1099 pay)
- Analyzed historical financials for 2013-2020 (including accounting records for funds and sub-funds)
- Reviewed financial statements and provided detailed feedback on all audits published to date (AP/H2 Form 10s, 10-Ks/Qs)
- Reviewed all BoD / acquisition committee ("AC") minutes and documentation
- Created litigation tracker and participated in discussions regarding ongoing litigation, including:
  - Reviewed all litigation settlements (often requiring extensive work to support settlement decisions)
- Reviewed all insurance policies
- Reviewed all past communications to investors and brokers, including fund marketing materials
- Analyzed cash disbursements from portfolio companies during monitorship period and reconciled distributions to material action requests
- ███████████████████████████████████████████████

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (2/2)

Included below are supplemental forensic reviews to support third party claims and distribution strategy decisions arising out of the initial reviews:

**Follow-up Workstreams**



- Reconciled investor-level contributions, commissions, distributions, and redemptions to GPB general ledger
- Created a comprehensive LP / fund-level valuation matrix

- Evaluated automotive acquisition due diligence and related materials

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.™

# (e) Distribution Planning

**Distribution Planning**

Prior to and since the filing of the receivership motion, the Monitor team has continuously engaged in extensive discussions with GPB and Mayer Brown (GPB counsel) to further the development of a distribution plan, including the preparation of a motion, plan exhibit, and supporting analysis. Key efforts include:

- Evaluated possible structure and related issues with respect to making distributions
  - Created investor recovery analysis and full model of investor-by-investor returns to evaluate distribution scenarios across funds
  - Reviewed distribution plan issues (i.e. comingling, interfund loans, co-investments, etc.)
  - Researched precedent for Monitorship / Receivership distribution plans
  - <mark>Evaluated GPB proposals of possible distribution scenarios, including:</mark>
    - ███████████████████████████
    - ██████████████████████████████

- Prepared and evaluated alternative scenarios from GPB's proposals



- Prepared declarations in support of the Receivership Motion, including various supporting analyses to substantiate findings
  - ███████████████████████

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (f) Further Workstreams Related to Monitor Approvals

**Litigation Support**

Consistent with the Monitor Order, the Monitor has evaluated and approved the resolution of several current litigation matters in order to achieve the best possible return for investors. The below encompasses some of the key activities of the Monitor to assist GPB in litigation-related matters, with efforts to date including (but not limited to) the following:

- Ongoing litigation review and analysis leading to approval
- Resolved Prime Automotive litigation related to David Rosenberg

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# V. Monitor Fee Summary



# Summary of Fees to Date

Below is a summary of fees invoiced by the Monitor and his financial advisors through March 31, 2023:

|  | **2021** | **2022** | **Q1 2023** |
|---|---|---|---|
| Monitor Fees | $5,688,915 | $4,502,240 | $1,550,245 |

During the period reflected herein, total legal fees incurred by the Monitor and not included above total approximately $4.3 million.

Monitor Fees in comparison to GPB LP Interest Income:

- As approved by the Monitor, GPB currently invests available cash from portfolio company sales in US Treasury Securities, as a means to generate LP returns in a risk-free manner until distributions to investors can be made.

- As of March 31, 2023, the interest earned on invested cash during the last 12 months totals approximately $18.8 million.

- Due to the higher interest rate environment, interest earned in the current quarter is expected to be approximately $3.0 million per month, far exceeding Monitor fees.

- Notwithstanding the foregoing, it remains the Monitor's top priority to achieve distribution of available proceeds to investors as soon as possible.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Exhibit 4

# GPB CAPITAL HOLDINGS LLC

July 28, 2023

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

## Q2 2023 – Quarterly Report of Joseph T. Gardemal III, Court-appointed Monitor over GPB Capital Holdings LLC

Joseph T. Gardemal III, CPA
Managing Director
Alvarez & Marsal
655 Fifteenth Street NW
Washington, DC 20005
(202) 729-2131
JGardemal@alvarezandmarsal.com



# Contents

| I. | Introduction | 2 |
|----|--------------|---|
| II. | Background | 4 |
| III. | Status of Monitor's Review | 12 |
| IV. | Monitor Achievements | 20 |
| V. | Monitor Fee Summary | 31 |

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# I. Introduction



# Introduction

This is my ninth quarterly report since my appointment as Monitor.

