**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **21-cv-00583-MKB-VMS** |
| **v.** | **ECF CASE** |
| **GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFREY SCHNEIDER; and JEFFREY LASH,** | |
| **Defendants.** | |

### ORDER APPOINTING RECEIVER AND IMPOSING LITIGATION INJUNCTION

**WHEREAS** on February 23, 2021, this Court entered, upon consent of the Securities and Exchange Commission ("Commission") and defendant GPB Capital Holdings, LLC ("GPB CH" or "Defendant"), the Order Appointing Monitor (Dkt. 23), which appointed Joseph T. Gardemal III as independent Monitor (the "Monitor") in this action (the "Monitorship");

**WHEREAS**, on April 14, 2021, this Court entered, upon consent of the Commission and GPB CH, the Amended Order Appointing Monitor (Dkt. 39);

**WHEREAS**, GPB CH is the general partner or controls the general partner of eight (8) limited partnerships (the "GPB Funds"), which own or owned in their respective investment portfolios controlling interests in various operating companies (the "Portfolio Companies");

**WHEREAS**, in total, the GPB Funds collectively have approximately 17,000 limited partner investors;

**WHEREAS,** pursuant to the limited partnership agreements governing the GPB Funds, GPB CH controls each of the GPB Funds, which GPB Funds possess the direct or indirect ability to control a majority of seats on the applicable boards of directors or managers of the respective Portfolio Companies that remain part of the respective investment portfolio; and

**WHEREAS,** Highline Management, Inc. ("Highline") is a wholly-owned subsidiary of GPB CH currently overseen by a majority independent board of directors, and provides certain consulting and management services to some or all of GPB CH and the GPB Funds;

**WHEREAS**, certain state regulatory authorities have filed administrative and/or civil enforcement actions against GPB CH, specifically, the state securities regulators of Alabama, Georgia, Illinois, Massachusetts, Missouri, New Jersey, New York and South Carolina listed in Dkt. 11-5 (the "State Securities Regulators");

**WHEREAS,** the Commission and the Monitor believe it is in the best interests of the Receivership Entities (as defined below), their investors and creditors, to terminate the Monitorship and appoint a receiver over (i) the entities set forth on Schedule 1 hereto, including, without limitation, GPB CH, each of the GPB Funds and Highline (such entities set forth on Schedule 1 hereto, collectively, the "Receivership Entities"), and (ii) the Receivership Assets (as defined below), in order to contain costs, effectuate distributions to investors and creditors and wind down the Receivership Entities in a timely, orderly and cost-efficient manner;

**WHEREAS**, the Chief Executive Officer of GPB CH and Highline consents to entry of this Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I.  Exclusive Jurisdiction**

1.  This Court hereby takes exclusive jurisdiction and possession of all of the assets

of the Receivership Entities together with all proceeds thereof (collectively, the "Receivership Assets") of whatever kind, wherever situated, or whenever obtained.

## II.  Appointment of Receiver and Termination of Monitor

2.    Until further Order of this Court, Joseph T. Gardemal III is hereby appointed to serve without bond as receiver (the "Receiver") for the receivership estate of the Receivership Entities (the "Receivership Estate"), including the Receivership Assets, to, among other duties and rights set forth in this Order and available under applicable law and without limiting any other provisions of this Order, (a) preserve the status quo to enable the Receiver to perform the duties specified hereunder; (b) ascertain the financial condition of the Receivership Entities and Receivership Assets; (c) oversee and manage, consistent with the relevant governing documents and applicable law, the Receivership Entities and Receivership Assets; (d) prevent the encumbrance or disposal of the Receivership Assets contrary to the Receiver's mandate; (e) preserve the books, records, and documents of the Receivership Entities and Receivership Assets; (f) manage litigation by and against the Receivership, the Receivership Entities and the Receivership Assets; (g) propose for Court approval a fair and equitable distribution of the remaining Receivership Assets; and (h) be available to respond to investor inquiries, all as further set forth in this Order.

3.    The Monitorship is hereby terminated.  Any unpaid fees, costs and expenses of the Monitor and its retained professionals may be paid by the Receiver from the Receivership Estate subject to approval by an Order of this Court.

## III. General Powers and Duties of Receiver

4.    The Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the Receivership Entities, and any officers, directors, managers, managing

members, and general and limited partners of the Receivership Entities, under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Fed.R.Civ. P. 66, except that the Receiver shall conduct a cost/benefit analysis and consult with the Commission staff prior to commencing any affirmative litigation.

5.     All of the powers derived from any source of any and all officers, directors, managers, managing members, general and limited partners, employees, investment advisers, accountants, attorneys and other agents and advisers of the Receivership Entities are hereby suspended, except to the extent as may hereafter be expressly granted by the Receiver in its sole discretion and, to the extent necessary (in the sole determination of the Receiver), approved by the Court. The Receiver shall assume and control the operation of the Receivership Entities, and shall preserve all of their assets and claims for the benefit of the Receivership Estate. No person holding or claiming any position of any type with any of the Receivership Entities shall have any authority to act by or on behalf of any of the Receivership Entities, except as may be expressly authorized or delegated by the Receiver in writing.