Earlier today, as I was in the process of finalizing this report, the Magistrate Judge assigned to the SEC civil action in which I was appointed to serve as Monitor issued a Report and Recommendation on the SEC's motion to convert the Monitorship to a Receivership.   Although I am still studying the decision and discussing it with my counsel, I am happy to report that the Court ruled in favor of the SEC's application for conversion of the Monitorship to a Receivership and for the imposition of a litigation injunction.  While the Report and Recommendation is not yet final and the parties have 14 days in which to file objections to it with the District Judge, this is nonetheless a very good development for investors hoping to receive distributions from the GPB funds.  I am continuing to monitor the litigation and will, as I have stated in the past, be in a position as Receiver to move forward quickly with a distribution plan if today's Court ruling is affirmed.  Getting money out the door to investors will be my top priority, along with maximizing distributable proceeds for investors.

To date, GPB has generated approximately $1 billion in gross proceeds from the sale of assets, and management is actively marketing a number of remaining assets. The available funds that GPB has raised from these sales are currently invested in conservative vehicles that are generating a reasonable return, with over $29 million in interest earned through June 2023.

As with my prior reports, because much of our ongoing work is sensitive and involves litigation and efforts to maximize the value of investments, I have redacted certain sections of this report to maintain confidentiality.

**Joseph T. Gardemal III**
Court-appointed Monitor, GPB Capital Holdings, LLC
Washington, D.C.
July 28, 2023

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. **RESULTS.**

# II. Background



# Background

**On February 11, 2021, I, Joseph T. Gardemal III, a Managing Director with Alvarez & Marsal in Washington, DC, was appointed as the independent Monitor over GPB Capital Holdings LLC by the Honorable Chief Judge Margo K. Brodie, United States District Judge for the Eastern District of New York. The Order states that the Monitor shall remain in place until terminated by Order of the Court.**

**On April 14, 2021, Chief Judge Brodie approved amendments to the order as proposed by the SEC and GPB.**

**The Order outlines the Monitor's general powers and duties as follows:**

1.   **The authority to approve or disapprove the following actions (Paragraph 6):**

   a.   Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate;

   b.   Any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws;

   c.   Any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

   d.   Any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

   e.   Any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

   f.   Any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

   g.   Any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order outlines the Monitor's general powers and duties as follows (Continued):**

**2.   The authorization and empowerment to: (Paragraph 11):**

a.   Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.   Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.   Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.   Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.   Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;

f.   Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.   Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.

h.   Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.   Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.   Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.   Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order requires the Monitor to provide the following recommendations and reports:**

1. **Paragraph 23 – within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").**

   • This report will provide an overview of the status of each contemplated review outlined in paragraphs 8 through 14.

2. **Paragraph 24 – The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the Monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.**

   • On April 12, 2021, the Monitor submitted his recommendation to continue the Monitorship for a period of at least 180 days.

3. **Paragraph 25 – the Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.**

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.℠

# Background (Continued)

**Overview of recent developments between GPB, David Gentile and the SEC:**

1. **Violation of court order and notice to GPB:**

   a. On May 29, 2022, I was informed through Mayer Brown LLP, counsel to GPB Capital Holdings, that David Gentile had documents delivered to the Company reflecting that Mr. Gentile had purported to take actions, as of May 27, 2022, (i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation arrangements with respect to non-employee Managers ((i) and (ii) collectively, the "May 27, 2022 Purported Actions").

   b. On May 31, 2022, I provided formal notice to GPB in my capacity as Monitor under the Amended Order, that the May 27, 2022 Purported Actions, among other things, violate Sections 6(d) and 6(e) of the Amended Order (the "Material Non-Compliance"). In accordance therewith, I further provided the Company notice that the Company had ten (10) business days in which to cure the Material Non-Compliance, and if such cure did not occur within such period, the remedies described in Section 21 of the Amended Order may be invoked with immediate effect.