6.     Without limiting the other provisions in this Order, the Receiver shall have the following general powers and duties:

A.     Take and retain immediate possession and control of all Receivership Assets and all books, records and documents of the Receivership Entities, wherever located, related to the Receivership Assets, and to sue for and collect, recover, receive and take into possession from third parties, all Receivership Assets and records relevant thereto;

B.     Manage, control, operate and maintain the Receivership Entities and hold in the

Receiver's possession by and through the Receivership Estate, custody and control of all Receivership Assets, subject to the other provisions of this Order;

C.      Take any action which, prior to the entry of this Order, could have been taken by the officers, directors, managers, managing members, and general and limited partners, and agents of the Receivership Entities, acting in their respective capacities;

D.      Take such action as necessary and appropriate for the preservation of the Receivership Estate and Receivership Assets and to prevent the dissipation or concealment of the Receivership Assets;

E.      Conduct an orderly liquidation of the Receivership Entities and the Receivership Assets in a manner and over a period of time calculated to maximize their value for investors and the Receivership Estate;

F.      Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any Receivership Assets; *provided, however,* that the Receiver may from time to time designate additional signatories as determined in the Receiver's sole discretion;

G.      Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, but in no event shall the Receiver, without prior order of the Court, make any payments or transfers of property of a value in excess of $50,000 (fifty-thousand dollars), except that the Receiver may pay the following fees, costs, expenses and other charges in the ordinary course without regard to the foregoing cap and without prior order of the Court: (i) compensation and benefits to employees, including temporary non-payroll staff, (ii) rent, (iii) insurance premiums and related costs, (iv) the fees and costs of Phoenix American Financial

5

Services related to administering the GPB Funds and all other expenses necessary to administer and operate the GPB Funds, (v) the fees and costs of TransPerfect related to records management, (vi) other routine costs and expenses of the Receivership Estate, including, without limitation, those related to: information technology (including maintenance of hardware and software), water, electric, telephone, sewage, garbage, trash removal and other utilities and services, and (vii) all other costs and expenses authorized by this Court pursuant to this Order or any other order of this Court;

H.    Locate and bring into the Receivership Estate by all reasonable means Receivership Assets that may have been conveyed to, or are under the possession and control of, third parties or otherwise concealed;

I.    Engage and employ agents, claim and noticing agents, persons, firms and other persons and entities, including accountants, attorneys, experts, liquidators, brokers, traders, or auctioneers (collectively, "Retained Personnel"), to assist in the carrying out of the Receiver's duties and responsibilities hereunder, subject to prior order of the Court, and pay Retained Personnel in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (the "Billing Instructions"), as modified by this Order;

J.    Engage and employ (i) the professionals set forth on Schedule 2 attached to this Order (the "Ordinary Course Professional Schedule"), who were previously retained by one or more of the Receivership Entities in the ordinary course and whom the Court hereby approves to be retained under this Order and (ii) such other professionals engaged by the Receiver after the date of entry of this Order date, as long as (a) without further order of this Court, each such professional incurs less than $15,000 in fees and costs on a

6

monthly basis, (b) without further order of this Court, the aggregate amount of all fees and expenses of each such professional does not exceed $300,000, and (c) with respect to any professional not set forth on the Ordinary Course Professional Schedule as it exists on this date, such professional is set forth on an amended Ordinary Course Professional Schedule that is filed with this Court promptly after such professional's engagement ("Ordinary Course Professionals").  The Receiver is hereby authorized to pay the reasonable fees and expenses of each Ordinary Course Professional on a monthly basis from Receivership Assets and the Receiver shall report such payments in the First Status Report and the Quarterly Status Reports (as each such term is defined below), as applicable.  To the extent an Ordinary Course Professional exceeds $15,000 in fees and costs in any one month, unless otherwise ordered by this Court, they will be required to submit a fee application to the Court with respect to such fees and costs and follow the procedures set forth below in paragraphs 51 through 56 for approval of compensation for Retained Personnel with respect to such fees and costs.  And, to the extent the aggregate amount of all fees and costs of an Ordinary Course Professional exceeds $300,000, unless otherwise ordered by this Court, such Ordinary Course Professional will be required to submit fee applications to the Court with respect to such fees and costs that exceed the aggregate cap and follow the procedures set forth below in paragraphs 51 through 56 for approval of compensation for Retained Personnel;

K.      Manage any litigation and claims against the Receivership Entities and/or the Receivership Assets;

L.      Recommend to the Commission whether litigation against third parties should be commenced to recover assets for the benefit of the Receivership Estate and how the

7

litigation fees and costs should be paid, including on a contingent fee basis;

M.      Commence, maintain, pursue, resist and defend all suits, actions, claims and

demands which may now be pending or which may be brought by or asserted against the

Receivership Entities (in the name of the Receivership Entities and/or the Receiver), the

Receivership Assets, the Receiver or the Receivership Estate;