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   a. Section 21 of the Amended Order outlines the remedies for the SEC in the event of GPB's non-compliance with the Amended Order: "If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership."

   b. On June 13, 2022, the SEC filed a motion to request the conversion of the Monitorship to a receivership as a result of continuing violations of the Order, following the above-referenced notice provided by me in my capacity as Monitor under the Amended Order, and pursuant to the remedies provided for in Section 21 of the Amended Order.

   *(continued in next page)*

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of recent developments between GPB, David Gentile, and the SEC (cont.):**

2. **On June 13, 2022, the SEC requested the conversion of the Monitorship to a receivership:**

   c.   On July 1, 2022, GPB Capital Holdings LLC filed a memorandum in response to the SEC's motion for the order appointing a receiver and imposing a litigation injunction, stating that, ***"Defendant GPB Capital Holdings, LLC respectfully submits this memorandum to reiterate its consent, on behalf of its Chief Executive Officer ("CEO"), Rob Chmiel, to the relief the Securities and Exchange Commission ("SEC") requests in its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction (the "Receivership Motion")."***

   d.   Concurrent with the SEC's motion on June 13, 2022, and subsequently on July 8, 2022, I provided written declarations in support of the SEC's motion for appointment of a receiver over GPB Capital Holdings LLC and its affiliates.

3. **On April 28, 2023, the Magistrate Judge assigned to the SEC enforcement action issued an order permitting the parties to submit fact-based updates related to the SEC's Receivership motion, as well as a motion to amend the Monitor order.  On May 8, 2023, pursuant to the Court's order, the various parties to the SEC action submitted letters to the Court.**

4. **On July 28, 2023, the Magistrate Judge ruled in favor of the SEC's motion to convert the Monitorship to a Receivership and for the imposition of a litigation injunction.  The Report and Recommendation of the Magistrate Judge is not final, and the parties have 14 days in which to file objections to the Report and Recommendation to the District Court.**

**ALVAREZ & MARSAL**

LEADERSHIP. ACTION. RESULTS.™

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (1/2):**

1. **Financial Reporting:**

   a. On May 14, 2021, the Form 10 for Automotive Portfolio LP was initially filed for the 3-year period ended 12/31/2020. The filing was last amended on September 9, 2021, and the amendment covered the additional period ending 3/31/2021.

   b. On August 26, 2021, the first 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2021.

   c. In November 2021, the audit for Cold Storage LP for the year ended 12/31/2020 was finalized and published to investors.

   d. GPB, with my approval, has engaged new valuation and tax service providers.

   e. Fair Market Value statements as of 9/30/2021 have been sent to all investors in Holdings I LP, Holdings II LP, Automotive Portfolio LP, Waste Management LP, Cold Storage LP, and New York City Development LP.

   f. Fair Market Value statements as of 12/31/2021 have been sent to all investors in Holdings II LP, Automotive Portfolio LP, Waste Management LP, and Cold Storage LP.

   g. On April 14, 2022, the first 10-K for Automotive Portfolio LP was filed for the year ended 12/31/2021.

   h. On May 13, 2022, the Form 10 Registration Statement for Holdings II LP was initially filed for the 3-year period ended 12/31/2021. The filing was last amended on July 22, 2022, and the amendment covered the additional period ending 3/31/2022.

   i. Subsequent to July 22, 2022, the Company is current on all SEC filings and continues to file all required financial statements on time.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (2/2):**

2. **GPB Investments:**

   a.  In November 2021, GPB completed the sale of Prime Automotive Group and substantially all of its auto related assets to Group 1 Automotive.

   b.  In December 2021, GPB completed the sale of Alliance Physical Therapy Group to Chicago-based healthcare investment firm BPOC.

   c.  In Q1, 2022, GPB completed the sales of Greenwave Energy, the real estate of its former Tower Ford dealership, as well as certain assets of Waste Management LP.

   d.  On April 7, 2022, GPB finalized the sale of the ±30-acre parcel of land owned by Cold Storage LP.

   e.  The completed sale transactions to date have returned approximately $1 billion in gross proceeds to GPB partnerships.