N.      Bring all other legal actions based on law or equity in any state, federal, or foreign

court (including in the name of the Receivership Entities), as the Receiver deems

necessary or appropriate in discharging the Receiver's duties as Receiver and maximizing

recoveries for investors and creditors of the Receivership Entities;

O.      Sell, assign, transfer or otherwise dispose of any assets of the Receivership

Entities either directly or through one or more Retained Personnel, subject to approval by

this Court with respect to any material assets;

P.      No later than forty-five (45) days after entry of this Order, propose to the Court a

plan to distribute available Receivership Assets (subject to appropriate reserves) to

investors and creditors of the Receivership Entities that shall include provisions for (i) an

initial distribution to be made by the Receiver, (ii) interim distributions to be made by the

Receiver from time to time, (iii) a final distribution to be made by the Receiver, (iv) a bar

date for the filing of claims in the Receivership Estate against the Receivership Entities

and the Receivership Assets and/or for the filing of objections to a schedule of claims

prepared by the Receiver for the purpose of making distributions, except that no limited

partner shall be required to file a claim based solely upon such limited partner's equity

interest in any GPB CH Fund, (v) a claim review and reconciliation process, (vi) a

dispute resolution process for resolving any disputes concerning claims or proposed

8

distributions, (vii) creating and funding reserves, and (viii) such other matters as are determined by the Receiver to be reasonably necessary to facilitate or implement the claim and distribution processes, which plan shall be subject to Court approval;

Q.    Cause the Receiver and its agents to be named as an additional insured on any insurance policies covering the Receivership Estate or Receivership Assets;

R.    In its sole discretion, obtain and/or maintain insurance covering the Receivership Estate, the Receivership Entities and/or the Receivership Assets, and such insurance expense shall be deemed a normal, ordinary, and necessary operating expense of the Receivership Estate;

S.    Consult with any party in interest, including the Commission staff, the State Securities Regulators (who shall designate one or more contact persons to communicate with the Receiver, and shall notify the Receiver of any change to the designated contact(s)), the individual defendants, plaintiffs, creditors, and investors regarding any Receivership Estate matter; and

T.    Take such other action as may be approved by the Court.

**IV. Access to Information, Books, Records and Accounts**

7.    The Receivership Entities and each of their (including former) officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or Receivership Assets; such information shall include but not be limited to books, records, documents, accounts and all other instruments and papers.

8.    The Receivership Entities and each of their (including former) officers, directors,

managers, managing members, general and limited partners, agents, attorneys, accountants and employees, as well as those acting in their place, shall cooperate fully with the Receiver in his or her efforts to carry out the obligations, duties and purposes set out in this Order, subject to and limited by their Fifth Amendment rights.

9.     The Receiver is authorized to open all electronic mail generated by, directed to, or received by the Receivership Entities and all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

10.     All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody or control of any assets or funds held by, in the name of, or for the benefit, directly or indirectly, of the Receivership Entities that receive actual notice of this Order shall (i) not liquidate, transfer, sell, convey or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon written instructions from the Receiver; (ii) not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court; and (iii) cooperate expeditiously in providing information and transferring funds, assets and accounts to the Receiver or at the direction of the Receiver.

## V.  Notice to Third Parties

11.     The Receiver shall promptly give notice of the Receiver's appointment to all known past and present officers, directors, managers, managing members, general and limited partners, agents, attorneys, accountants, and employees of the Receivership Entities, as the

Receiver deems necessary or advisable to effectuate the operation of the receivership.

12.     All persons and entities owing any obligation or debt to any Receivership Entity shall, until further ordered by this Court, perform and/or pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the applicable Receivership Entity had received such performance or payment.

13.     The Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estate.  All government offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the Commission.

14.     The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.  The United States Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail.  The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver.  All personal mail of any individuals, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver.  The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented or used by the Receivership Estate.  The

Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository or courier service.

15. Subject to payment for services provided, any entity furnishing space, water, electric, telephone, sewage, garbage, trash removal, or any other services to the Receivership Entities shall maintain such service and related account in the name of the Receivership Entity for the benefit of the Receiver and Receivership Estate, or transfer such account to the Receiver, unless instructed to the contrary by the Receiver.

### VI. Injunction Against Interference with Receiver

16. The Receivership Entities, and all persons and entities receiving notice of this Order by personal service, mail, electronic mail, facsimile, regular mail, through electronic case filing notices, overnight courier, or in any other manner consistent with due process, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, that would:

A. Interfere with the Receiver's efforts to take control, possession, or management of the Receivership Entities or any Receivership Assets; such prohibited actions include but are not limited to, taking any action to remove GPB CH as general partner of any GPB CH Fund or otherwise interfere with GPB CH's control over any GPB CH Fund, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B. Hinder, obstruct or otherwise interfere with the Receiver in the performance of

12

the Receiver's duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information or interfering with any claim, distribution and/or wind-down plans or processes established by the Receiver;

C.      Dissipate or otherwise diminish the value of any Receivership Assets; such prohibited actions include but are not limited to, releasing claims or disposing, transferring, exchanging, assigning or in any way conveying any Receivership Assets, enforcing judgments, assessments or claims against the Receivership Entities or any Receivership Assets, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by the Receivership Estate or which otherwise affects any Receivership Assets; or,

D.      Interfere with or harass the Receiver, any Retained Personnel or any Ordinary Course Professional, or interfere in any manner with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities, or the Receivership Assets.