   f.  Under the supervision of the Monitor, GPB continues to market certain of its assets for sale and will update investors upon any successful exit.

   g.  Completed three tuck-in acquisitions to enhance the remaining portfolio value for investors.

   h.  Recovered cash escrows related to previous asset sales

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION.** **RESULTS.**

# III. Status of Monitor's Review



# Status of the Monitor's Review

**Upon appointment by the Court, the Monitor and GPB worked diligently to establish an efficient protocol to effectuate the Monitor approval process required by Paragraph 6 of the Order.**

**The Monitor team provided a diligence list identifying specific data and documents needed to perform its duties as outlined in Paragraph 11.**

- As of the date of this report GPB has substantially completed the diligence requests by the Monitor, who has obtained the data needed to perform his reviews contemplated in the Order.

**As required by the Order, and to the extent appropriate, the status of the contemplated reviews in Paragraphs 8 through 14 have been classified as the following:**

- Complete: the review process as contemplated in the order has been finalized.
- Ongoing: the review process has commenced; additional procedures are needed.
- Pending: the review process has not yet begun; awaiting additional data or documents.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# Status of the Monitor's Review (Continued)

**Paragraph 8: GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.**

- Through the date of this report GPB has taken reasonable efforts to fulfill the Monitor's requests for documents. While requests may continue to arise as the Monitor completes his reviews, the Monitor has not experienced any unreasonable delays and any currently outstanding requests are related to follow up questions from the Monitor's review of the initial information provided.

**Paragraph 9: For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.**

- All Monitor requests have been made to either GPB's General Counsel or Chief Financial Officer/Chief Executive Officer.

**Paragraph 10: If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.**

- GPB's General Counsel and Chief Financial Officer/Chief Executive Officer have been appropriately receptive and responsive to follow up questions and/or requests.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11a: Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to historical activity. Ongoing with respect to current operations.

**Paragraph 11b: Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information.**

- Status: Ongoing.

**Paragraph 11c: Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete except for additional analysis of insider payments based on new information.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11d: Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to consultants retained at the appointment of the Monitor. Ongoing with respect to continuing operations.

**Paragraph 11e: Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;**

- Status: Ongoing – audited financial statements of GPB, Highline, and the GPB funds have been reviewed to the extent they are final and have been published. Additional audits for certain of the relevant entities are still in progress.

**Paragraph 11f: Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;**

- Status: Complete with respect to historical minutes. Ongoing with respect to current operations.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11g: Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Ongoing – the initial review has been completed. However, the Monitor continues to receive updates from GPB/Highline as litigation involving the relevant entities continues.

**Paragraph 11h: Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies.**

- Status: Ongoing – the Monitor continues to be notified and reviews new developments. The review of any commencement or settlement of litigation involving the relevant entities continues.

**Paragraph 11i: Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change.**

- Status: Ongoing.

ALVAREZ & MARSAL
LEADERSHIP. **ACTION.** **RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 11j: Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities.**

- Status: Complete with respect to policies in place at the Monitor's appointment. Ongoing with respect to current operations.

**Paragraph 11k: Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.**

- Status: Ongoing. The Monitor continues to work actively with GPB/Highline on updates to investor communications and the GPB website content.

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# Status of the Monitor's Review (Continued)

**Paragraph 12: GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.**

- Status: Complete.

**Paragraph 13: GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.**

- Status: Ongoing – the Monitor team continues to review updated valuation reports provided by GPB/Highline's valuation service provider.

**Paragraph 14: GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.**

- Status: Complete. The Monitor continues to work with Management related to the operation of the Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# IV. Monitor Achievements

(a) Portfolio Company M&A / Transactions
(b) Oversight of Portfolio Operations
(c) Oversight of General Partner Management
(d) Forensic Review of GPB's Operations / Financials
(e) Distribution Planning
(f) Further Workstreams Related to Monitor Approvals



# (a) Portfolio Company M&A / Transactions (1/4)

This section depicts Monitor team activities related to GPB portfolio company sale transactions. The scope and nature of these transactions required substantial and ongoing analysis to guide GPB and ultimately approve transactions that maximize value to LPs and ultimately investors.