17.      The Receiver shall promptly notify the Court, the Commission staff, and the State Securities Regulators, of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

### VII. Stay of Litigation

18.      As set forth in detail below, the following proceedings, *excluding* (i) the instant proceeding, (ii) all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, (iii) all actions pending or to be brought by the United

States of America or any of its agencies, and (iv) all actions pending or to be brought by any state or commonwealth within the United States of America pursuant to such state's or commonwealth's police and regulatory power, are stayed and/or enjoined until further Order of this Court:[1]

> All existing or future civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in the Receiver's capacity as Receiver; (b) the Retained Personnel and/or Ordinary Course Professionals, in their respective capacities as such; (c) the Receivership Estate; or (d) the Receivership Entities or any Receivership Assets, wherever located.  Any person or entity that seeks to put one or more of the Receivership Entities into voluntary or involuntary bankruptcy proceedings must seek leave of Court on motion upon no less than 14 (fourteen) days' notice to the Receiver and to the Commission staff.  Any such motion must show good cause for the filing of voluntary or involuntary bankruptcy proceedings for such Receivership Entities.  Any person or entity may seek leave of this Court to proceed against the Receiver, in such capacity; the Retained Personnel, in such capacity; the Ordinary Course Professionals, in such capacity; the Receivership Estate; the Receivership Entities; and the Receivership Assets.

19.     The foregoing stay and injunction shall not prohibit the Receiver from commencing or continuing any litigation in its own name or in the name of any Receivership Entity.  For any cause of action accrued or accruing in favor of the Receivership Estate against a third person or party, any applicable statute of limitation is tolled during the period in which this

---

[1] A non-exclusive list of litigations involving the Receivership Entities and Receivership Assets that are not otherwise excluded from the stay is set forth on Schedule 3 hereto.

stay of existing legal proceedings and injunction against commencement of new or expanded

legal proceedings is in effect as to that cause of action.

### VIII. Managing Assets

20.    The Receiver shall at all times administer the Receivership Assets with the care

and diligence that an ordinary prudent individual would use in handling such person's own

estate.

21.    Subject to the restrictions in paragraph 6(G), the Receiver may, without further

Order of this Court pay expenses that arise in the ordinary course of the Receivership Entities'

orderly wind down, on terms and in the manner the Receiver deems most beneficial to the

Receivership.

22.    The Receiver is authorized, without leave of Court, to take all actions to manage,

maintain, and/or wind-down business operations of the Receivership Entities, including making

legally required payments to creditors, employees, and agents of the Receivership Entities and

Receivership Estate, communicating with vendors, landlords, investors, governmental and

regulatory authorities, and others, and preparing and filing all necessary tax returns, as

appropriate and necessary for the orderly wind down of the Receivership Entities consistent

with 28 U.S.C. §959(b).

23.    To the extent required, the Receiver shall take all necessary steps to enable the

Receivership Estate to obtain and maintain the status of a taxable "Settlement Fund," within the

meaning of Section 468B of the Internal Revenue Code and of the regulations.

24.    In connection with the execution and performance of the Receiver's duties and

authorities provided for pursuant to this Order, at no point shall the Receiver be deemed to be

acting as an "investment adviser" as defined in Section 202(a)(11) of the Investment Advisers

Act of 1940, as amended (an "Investment Adviser"), or in any other capacity other than as Receiver for the Receivership Estate, and the performance of the Receiver's duties and authorities provided for pursuant to this Order shall not require the Receiver to register as an Investment Adviser with the Commission or any other agency or entity.

### IX.  Investigate and Prosecute Claims

25.     The Receiver is authorized, empowered and directed to, in its own name or in the name of the Receivership Entities, investigate, prosecute, commence, maintain, defend, intervene in or otherwise participate in, compromise, settle, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may, in the Receiver's sole discretion, be advisable or proper to recover and/or conserve Receivership Assets.

26.     The Receiver is authorized, empowered and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after consultation with Commission staff) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate.  The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits and fees, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, damages, injunctive relief, declaratory relief, and such other relief from this Court as may be necessary to enforce this Order.

27.     In furtherance of the Receiver's power to manage litigation and to conduct an investigation, the Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure and Court orders without further leave of Court.

28.     Any and all attorney-client privilege, work product protection, common interest or

16

joint defense privilege, or other privilege or immunity (collectively, the "<u>Privileges</u>") of the Receivership Entities, the Monitor, the Monitorship, and/or attaching to or arising in or in connection with any of their documents, data or communications (whether written or oral), are hereby transferred and belong exclusively to the Receiver for the benefit of the Receivership Estate.  The Receiver therefore has sole authority, and is hereby empowered, to enforce, waive, assign or release any or all Privileges in the exercise of its duties as Receiver.