To date, efforts by GPB with the support of the Monitor have combined to realize over $1 billion in proceeds to GPB investors from portfolio company transactions.

**Prime Automotive Group** *(sale occurred November 2021, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Advised on strategic alternatives to recover and maximize value for LPs, as Prime Automotive Group was facing imminent risk of loss of value due to OEMs' and lenders' attempts to terminate franchise and loan agreements due to the association with GPB
  - Strategic alternatives included SPAC sale, management buyout/ separation proposal, going-concern sale, sale in parts, etc.
- Provided sale process oversight and strategic direction throughout, including i.e. participation in management meetings, and resolving conflicts between key individuals at GPB/Highline and Prime and the attempt by management to separate from GPB
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Managed GPB/Prime relationships with OEMs, in particular ▮▮▮▮▮▮▮▮▮▮▮▮
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Guided discussions related to the structuring, extending, and replacing of four financing agreements following several threatened and/or actual terminations by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, including vetting new potential credit providers
- Advised on the sale of several one-off dealerships and associated real estate
- Continue to support post-transaction work, including negotiation of (and performance under) transition service agreements, OEM litigation oversight with Subaru New England, claims management oversight, receivables collection, asset liquidation, review of equity structures and minority stakeholders, and review of staffing and compensation for wind-down team

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| **$907 million**[1] | **$466 million**[2] | **195%** |

[1] Includes net proceeds from Prime Automotive Group and real estate also included in the GPB Automotive Portfolio. Please refer to page F-27 of the 2021 GPB Automotive Portfolio 10-K and page F-25 of the GPB Holdings II Form 10
[2] Book value as of 12/31/2020, pursuant to the GPB Automotive Portfolio LP and GPB Holdings II LP Form 10 filings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (2/4)

**Alliance Physical Therapy** *(sale occurred December 2021)*
The Monitor team was heavily involved in GPB's disposition of Alliance Physical Therapy. Efforts included:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale and structure of the same
  - Continued to provide strategic oversight throughout the process with respect to escrow considerations, review of M&A agreements, structuring of the sale, evaluation of potential buyers, etc.
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Realized LP Proceeds during the Monitorship increased by $10M in June 2023 as a result of that amount being released from escrow

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $129 million | $56 million[1] | 231% |

[1] Book value as of 12/31/2020. The nearest third-party fair market valuation (as of 6/30/2019) indicated a FMV within ~4% of the 12/31/2020 book value

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (3/4)

**Armada Waste Management**

*(Sale of Capitol Waste, OnDemand Container, Iron City Express, Buckeye, and MudMasters Ohio complete with sale of* ███████████ *ongoing)*

Assets in the Armada portfolio have been sold separately in four transactions to date. Efforts include:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale options in parts or as one entity
- Continue to support management in the reevaluation of different divestment alternatives as the sale process repeatedly proved difficult due to the lack of financial performance of the assets
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Provided guidance with respect to various performance issues at Armada entities, ████████████████████████ ███████████████
- Provide general project/sale management oversight (multiple different subsidiaries were sold to multiple different buyers)
- Reviewed relevant agreements (asset purchase agreements) as part of advising on sale terms, considerations, and structure
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Continue to review and evaluate ████████████

| Realized LP Proceeds in Monitorship to date | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $13 million | $26 million | N/A |

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (4/4)

**Cold Storage** *(sale occurred April 2022, wind-down activities ongoing)*

The Monitor team was heavily involved in GPB's disposition of a ±30-acre parcel of land that was owned by GPB Cold Storage. Efforts included:

- Reviewed and discussed several potential options/alternatives for cash flow, including leasing a portion of the real estate, and eventually structuring an agreement to sell the asset
- Provided guidance on sale process following a previously failed attempt by GPB to sell the property in 2020
- Repeatedly engaged in discussions around title insurance due to heightened concern of third-party providers over engagement with GPB entities

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $78 million | $58 million | 134% |

**Other Sale or Restructuring Transactions of GPB investments / Portfolio Companies**

Other GPB positions that have received substantial Monitor support include:

- Sale process of Greenwave Energy, ITelagen
- Restructuring transaction of failed investment Insightra
- Pursuit of recovery actions with respect to debt and equity positions Hycor and Tampa Riverwalk
- Oversight  of agreement to reduce fund-level indebtedness at NYC Development
- Review of recent financial performance of ▮▮▮▮▮▮
- Oversight of negotiations for extension or refinancing of senior debt at Riverwalk project

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (b) Oversight of Portfolio Operations

Additional Monitor involvement has included:

▶ **Maximization of Portfolio Company Value**

**1) Health Prime International (HPI)** – **oversight of integration and GPB growth strategy**
████████████████████████████████████████████. The Monitor has spent considerable time working with GPB to drive accretive value and position the company for an eventual sale. In total, Holdings II investors may net an ██████████████████████████████████████████████████████
██████████ Significant efforts have included:
- Initiating discussions with HPI management on vision forward and next steps
- Aided HPI management in strengthening its Board of Directors
- Oversight (and evaluation) of HPI platform tuck-in acquisitions:
  - Evaluated acquisition target, transaction structure, financing structure, and other considerations
  - Reviewed integration process of first and second tuck-in acquisitions
  - Evaluated strategic viability and value creation of subsequent tuck-ins
- Oversight (and review) of merger transaction between HPI and another GPB portfolio company (MDS Medical)

**2) Cantata / Experience Care** ██████████████ **underperforming asset support**
- Evaluate together with GPB management weaknesses in the investment management ███████████████████████████████████████
  - Oversee replacement of investment professionals at underperforming investment positions and support transition of investment professionals through Monitor team industry experts
- Interface with portfolio companies in collaboration with GPB investment manager to recover value and determine strategic alternatives

▶ **Portfolio Company Management Support, Replacement, and Incentives**

- Reviewed GPB proposals, evaluated alternatives, and provided extensive feedback on portfolio company management incentive programs (as addressed in prior section, "Portfolio Company M&A/Transactions")
- Continued evaluation of possible candidates for management positions and board members at portfolio companies
- Support management retention efforts at portfolio companies together with GPB management (necessary due to the flight risk related to GPB affiliation)
- Monitored and supported management's decision to move portfolio company bank accounts from Signature bank to other financial institutions

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

# (c) Oversight of General Partner Management

**General Partner Measures**

The GPB decision-making process has been formalized by the Monitor via an RFA (request for approval) process. The Monitor has worked with GPB on 358 RFAs across the various types of transactions which require approval pursuant to the Monitor Order. Other Monitor responsibilities have included:

- Advise management and continue to evaluate various options with respect to driving significant cost savings ($20M reduction in operating costs since December 2021) primarily due to ongoing Reduction in Force implementation and reduction in professional fees

- The above reduction in operating costs and fees was partially offset by increased legal fees due to the legal fee advancement obligations of ongoing criminal and civil litigations of GPB Capital Holdings in the amount of $10M for the first half of 2023.  Cumulatively, legal fees paid due to the advancement obligations have totaled $33M

- Due to continued efforts to reduce costs and overhead, 2022 management fees charged and paid by all GBP funds were approximately $9.2M less than the management fees allowed under the partnership agreements.

- During the quarter, GPB Capital Holdings withdrew approx. $4M from the funds to repay previous advances to GPB Capital Holdings made by GPB Lender, LLC; Cient LLC; and Plymouth Rock Holding

- █████████████████████████████████████████

- Monitored and supported management's decision to move general partner and fund bank accounts from Signature bank to other financial institutions

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (1/2)

The Monitor Order authorizes various historical and financial reviews. The Monitor completed initial reviews as identified specifically in the Monitor Order, as well as identified supplementary detailed reviews necessary to evaluate claims against various third parties and reviews necessary to support distribution strategies (i.e., comingling of assets, interfund transactions, insider payments). Monitor work has included the following:

## Monitor Order Reviews

- Analyzed and summarized GP-level, fund-level, and sub-fund-level historical bank statements and transactions
- Reviewed and analyzed historical corporate transactions (including acquisitions and divestments)
- Analyzed and summarized all trial balance and general ledger entries to create full sources and uses for each fund
- Reviewed executive compensation structure
- Reviewed and summarized executive, consultants, and advisor compensation, including:
  - Created compensation matrix of all former and current executives
  - Reviewed general ledger, payroll system, and bank detail to triangulate correct information
  - Reviewed expense reimbursements
  - Reviewed charge-back / pass-through practices by GPB
- Reviewed and summarized 2013-2021 complete payroll registers (W2 and 1099 pay)
- Analyzed historical financials for 2013-2020 (including accounting records for funds and sub-funds)
- Reviewed financial statements and provided detailed feedback on all audits published to date (AP/H2 Form 10s, 10-Ks/Qs)
- Reviewed all BoD / acquisition committee ("AC") minutes and documentation
- Created litigation tracker and participated in discussions regarding ongoing litigation, including:
  - Reviewed all litigation settlements (often requiring extensive work to support settlement decisions)
- Reviewed all insurance policies
- Reviewed all past communications to investors and brokers, including fund marketing materials
- Analyzed cash disbursements from portfolio companies during monitorship period and reconciled distributions to material action requests
- ███████████████████████████████████████████

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (d) Forensic Review of GPB's Operations / Financials (2/2)

Included below are supplemental forensic reviews to support third party claims and distribution strategy decisions arising out of the initial reviews:

**Follow-up Workstreams**



- Reconciled investor-level contributions, commissions, distributions, and redemptions to GPB general ledger
- Created a comprehensive LP / fund-level valuation matrix

- Evaluated automotive acquisition due diligence and related materials

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# (e) Distribution Planning

## Distribution Planning

Prior to and since the filing of the receivership motion, the Monitor team has continuously engaged in extensive discussions with GPB and Mayer Brown (GPB counsel) to further the development of a distribution plan, including the preparation of a motion, plan exhibit, and supporting analysis. Key efforts include:

- Evaluated possible structure and related issues with respect to making distributions
  - Created investor recovery analysis and full model of investor-by-investor returns to evaluate distribution scenarios across funds
  - Reviewed distribution plan issues (i.e. comingling, interfund loans, co-investments, etc.)
  - Researched precedent for Monitorship / Receivership distribution plans
  - Evaluated GPB proposals of possible distribution scenarios, including:



- Prepared and evaluated alternative scenarios from GPB's proposals





- Prepared declarations in support of the Receivership Motion, including various supporting analyses to substantiate findings

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (f) Further Workstreams Related to Monitor Approvals

**Litigation Support**

Consistent with the Monitor Order, the Monitor has evaluated and approved the resolution of several current litigation matters in order to achieve the best possible return for investors. The below encompasses some of the key activities of the Monitor to assist GPB in litigation-related matters, with efforts to date including (but not limited to) the following:

- Ongoing litigation review and analysis leading to approval
- Resolved Prime Automotive litigation related to David Rosenberg
- Resolved litigation related to Cotten, Ortiz, NYCD, and multiple early lease terminations

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.™

# V. Monitor Fee Summary



# Summary of Fees to Date

Below is a summary of fees invoiced by the Monitor and his financial advisors through June 30, 2023:

| | **2021** | **2022** | **Q1 2023** | **Q2 2023** |
|---|---|---|---|---|
| Monitor Fees | $5,688,915 | $4,502,240 | $1,550,245 | $1,118,448 |

During the period reflected herein, total legal fees incurred by the Monitor and not included above total approximately $5.0 million.

Monitor Fees in comparison to GPB LP Interest Income:

- As approved by the Monitor, GPB currently invests available cash from portfolio company sales in US Treasury Securities, as a means to generate LP returns in a risk-free manner until distributions to investors can be made.
- During 2022 and the first half of 2023, the interest earned on invested cash totaled approximately $29.1 million.
- Due to the higher interest rate environment, interest earned in the current quarter is expected to be approximately $3.4 million per month.
- Notwithstanding the foregoing, it remains the Monitor's top priority to achieve distribution of available proceeds to investors as soon as possible.

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.