## X.  Bankruptcy Filing

29.     The Receiver may seek authorization of this Court to file a voluntary petition for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any or all of the Receivership Entities.  If any Receivership Entity or any Receivership Asset is placed into a bankruptcy proceeding, the Receiver may become, and may be empowered to operate the entity or asset, as a debtor in possession.  In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity.  The Receiver is vested with management authority for the Receivership Entities and the Receivership Assets and may therefore file such Chapter 11 petitions and have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code.  *See*, *In re Bayou Group, LLC,* 564 F.3d 541, 548-49 (2nd Cir. 2009).

30.     The provisions of Article VII above bar any person or entity, other than the Receiver, from placing any Receivership Entity or any Receivership Asset into bankruptcy without prior leave of Court on motion providing no less than 14 (fourteen) days' notice to the Receiver and to the Commission.

## XI. Conflicts; Liability of the Receiver

31.     The Receiver has a continuing duty to ensure that there are no conflicts of interest

between the Receiver, on the one hand, and the Receivership Estate and Receivership Assets, on the other hand.

32.     Notwithstanding the foregoing, it is understood that the Receiver is a Managing Director with Alvarez & Marsal Disputes and Investigations, LLC ("A&M DI").  A&M DI together with certain of its affiliates make up the global consulting firm known as Alvarez & Marsal ("A&M").  This Court recognizes that A&M may have relationships with parties in interest in this Receivership Estate (including stakeholders, Retained Personnel, Ordinary Course Processionals and others with an interest in and/or connection to the Receiver and/or Receivership Estate), and it shall not be a conflict of interest for the Receiver or A&M for A&M to act for or adverse to any such parties in interest in matters unrelated to the Receiver's duties hereunder.

33.     Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with the Receiver's fiduciary obligations in this matter, and, if so ordered, all costs and expenses of procuring any such bond or undertaking shall be deemed expenses reimbursable to the Receiver from the Receivership Estate.

34.     The Receiver, Retained Personnel and Ordinary Course Professionals are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to any person or entity for their own good faith compliance with any order, rule, law, judgment, or decree.  In no event shall the Receiver, Retained Personnel or Ordinary Course Professionals be liable to anyone for their good faith compliance with their respective duties and responsibilities.

35.     The Receiver, Retained Personnel and Ordinary Course Professionals may rely, and shall be fully protected personally in acting upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that

the Receiver or such Retained Personnel or Ordinary Course Professionals have no reasonable belief to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy themselves that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt.  In the absence of Receiver's, Retained Personnel's, or Ordinary Course Professional's bad faith, the Receiver, Retained Personnel, or Ordinary Course Professional, as applicable, may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon.  The Receiver may consult with legal counsel, Retained Personnel and Ordinary Course Professionals and shall be fully protected in respect of any action taken or suffered by the Receiver in accordance with the opinion or advice of legal counsel, Retained Personnel or Ordinary Course Professionals (whether or not written).  The Receiver may at any time seek instructions from this Court concerning the acquisition, management or disposition of the Receivership Assets.  None of the Receiver, nor any Retained Personnel or Ordinary Course Professionals, nor their respective affiliates shall be liable (personally or otherwise) to any person (or any predecessor or successor thereto) for any reason whatsoever arising out of matters relating to the Receivership Estate, the execution of or failure to execute the Receiver's duties or the performance or nonperformance of services for the Receivership Estate or the Receiver, except for any liability that is determined by a final order of this Court that is no longer subject to appeal, to have arisen primarily from the gross negligence, willful misconduct, fraud, or willful breach of fiduciary duty of such person, and, for the avoidance of doubt, in no event shall A&M be responsible or liable for the acts or omissions of the Receiver. Without limiting the generality of the foregoing, the Receiver shall have no liability on account

19

of the Receiver's investment or non-investment of any Receivership Assets or any losses with

respect to any such investments of Receivership Assets, provided that such investments are

made, or the Receiver's decision not to invest Receivership Assets in any case is made, in

accordance with any express Orders of this Court relating directly to investment of assets.

36.     The Receiver and Retained Personnel (each, an "Indemnified Party" and

collectively, the "Indemnified Parties") shall be defended, indemnified and held harmless by

each of the Receivership Entities and the Receivership Estate, from and against all losses, claims,

judgments, costs, expenses, liabilities and reasonable expenses including legal fees (which shall

be paid promptly under the indemnity after Court approval as they arise) which such Indemnified

Party may incur or may become subject to in connection with any action, suit, proceeding or

investigation that is brought or threatened against such Indemnified Party in respect of their

actions or inactions regarding the implementation or administration of the Receivership Estate,

or the discharge of its duties hereunder, except for any actions that are determined by a final

order of this Court that is no longer subject to appeal, to have arisen primarily from the gross

negligence, willful misconduct, fraud, or willful breach of fiduciary duty of such person;

*provided, however,* that nothing herein shall limit the immunity of the Receiver and Retained

Personnel allowed by law or deprive the Receiver or the Retained Personnel of indemnity for any

act or omission for which they have immunity.

37.     This Court shall retain exclusive jurisdiction over any action filed against the

Receiver, Retained Personnel and/or Ordinary Course Professionals based upon acts or

omissions committed in their representative capacities or in connection with any action filed by

any of them asserting an indemnity claim.

38.     In the event the Receiver decides to resign, the Receiver shall first give written

notice to the Commission's counsel of record, the State Securities Regulators, and the Court of its intention, and the resignation shall not be effective until the earlier of the date on which the Court appoints a successor and thirty (30) days from the date the Receiver shall have given such notice.  The Receiver shall then follow such instructions as the Court may provide.

39.     No provision of this Order shall require the Receiver to expend or risk his or their own funds or otherwise incur any financial liability in the performance of any of its duties as Receiver hereunder, or in the exercise of any of its rights or powers.

40.     Prior to taking any action against the Receiver regarding the Receiver's conduct in his capacity as the Receiver, a person must seek and receive leave of this Court.  This Court shall retain exclusive jurisdiction over any action or controversy regarding any matters relating to or arising from the Receiver's role and conduct in such role.

41.     This Article XI shall survive the resignation or removal of Joseph T. Gardemal III as Receiver, any Retained Personnel and/or any Ordinary Course Professionals and the termination of the receivership.

## XII. Recommendations and Reports

42.     No later than forty-five (45) days after the entry of this Order, the Receiver shall file and serve a full report and accounting of Receivership Assets (the "First Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Assets, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership.

43.     The First Status Report shall contain the following:

A.      A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements, including payments to Ordinary Course Professionals (attached as Exhibit A to the First Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Assets;

E. A description of liquidated and unliquidated claims held by the Receivership Estate and approximate valuations of claims;

F. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations; and

G. Any other information that the Receiver reasonably deems appropriate to include in the First Status Report.

44.    For good cause shown, the Receiver may seek leave of Court to extend the time set for the filing of the First Status Report and any Quarterly Status Report.  In addition, if requested by the Commission or a State Securities Regulator, the Receiver is hereby authorized to share with each of them a list of all known investors and creditors and the amount of their investments and claims, as applicable, redacted to exclude personally identifiable information.

45.    Subsequent to the filing of the First Status Report, the Receiver shall file a quarterly status report (the "Quarterly Status Report") containing substantially the same type of information required to be set forth in the First Status Report.  The Quarterly Status Report shall be filed within twenty (20) days of the end of each quarter, except that, the first Quarterly Status Report shall be filed upon the passing of the first full quarter after the First Status Report is filed.

46.     On the request of the Commission or a State Securities Regulator, the Receiver shall provide any documentation that the requester deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the Commission's or State Securities Regulator's mission.

### XIII. Fees, Expenses and Accountings

47.     Subject to the specific provisions of this Order, the Receiver need not obtain Court approval prior to the disbursement of Receivership Assets for expenses in the ordinary course of the wind down of the Receivership Estate.

48.     Subject to the specific provisions of this Order, the Receiver is authorized to solicit Retained Personnel and Ordinary Course Professionals to assist the Receiver in carrying out the duties and responsibilities described in this Order.  The Retained Personnel may include, without limitation, A&M DI or other A&M entities.  The Receiver is hereby expressly authorized to utilize the services of A&M as Retained Personnel (rather than utilizing other similarly situated or available personnel or professional services firms).  In no event shall the Receiver or A&M be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

49.     With the exception of Hogan Lovells US LLP and A&M, who were previously retained by the Monitor in this case and whom the Court hereby approves as Retained Personnel under this Order, the Receiver shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement.  For the avoidance of doubt, the term "Retained Personnel" shall include any professionals retained to provide services to or for any Receivership Entity, any Receivership Asset, the Receiver, or the Receivership Estate, and any counsel

23

retained for any purpose, but shall exclude all Ordinary Course Professionals.

50.     Within thirty (30) days of entry of this Order, each of Hogan Lovells US LLP and A&M shall file with the Court sworn declarations disclosing any and all material connections that they may have to this case.  With respect to the limited partner investors in the GPB Funds, Hogan Lovells US LLP and A&M are not required to disclose any connections to any such investors to the extent revenue derived from such investor does not exceed one percent (1%) of net revenue of Hogan Lovells US LLP or A&M, as applicable.

51.     The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Assets as described in the Billing Instructions agreed to by the Receiver, as modified by this Order, a copy of which is available at https://www.sec.gov/oiea/Article/billinginstructions.pdf,.  Such compensation shall require the prior approval of the Court.

52.     Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Assets (the "Quarterly Fee Applications").  At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver and Retained Personnel will serve upon counsel for the Commission a complete copy of its proposed Quarterly Fee Application, together with all exhibits and relevant billing information in a format to be provided by Commission staff.

53.     All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the Receivership Estate.  Such cost benefit review may include an evaluation of the results achieved in relation to the costs associated with any particular Receivership Asset.  At the close of the Receivership Estate, the Receiver and Retained

Personnel will each file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver or Retained Personnel, as applicable, during the course of the Receivership Estate.

54.     Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court in the Commission staff's discretion or such other percentage holdback as the Court may order on its own motion or on the request of the Commission.  The Receiver and Retained Personnel may seek authorization for payment of the applicable holdback amount as part of a subsequent Quarterly Fee Application.  Upon approval by the Court of a request to pay any applicable holdback amount, the Receiver shall be authorized pay from the Receivership Assets such approved holdback amount from the Receivership Assets.  To the extent any fees or expenses are not approved by the Court, they must be offset against the 20% holdback or be disgorged from the professional as appropriate.

55.     Each Quarterly Fee Application shall:

 A.     Comply with the terms of the Billing Instructions agreed to by the Receiver, as modified by this Order; and

 B.     Contain representations (in addition to the Certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, as modified by his Order (and the fact that the Receiver may benefit (directly or indirectly) from the compensation paid to A&M), the Receiver or Retained Personnel, as applicable, has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of

compensation paid or to be paid from the Receivership Assets, or any sharing thereof.

56.     At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by Commission staff, and the Receiver and each Retained Personnel shall submit a final application for compensation and expense reimbursement.

57.     With respect to any motion or application filed in this case by the Receiver, if no party in interest objects prior to the objection deadline applicable thereto, the Receiver may file a notice of no objection with this Court and request that the Court enter the corresponding order without the need for a hearing.

SO ORDERED:
s/ MKB 12/07/2023
_____
MARGO K. BRODIE
United States District Judge

**Schedule 1 – "Receivership Entities"**

| Name | Entity |
|---|---|
| Armada Waste Management GP, LLC (fka GPB Waste Management GP, LLC) | General Partner |
| Armada Waste Management, LP (fka GPB Waste Management, LP) | LP (GPB Fund) |
| Armada WM SLP, LLC (fka GPB WM SLP, LLC) | SLP |
| GPB Auto SLP, LLC | SLP |
| GPB Automotive Income Fund, Ltd. | Cayman Islands Exempted Company |
| GPB AUTOMOTIVE INCOME SUB-FUND, LTD. | Cayman Islands Exempted Company |
| GPB Automotive Portfolio, LP | LP (GPB Fund) |
| GPB Capital Holdings, LLC | General Partner |
| GPB Cold Storage, LP | LP (GPB Fund) |
| GPB H2 SLP, LLC | SLP |
| GPB H3 SLP, LLC | SLP |
| GPB Holdings II, LP | LP (GPB Fund) |
| GPB Holdings III GP, LLC | General Partner |
| GPB Holdings III, LP | LP (GPB Fund) |
| GPB Holdings Qualified, LP | LP (GPB Fund) |
| GPB Holdings, LP | LP (GPB Fund) |
| GPB NYC Development, LP | LP (GPB Fund) |
| GPB NYCD SLP LLC | SLP |
| GPB SLP, LLC | SLP |
| Highline Management Inc. | Service Provider (to GP) |

## Schedule 2 - "Ordinary Course Professionals"

| Professional | Type |
| --- | --- |
| Akerman LLP | Legal Advisor |
| Brown Gibbons Lang & Company LLC | Financial Advisor/ Investment Bank |
| Chimento & Webb, P.C. | Legal Advisor |
| Cole-Frieman & Mallon LLP | Legal Advisor |
| Configure Partners, LLC | Financial Advisor/ Investment Bank |
| EisnerAmper LLP | Audit Services |
| Goldberg Segalla LLP | Legal Advisor |
| Gordon & Rees LLP | Legal Advisor |
| Grant Thornton LLP | Forensic Accounting Services |
| Greenspoon Marder LLP | Legal Advisor |
| Grub Brugger | Legal Advisor (Germany) |
| Herrick Feinstein LLP | Legal Advisor |
| Heyman Enerio Gattuso & Hirzel LLP | Legal Advisor |
| Houlihan Lokey, Inc. | Valuation Services |
| Hunton Andrews Kurth LLP | Legal Advisor |
| KPMG | Tax Services |
| Mayer Brown LLP | Legal Advisor |
| McGuireWoods LLP | Legal Advisor |
| Morgan, Lewis & Bockius, LLP | Legal Advisor |
| Nixon Peabody LLP | Legal Advisor |
| Phoenix American Financial Services | Fund Administrator |
| Potter Anderson & Corroon LLP | Legal Advisor |
| Pullman & Comley, LLC | Legal Advisor |
| Reeves & Brightwell LLP | Legal Advisor |
| Risa Heller | Communications Consulting |
| Ropers Majeski PC | Legal Advisor |
| Rosenfeld & Kaplan LLP | Legal Advisor |
| SGC Associates LLP | Tax Services |
| Shapiro Ramos (Jeffrey Shapiro) | Legal Advisor |
| Shearman Sterling LLP | Legal Advisor |
| Skadden Arps Slate M | Legal Advisor |
| Stroock & Stroock & Lavan LLP | Legal Advisor |
| TripleTree | Financial Advisor/Investment Bank |
| Walkers | Legal Advisor (Cayman Islands) |

**Schedule 3 –**
**Non-Exclusive List of Litigation Involving the**
**Receivership Entities and Receivership Assets**

| | |
|---|---|
| 1 | *Tom Alberto, et al. v. GPB Capital Holdings, LLC, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB Holdings, LP, GPB Holdings II, LP , GPB Holdings Qualified, LP, GPB Holdings III, LP, GPB NYC Development, LP, GPB Waste Management, LP, and others* (AAA, Number 01-22-0001-5433) |
| 2 | *Tom Alberto, et al. v. GPB Capital Holdings, LLC, GPB Automotive Portfolio, LP, GPB Cold Storage, LP, GPB Holdings, LP, GPB Holdings II, LP , GPB Holdings Qualified, LP, GPB Holdings III, LP, GPB NYC Development, LP, GPB Waste Management, LP, Ascendant Capital, AAS, Axiom, DJ Partners, MR Ranger, Gentile, Schneider, Lash, Mark Martino*, Case No. 651143-2023 (New York Supreme Court, New York County) |
| 3 | *Phillip J. Cadez v. GPB Holdings LP et al., Case No. 2020-0402-SG* (Court of Chancery, DE) |
| 4 | *Ceiba Palm LLC v. GPB Capital Holdings, LLC et al., Case No. 2020-021788-CA-01* (Miami Dade Circuit Court, FL) |
| 5 | *Concorde Investment Services, LLC v. GPB Capital Holdings, LLC, et al.*, Case No. 650928/2021 (New York Supreme Court, New York County) |
| 6 | *Barbara Deluca and Drew R. Naylor, et al. v. GPB Holdings LP et al.*, Case No. 1:19-cv-10498 (S.D.N.Y) |
| 7 | *Doctor's Emergency Service, P.A. v. Professional Management, Inc. and Advantedge Healthcare Solutions, Inc.* (Circuit Court for Baltimore City, No. 24-C-23-001840 CN) |
| 8 | *David Gentile v. GPB Capital Holdings, LLC et al.*, Case No. 2021-1102-SG (Court of Chancery, DE) |
| 9 | *David Gentile v. GPB Capital Holdings, LLC et al.*, Case No. 2023-0273-PAF (Court of Chancery, DE) |
| 10 | *In Re GPB Capital Holdings LLP Litigation* (formally: *Adam Younker et al. v. GPB Capital Holdings, LLC, et al.*), Case No. 157679/2019 (New York Supreme Court, New York County) |
| 11 | *Jeff Lipman and Carol Lipman v. GPB Capital Holdings, LLC et al.*, Case No. 2020-0054-SG (Court of Chancery, DE) |
| 12 | *Kinnie Ma et al. v. Ascendant Capital, LLC et al.*, Case No. 1:19-cv-01050 (W.D. Tex) |
| 13 | *Alfredo J. Martinez v. GPB Capital Holdings, LLC*, Case No. 2019-1005 (Court of Chancery, DE) |
| 14 | *Alfredo J. Martinez v. GPB Capital Holdings, LLC*, Case No. 2020-0545 (Court of Chancery, DE) |
| 15 | *Galen G. Miller et al. v. GPB Capital Holdings, LLC et al.*, Case No. 656982/2019 (New York Supreme Court, New York County) |
| 16 | *Parkcar, LLC II v. GPB Capital Holdings, LLC*, Case No. 656113/2020 (New York Supreme Court, New York County) |
| 17 | *Michael Peirce, derivatively on behalf of GPB Automotive Portfolio, LP v. GPB Capital Holdings, LLC et al.*, Case No. 652858/2020 (New York Supreme Court, New York County) |
| 18 | *Mary Purcell et al. v. Rodney Potratz, GPB Capital Holdings, LLC et al.*, Case No. 30-2019-01115653-CU-FR-CJC (California Superior Court, Orange County) |

**Schedule 3 –**
**Non-Exclusive List of Litigation Involving the**
**Receivership Entities and Receivership Assets**

| | |
|---|---|
| **19** | *Ismo J. Ranssi, derivatively on behalf of Armada Waste Management, LP v. GPB Capital Holdings, LLC et al.*, Case No. 654059/2020 (New York Supreme Court, New York County) |
| **20** | *Jeffry Schneider v. GPB Capital Holdings, LLC et al.*, Case No. 2021-0963 (Court of Chancery, DE) |
| **21** | *Shareholder Representative Services LLC v. HPI Holdings, LLC*, Case No. 2022-0166 (Court of Chancery, DE) |
| **22** | *Subaru of New England, Inc. v. AMR Auto Holdings-SM LLC d/b/a Prime Subaru Manchester* (Hillsborough Superior Court Northern District, New Hampshire, 216-2022-CV-00786) |