

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

January 30, 2024

**BY ECF**

The Honorable Margo K. Brodie
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     **SEC v. GPB Capital Holdings LLC, et al., No. 21-cv-00583-MKB-VMS**

Dear Chief Judge Brodie:

We represent the Court-appointed monitor, Joseph T. Gardemal III (the "Monitor"), in the above-referenced matter.  Pursuant to paragraph 23 of the Court's Amended Order appointing the Monitor, dated April 14, 2021 (the "Amended Order"), we respectfully submit the attached presentation as the Monitor's quarterly report for the fourth quarter of 2023.  Paragraph 23 of the Amended Order directs the Monitor to file with the Court "a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14" of the Amended Order.  Certain portions of the report have been redacted, as authorized by Paragraph 23 of the Amended Order, "to protect sensitive, proprietary information."  As required by the Amended Order, this quarterly report is also being served on the SEC, GPB Capital Holdings, LLC, and the Attorney General of the State of New York.  Accordingly, pursuant to paragraph 23 of the Amended Order, we respectfully submit the quarterly report of the Monitor for the fourth quarter of 2023 for the Court's review.

Respectfully submitted,

Robert B. Buehler
Partner
robert.buehler@hoganlovells.com
D 212-918-3261

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Moscow  Munich  New York  Northern Virginia  Paris  Perth  Philadelphia  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Sydney  Tokyo  Warsaw  Washington, D.C.  Associated Offices:  Budapest  Jakarta Riyadh  Shanghai FTZ  Ulaanbaatar.  Business Service Centers:  Johannesburg  Louisville.  Legal Services Center:  Berlin. For more information see www.hoganlovells.com

# Exhibit 1

# GPB CAPITAL HOLDINGS LLC

January 30, 2024

ALVAREZ & MARSAL
LEADERSHIP. **ACTION. RESULTS.**

## Q4 2023 – Quarterly Report of Joseph T. Gardemal III, Court-appointed Monitor over GPB Capital Holdings LLC

Joseph T. Gardemal III, CPA
Managing Director
Alvarez & Marsal
655 Fifteenth Street NW
Washington, DC 20005
(202) 729-2131
JGardemal@alvarezandmarsal.com



# Contents

| I. | Introduction | 2 |
|---|---|---|
| II. | Background | 4 |
| III. | Recent Developments | 10 |
| IV. | Status of Monitor's Review | 14 |
| V. | Monitor Achievements | 22 |
| VI. | Monitor Fee Summary | 34 |

**ALVAREZ & MARSAL**

LEADERSHIP. **ACTION. RESULTS.**

# I. Introduction



# Introduction

This is my twelfth quarterly report since my appointment as Monitor.

As I discuss in detail later in this report, on December 8, 2023, an order issued by Chief Judge Brodie was entered appointing me as the Receiver over GPB Capital and related entities (the "Receivership Order"). That order, however, has been stayed, pending an appeal filed by defendants David Gentile, Jeffry Schneider, and Ascendant Capital to the United States Court of Appeals for the Second Circuit. Following the filing of that appeal, the Second Circuit set a briefing schedule that runs through April 12, 2024.

If the Second Circuit affirms the Receivership Order, I will immediately proceed as Receiver. As I have repeatedly written in my introductions to these quarterly reports, I am prepared to move forward expeditiously with a distribution plan as soon as I am appointed as Receiver of the GPB funds. As Receiver, my two top priorities will be returning funds to investors and maximizing distributable proceeds for investors.

While I remain in my role as the Monitor pending the outcome of the appeal, we continue our work with GPB management to maximize distributable proceeds for investors. In that vein, I am happy to report that, in mid-January, GPB closed on the sale of the largest remaining operating company held by the funds. At this point, GPB holds only a few small operating companies and debt instruments, as well as several pending and prospective claims.

To date, GPB has generated approximately $1.3 billion in gross proceeds from the sale of assets, and management is actively marketing the remaining assets. The available funds that GPB has raised from these sales continue to be invested in conservative vehicles that are generating a reasonable return, with approximately $55 million in interest earned through December 2023.

As with my prior reports, because much of our ongoing work is sensitive and involves litigation and efforts to maximize the value of investments, I have redacted certain sections of this report to maintain confidentiality.

Joseph T. Gardemal III
Court-appointed Monitor, GPB Capital Holdings, LLC
Washington, D.C.
January 30, 2024

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# II. Background



# Background

On February 11, 2021, I, Joseph T. Gardemal III, a Managing Director with Alvarez & Marsal in Washington, DC, was appointed as the independent Monitor over GPB Capital Holdings LLC by the Honorable Chief Judge Margo K. Brodie, United States District Judge for the Eastern District of New York. The Order states that the Monitor shall remain in place until terminated by Order of the Court.

On April 14, 2021, Chief Judge Brodie approved amendments to the order as proposed by the SEC and GPB.

The Order outlines the Monitor's general powers and duties as follows:

1. The authority to approve or disapprove the following actions (Paragraph 6):

   a. Any proposed material corporate transactions by GPB and/or Highline Management, Inc. ("Highline"), the GPB Funds or the Portfolio Companies, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate;

   b. Any extension of credit by GPB, Highline, the GPB Funds, or the Portfolio Companies outside the ordinary course of business, or to a related party, as defined under the federal securities laws;

   c. Any material change in business strategy by GPB, Highline, the GPB Funds, or the Portfolio Companies;

   d. Any material change to compensation of any executive officer, affiliate, or related party of GPB, Highline, the GPB Funds, or the Portfolio Companies;

   e. Any retention by GPB, Highline, the GPB Funds, or the Portfolio Companies of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

   f. Any decision to resume distributions to investors in any of the GPB Funds, consistent with the investment objectives of the GPB Funds; and

   g. Any decision to prepare for, file, or cause to be filed, any bankruptcy or receivership petition for GPB or Highline, or for the Portfolio Companies.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**The Order outlines the Monitor's general powers and duties as follows (Continued):**

**2.   The authorization and empowerment to: (Paragraph 11):**

a.   Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies. The Monitor will negotiate a protocol with GPB for the review of this information;

b.   Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information;

c.   Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies;

d.   Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies;

e.   Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;

f.   Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;

g.   Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.

h.   Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies;

i.   Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change;

j.   Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities;

k.   Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**

# Background (Continued)

**The Order requires the Monitor to provide the following recommendations and reports:**

1. **Paragraph 23 – within 30 days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and GPB, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in paragraphs 8 through 14 (the "Quarterly Report").**

   • This report will provide an overview of the status of each contemplated review outlined in paragraphs 8 through 14.

2. **Paragraph 24 – The Monitor shall submit a report to the Court within 60 days of his initial appointment recommending either continuation of the Monitorship, converting it to a receivership, and/or filing of bankruptcy petitions for one or more of the various entities. The Monitor may seek to extend the 60-day period for good cause shown.**

   • On April 12, 2021, the Monitor submitted his recommendation to continue the Monitorship for a period of at least 180 days.

3. **Paragraph 25 – the Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion, continuation or discontinuation of the Monitorship. GPB shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.**

ALVAREZ & MARSAL

LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (1/2):**

1. **Financial Reporting:**

   a.  On May 14, 2021, the Form 10 for Automotive Portfolio LP was initially filed for the 3-year period ended 12/31/2020. The filing was last amended on September 9, 2021, and the amendment covered the additional period ending 3/31/2021.

   b.  On August 26, 2021, the first 10-Q for Automotive Portfolio LP was filed for the quarter ended 6/30/2021.

   c.  In November 2021, the audit for Cold Storage LP for the year ended 12/31/2020 was finalized and published to investors.

   d.  GPB, with my approval, has engaged new valuation and tax service providers.

   e.  Fair Market Value statements as of 9/30/2021 have been sent to all investors in Holdings I LP, Holdings II LP, Automotive Portfolio LP, Waste Management LP, Cold Storage LP, and New York City Development LP.

   f.  Fair Market Value statements as of 12/31/2022 have been sent to all investors in Holdings II LP, Automotive Portfolio LP, Waste Management LP, and Cold Storage LP.

   g.  On April 14, 2022, the first 10-K for Automotive Portfolio LP was filed for the year ended 12/31/2021.

   h.  On May 13, 2022, the Form 10 Registration Statement for Holdings II LP was initially filed for the 3-year period ended 12/31/2021. The filing was last amended on July 22, 2022, and the amendment covered the additional period ending 3/31/2022.

   i.  Subsequent to July 22, 2022, the Company is current on all SEC filings and continues to file all required financial statements on time.

   j.  Following the execution of the Purchase Agreement for HealthPrime International, LLC (further discussed on page 27 of this report), Holdings II LP adopted the liquidation basis of accounting as of December 31, 2023.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Background (Continued)

**Overview of operations of GPB Capital and Highline**

**Since the appointment of the Monitor on February 11, 2021, GPB has made significant progress in two key areas (2/2):**

2.  **GPB Investments:**

    a.  In November 2021, GPB completed the sale of Prime Automotive Group and substantially all of its auto related assets to Group 1 Automotive.

    b.  In December 2021, GPB completed the sale of Alliance Physical Therapy Group to Chicago-based healthcare investment firm BPOC.

    c.  In Q1, 2022, GPB completed the sales of Greenwave Energy, the real estate of its former Tower Ford dealership, as well as certain assets of Waste Management LP.

    d.  On April 7, 2022, GPB finalized the sale of the ±30-acre parcel of land owned by Cold Storage LP.

    e.  In August 2023, GPB completed the sale of Experience Care LLC.

    f.  In October 2023, GPB completed the sale of Cantata Health Solutions LLC.

    g.  In January 2024, GPB completed the sale of HealthPrime International, LLC.

    h.  The completed sale transactions to date have returned approximately $1.3 billion in gross proceeds to GPB partnerships.

    i.  Under the supervision of the Monitor, GPB continues to market certain of its assets for sale and will update investors upon any successful exit.

    j.  Completed three tuck-in acquisitions to enhance the remaining portfolio value for investors.

    k.  Recovered cash escrows related to previous asset sales.

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# III. Recent Developments



# Recent Developments

**Overview of recent developments between GPB, David Gentile and the SEC:**

1. **May 29, 2022: Violation of court order and notice to GPB**

   a. On May 29, 2022, I was informed through Mayer Brown LLP, counsel to GPB Capital Holdings, that David Gentile had documents delivered to the Company reflecting that Mr. Gentile had purported to take actions, as of May 27, 2022, (i) expanding the number of Managers of the Company from one to four and appointing each of Rick Murphy, Michael Fasano and Matt Judkin as Managers, and (ii) amending the limited liability company agreement of the Company to, among other things, provide for new compensation arrangements with respect to non-employee Managers ((i) and (ii) collectively, the "May 27, 2022 Purported Actions").

   b. On May 31, 2022, I provided formal notice to GPB in my capacity as Monitor under the Amended Order, that the May 27, 2022 Purported Actions, among other things, violate Sections 6(d) and 6(e) of the Amended Order (the "Material Non-Compliance"). In accordance therewith, I further provided the Company notice that the Company had ten (10) business days in which to cure the Material Non-Compliance, and if such cure did not occur within such period, the remedies described in Section 21 of the Amended Order may be invoked with immediate effect.

2. **June 13, 2022: the SEC requested the conversion of the Monitorship to a receivership**

   a. Section 21 of the Amended Order outlines the remedies for the SEC in the event of GPB's non-compliance with the Amended Order: "If GPB does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. GPB shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership."

   b. On June 13, 2022, the SEC filed a motion to request the conversion of the Monitorship to a receivership as a result of continuing violations of the Order, following the above-referenced notice provided by me in my capacity as Monitor under the Amended Order, and pursuant to the remedies provided for in Section 21 of the Amended Order.

   *(continued in next page)*

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Recent Developments (Continued)

**Overview of recent developments between GPB, David Gentile, and the SEC (cont.):**

3. **June 13, 2022: the SEC requested the conversion of the Monitorship to a receivership (cont.)**

   c.  On July 1, 2022, GPB Capital Holdings LLC filed a memorandum in response to the SEC's motion for the order appointing a receiver and imposing a litigation injunction, stating that, *"Defendant GPB Capital Holdings, LLC respectfully submits this memorandum to reiterate its consent, on behalf of its Chief Executive Officer ("CEO"), Rob Chmiel, to the relief the Securities and Exchange Commission ("SEC") requests in its Motion for an Order Appointing a Receiver and Imposing a Litigation Injunction (the "Receivership Motion")."*

   d.  Concurrent with the SEC's motion on June 13, 2022, and subsequently on July 8, 2022, I provided written declarations in support of the SEC's motion for appointment of a receiver over GPB Capital Holdings LLC and its affiliates.

4. **April 28, 2023: the Magistrate Judge assigned to the SEC enforcement action issued an order permitting the parties to submit fact-based updates related to the SEC's Receivership motion, as well as a motion to amend the Monitor order.**

   a.  On May 8, 2023, pursuant to the Court's order, the various parties to the SEC action submitted letters to the Court.

5. **July 28, 2023: the Magistrate Judge ruled in favor of the SEC's motion to convert the Monitorship to a Receivership and for the imposition of a litigation injunction**

   a.  The Report and Recommendation of the Magistrate Judge was not final, pending the District Judge's decision whether to accept the Report and Recommendation in light of any objections that might be filed as to the Report and Recommendation.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Recent Developments (Continued)

**Overview of recent developments between GPB, David Gentile, and the SEC (cont.):**

6. **September 8, 2023: David Gentile and Jeffry Schneider, who are defendants in the pending criminal and SEC cases, filed objections to the Report and Recommendation with the District Judge overseeing the SEC case.**

   a. Two weeks later, on September 22, 2023, the SEC and GPB filed responses to the objections, in which they asked the District Judge to reject the objections and accept the recommendations of the Magistrate Judge.

7. **December 8, 2023: Entry of Receivership Order**

   a. On December 7, 2023, the District Judge entered an Order adopting the Report and Recommendation, granting the SEC's motion to convert the Monitorship to a Receivership, imposing a litigation injunction, and denying Mr. Gentile's motion to amend the Monitor order as moot.  The following day, the District Judge entered an order that (i) converted the monitorship into a receivership and converted Joseph T. Gardemal III's role from Monitor to Receiver over GPB Capital Holdings, LLC and related entities, and (ii) imposed a litigation injunction.

   b. That order has been stayed pending an appeal filed by defendants David Gentile, Jeffry Schneider, and Ascendant Capital to the United States Court of Appeals for the Second Circuit.

8. **January 10, 2024: the Second Circuit set the briefing schedule for the appeal**

   a. On January 10, 2024, the Second Circuit issued an Order setting the briefing schedule for the appeal.  Pursuant to the Order, the appellants' briefs are due February 16, 2024; the appellee's response brief is due March 22, 2024; and any reply briefs are due April 12, 2024.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# IV. Status of Monitor's Review



# Status of the Monitor's Review

**Upon appointment by the Court, the Monitor and GPB worked diligently to establish an efficient protocol to effectuate the Monitor approval process required by Paragraph 6 of the Order.**

**The Monitor team provided a diligence list identifying specific data and documents needed to perform its duties as outlined in Paragraph 11.**

- As of the date of this report GPB has substantially completed the diligence requests by the Monitor, who has obtained the data needed to perform his reviews contemplated in the Order.

**As required by the Order, and to the extent appropriate, the status of the contemplated reviews in Paragraphs 8 through 14 have been classified as the following:**

- Complete: the review process as contemplated in the order has been finalized.
- Ongoing: the review process has commenced; additional procedures are needed.
- Pending: the review process has not yet begun; awaiting additional data or documents.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 8: GPB will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.**

- Through the date of this report GPB has taken reasonable efforts to fulfill the Monitor's requests for documents. While requests continue to arise as the Monitor completes his reviews, the Monitor has not experienced any unreasonable delays and any currently outstanding requests are related to follow up questions from the Monitor's review of the initial information provided.

**Paragraph 9: For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from GPB's General Counsel or Chief Financial Officer.**

- All Monitor requests have been made to either GPB's General Counsel or Chief Executive Officer.

**Paragraph 10: If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to GPB's General Counsel or Chief Financial Officer. GPB shall consider all such comments in good faith and promptly respond to any such questions.**

- GPB's General Counsel and Chief Executive Officer have been appropriately receptive and responsive to follow up questions and/or requests.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11a: Review the finances and operations of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to historical activity. Ongoing with respect to current operations.

**Paragraph 11b: Review historical corporate transactions by GPB and/or Highline, the GPB Funds or the Portfolio Companies, to the extent covered by GPB's forthcoming audited financial statements and any restatements covered therein, for the purposes of executing paragraph 6, above, and consistent with paragraph 19, below. The Monitor will not interfere with ongoing audits. The Monitor will negotiate a protocol with GPB for the review of this information.**

- Status: Ongoing.

**Paragraph 11c: Review historical compensation of all executive officers or affiliates of GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete except for additional analysis of insider payments based on new information.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11d: Review the retention of all consultants currently retained by GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Complete with respect to consultants retained at the appointment of the Monitor. Ongoing with respect to continuing operations.

**Paragraph 11e: Review audited financial statements of GPB, Highline, the GPB Funds, or the Portfolio Companies, which GPB will promptly deliver to the Monitor upon completion;**

- Status: Ongoing – audited financial statements of GPB, Highline, and the GPB funds have been reviewed to the extent they are final and have been published. Additional audits for certain of the relevant entities are still in progress.

**Paragraph 11f: Review the minutes of all meetings of all boards of directors of GPB, Highline, the GPB Funds, or the Portfolio Companies;**

- Status: Complete with respect to historical minutes. Ongoing with respect to current operations.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11g: Review the status of all litigation involving GPB, Highline, the GPB Funds, or the Portfolio Companies.**

- Status: Ongoing – the initial review has been completed. However, the Monitor continues to receive updates from GPB/Highline as litigation involving the relevant entities continues.

**Paragraph 11h: Review any commencement or settlement of any litigation involving GPB, Highline, or the GPB Funds, and any commencement or settlement of any litigation outside of the ordinary course of business involving any of the Portfolio Companies.**

- Status: Ongoing – the Monitor continues to be notified and reviews new developments. The review of any commencement or settlement of litigation involving the relevant entities continues.

**Paragraph 11i: Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any material property by GPB, Highline, the GPB Funds, or the Portfolio Companies. If the material change involves a GPB, Highline, or Portfolio Company related party or affiliate, the Monitor shall have the power to approve or disapprove of the material change.**

- Status: Ongoing.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 11j: Review insurance policies covering GPB, Highline, the GPB Funds, or the Portfolio Companies as well as affiliates, officers, and directors of such entities.**

- Status: Complete with respect to policies in place at the Monitor's appointment. Ongoing with respect to current operations.

**Paragraph 11k: Review promptly and approve any investor-wide communications intended to be sent by GPB to investors in the GPB Funds.**

- Status: Ongoing. The Monitor continues to work actively with GPB/Highline on updates to investor communications and the GPB website content.

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# Status of the Monitor's Review (Continued)

**Paragraph 12: GPB will have responsibility to prepare a summary report on internal controls regarding the cash assets of the GPB Funds for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to GPB's internal cash controls.**

- Status: Complete.

**Paragraph 13: GPB will provide any valuation reports of any hired valuation consultant for the GPB Funds for the Monitor's review.**

- Status: Ongoing – the Monitor team continues to review updated valuation reports provided by GPB/Highline's valuation service provider.

**Paragraph 14: GPB will present to the Monitor a summary report addressing the intended investment strategy of each of the GPB Funds moving forward, consistent with the investment objective as stated in the governing documents of the GPB Funds. Such report shall address an initial plan designed to increase total value specific to each of the GPB Funds.**

- Status: Complete. The Monitor continues to work with Management related to the operation of the Funds.

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

## V. Monitor Achievements

(a) Portfolio Company M&A / Transactions
(b) Oversight of Portfolio Operations
(c) Oversight of General Partner Management
(d) Forensic Review of GPB's Operations / Financials
(e) Distribution Planning
(f) Further Workstreams Related to Monitor Approvals



# (a) Portfolio Company M&A / Transactions (1/5)

This section depicts Monitor team activities related to GPB portfolio company sale transactions. The scope and nature of these transactions required substantial and ongoing analysis to guide GPB and ultimately approve transactions that maximize value to LPs and ultimately investors.

To date, efforts by GPB with the support of the Monitor have combined to realize over $1 billion in proceeds to GPB investors from portfolio company transactions.

**Prime Automotive Group** *(sale occurred November 2021, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of Prime Automotive Group. Efforts included:

- Advised on strategic alternatives to recover and maximize value for LPs, as Prime Automotive Group was facing imminent risk of loss of value due to OEMs' and lenders' attempts to terminate franchise and loan agreements due to the association with GPB
  - Strategic alternatives included SPAC sale, management buyout/ separation proposal, going-concern sale, sale in parts, etc.
- Provided sale process oversight and strategic direction throughout, including i.e. participation in management meetings, and resolving conflicts between key individuals at GPB/Highline and Prime and the attempt by management to separate from GPB
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Managed GPB/Prime relationships with OEMs, in particular ███████████████
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Guided discussions related to the structuring, extending, and replacing of four financing agreements following several threatened and/or actual terminations by ███████████████████████████ including vetting new potential credit providers
- Advised on the sale of several one-off dealerships and associated real estate
- Supported post-transaction work, including negotiation of (and performance under) transition service agreements, OEM litigation oversight with Subaru New England (recently settled), claims management oversight, receivables collection, asset liquidation, review of equity structures and minority stakeholders, and review of staffing and compensation for wind-down team

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| **$923 million**[1] | **$466 million**[2] | **198%** |

[1] Includes net proceeds from Prime Automotive Group and real estate also included in the GPB Automotive Portfolio. Please refer to pages F-27 and F-31 of the 2021 GPB Automotive Portfolio 10-K and page F-25 of the GPB Holdings II Form 10
[2] Book value as of 12/31/2020, pursuant to the GPB Automotive Portfolio LP and GPB Holdings II LP Form 10 filings

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (2/5)

**Alliance Physical Therapy** *(sale occurred December 2021)*
The Monitor team was heavily involved in GPB's disposition of Alliance Physical Therapy. Efforts included:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale and structure of the same
  - Continued to provide strategic oversight throughout the process with respect to escrow considerations, review of M&A agreements, structuring of the sale, evaluation of potential buyers, etc.
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Realized LP Proceeds during the Monitorship increased by $10M in June 2023 as a result of that amount being released from escrow

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|:---:|:---:|:---:|
| $129 million | $56 million[1] | 231% |

[1] Book value as of 12/31/2020. The nearest third-party fair market valuation (as of 6/30/2019) indicated a FMV within ~4% of the 12/31/2020 book value

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (3/5)

**Armada Waste Management**

*(Sale of Capitol Waste, OnDemand Container, Iron City Express, Buckeye, and MudMasters Ohio complete with sale of* ███████████████ *ongoing)*

Assets in the Armada portfolio have been sold separately in five transactions to date. Efforts include:

- Guided GPB with respect to the evaluation of strategic alternatives, including consideration of a sale options in parts or as one entity
- Continue to support management in the reevaluation of different divestment alternatives as the sale process repeatedly proved difficult due to the lack of financial performance of the assets
- Reviewed all candidates and supported advisor selection for investment banker and transaction counsel
  - Reviewed engagement letters, benchmarked fees, and provided process oversight
- Provided guidance with respect to various performance issues at Armada entities, ████████████████████████████████████ ███████████
- Provide general project/sale management oversight (multiple different subsidiaries were sold to multiple different buyers)
- Reviewed relevant agreements (asset purchase agreements) as part of advising on sale terms, considerations, and structure
- Structured executive compensation plans and provided extensive feedback to align transaction bonus with investor value
- Continue to review and evaluate ████████████

| Realized LP Proceeds in Monitorship to date | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $13 million | $26 million | N/A |

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (a) Portfolio Company M&A / Transactions (4/5)

**Cold Storage** *(sale occurred April 2022, wind-down activities ongoing)*
The Monitor team was heavily involved in GPB's disposition of a ±30-acre parcel of land that was owned by GPB Cold Storage. Efforts included:

- Reviewed and discussed several potential options/alternatives for cash flow, including leasing a portion of the real estate, and eventually structuring an agreement to sell the asset
- Provided guidance on sale process following a previously failed attempt by GPB to sell the property in 2020
- Repeatedly engaged in discussions around title insurance due to heightened concern of third-party providers over engagement with GPB entities

| Realized LP Proceeds in Monitorship | 12/31/2020 Valuation (Pre-Monitorship) | Realized Value Compared to Pre-Monitor Valuation |
|---|---|---|
| $78 million | $58 million | 134% |

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**

# (a) Portfolio Company M&A / Transactions (5/5)

**Health Prime International ("HPI")** *(sale occurred January 2024)*

On January 19, 2024, HPI Holdings LLC (the "Seller"), and HPI Holdco LLC, which are majority owned by GPB Holdings II, completed the sale of all equity interests of HPI Holdco to Lotus HPI Buyer, Inc. (the "Purchaser").  At the closing of the transaction, Purchaser paid Seller $190M in cash (the "Purchase Price"), less applicable adjustments, escrows and holdbacks.  In addition, at the closing of the transaction, approximately $13.4M of the Purchase Price was deposited by Seller into escrow as a contingent reserve to be used, if necessary, to satisfy any potential contingent earn-out payments arising out of a previously completed transaction, with the remainder thereof (after the determination of any such contingent payments) to be released to Seller.

The Monitor has spent considerable time working with GPB to drive accretive value and position the company for the sale.  Significant efforts have included:

- Initiating discussions with HPI management on vision forward and next steps
- Aided HPI management in strengthening its Board of Directors
- Oversight (and evaluation) of HPI platform tuck-in acquisitions:
  - Evaluated acquisition target, transaction structure, financing structure, and other considerations
  - Reviewed integration process of first and second tuck-in acquisitions
  - Evaluated strategic viability and value creation of subsequent tuck-ins
- Oversight (and review) of merger transaction between HPI and another GPB portfolio company (MDS Medical)
- Oversight of the sale process for HPI

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (b) Oversight of Portfolio Operations

Additional Monitor involvement has included:

▶ **Maximization of Portfolio Company Value – Underperforming Asset Support**

The Monitor has spent considerable time working with GPB to maximize value on underperforming assets, including:
- Sale process of Greenwave Energy, Itelagen, Experience Care LLC and Cantata Heath Solutions LLC
- Restructuring transaction of failed investment Insightra
- Pursuit of recovery actions with respect to debt and equity positions Hycor and Tampa Riverwalk
- Oversight  of agreement to reduce fund-level indebtedness at NYC Development
- Review of recent financial performance, potential divestiture and ultimate liquidation of Erus Energy
- Oversight of negotiations for extension or refinancing of senior debt at Riverwalk project

Tasks performed by the Monitor include:
- Evaluate together with GPB management weaknesses in the investment management ███████████
████████████████████████████████████████████
  - Oversee replacement of investment professionals at underperforming investment positions and support transition of investment professionals through Monitor team industry experts
- Provide support in preparing Erus for a chapter 7 liquidation in order to minimize investor liability
- Interface with portfolio companies in collaboration with GPB investment manager to recover value and determine strategic alternatives

▶ **Portfolio Company Management Support, Replacement, and Incentives**

- Reviewed GPB proposals, evaluated alternatives, and provided extensive feedback on portfolio company management incentive programs (as addressed in prior section, "Portfolio Company M&A/Transactions")
- Continued evaluation of possible candidates for management positions and board members at portfolio companies
- Support management retention efforts at portfolio companies together with GPB management (necessary due to the flight risk related to GPB affiliation)
- Supported portfolio company litigation efforts to increase recovery prospects for fund investors
- Monitored and supported management's decision to move portfolio company bank accounts from Signature bank to other financial institutions

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (c) Oversight of General Partner Management

**General Partner Measures**

The GPB decision-making process has been formalized by the Monitor via an RFA (request for approval) process. The Monitor has worked with GPB on 381 RFAs across the various types of transactions which require approval pursuant to the Monitor Order. Other Monitor responsibilities have included:

- Advise management and continue to evaluate various options with respect to driving significant cost savings ($24M reduction in operating costs since December 2021) primarily due to ongoing Reduction in Force implementation and reduction in professional fees

- The above reduction in operating costs and fees was offset by increased legal and other indemnified fees primarily due to the legal fee advancement obligations of ongoing criminal and civil litigations of GPB Capital Holdings.  Legal and other indemnified fees have totaled $17.9M in 2021, $26.1M in 2022, and $35.0M in 2023

- ███████████████████████████████████████████████████

- Monitored and supported management's decision to move general partner and fund bank accounts from Signature bank to other financial institutions

- Provided oversight of budgeting and investment processes

**ALVAREZ & MARSAL**
LEADERSHIP. ACTION. RESULTS.™

# (d) Forensic Review of GPB's Operations / Financials (1/2)

The Monitor Order authorizes various historical and financial reviews. The Monitor completed initial reviews as identified specifically in the Monitor Order, as well as identified supplementary detailed reviews necessary to evaluate claims against various third parties and reviews necessary to support distribution strategies (i.e., comingling of assets, interfund transactions, insider payments). Monitor work has included the following:

### Monitor Order Reviews

- Analyzed and summarized GP-level, fund-level, and sub-fund-level historical bank statements and transactions
- Reviewed and analyzed historical corporate transactions (including acquisitions and divestments)
- Analyzed and summarized all trial balance and general ledger entries to create full sources and uses for each fund
- Reviewed executive compensation structure
- Reviewed and summarized executive, consultants, and advisor compensation, including:
  - Created compensation matrix of all former and current executives
  - Reviewed general ledger, payroll system, and bank detail to triangulate correct information
  - Reviewed expense reimbursements
  - Reviewed charge-back / pass-through practices by GPB
- Reviewed and summarized 2013-2021 complete payroll registers (W2 and 1099 pay)
- Analyzed historical financials for 2013-2020 (including accounting records for funds and sub-funds)
- Reviewed financial statements and provided detailed feedback on all audits published to date (AP/H2 Form 10s, 10-Ks/Qs)
- Reviewed all BoD / acquisition committee ("AC") minutes and documentation
- Created litigation tracker and participated in discussions regarding ongoing litigation, including:
  - Reviewed all litigation settlements (often requiring extensive work to support settlement decisions)
- Reviewed all insurance policies
- Reviewed all past communications to investors and brokers, including fund marketing materials
- Analyzed cash disbursements from portfolio companies during monitorship period and reconciled distributions to material action requests
- ██████████████████████████████████████████████████████████

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION. RESULTS.**

# (d) Forensic Review of GPB's Operations / Financials (2/2)

Included below are supplemental forensic reviews to support third party claims and distribution strategy decisions arising out of the initial reviews:

**Follow-up Workstreams**



- Reconciled investor-level contributions, commissions, distributions, and redemptions to GPB general ledger
- Created a comprehensive LP / fund-level valuation matrix



- Evaluated automotive acquisition due diligence and related materials

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.™

# (e) Distribution Planning

**Distribution Planning**

Prior to and since the filing of the receivership motion, the Monitor team has continuously engaged in extensive discussions with GPB and Mayer Brown (GPB counsel) to further the development of a distribution plan, including the preparation of a motion, plan exhibit, and supporting analysis. Key efforts include:

- Evaluated possible structure and related issues with respect to making distributions
  - Created investor recovery analysis and full model of investor-by-investor returns to evaluate distribution scenarios across funds
  - Reviewed distribution plan issues (i.e. comingling, interfund loans, co-investments, etc.)
  - Reviewed marketing and sales commissions for unique trends related to individual brokers and potential related parties
  - Researched precedent for Monitorship / Receivership distribution plans
  - Evaluated GPB proposals of possible distribution scenarios, including:

  - Prepared and evaluated alternative scenarios from GPB's proposals

- Prepared declarations in support of the Receivership Motion, including various supporting analyses to substantiate findings

ALVAREZ & MARSAL
LEADERSHIP. ACTION. RESULTS.

# (f) Further Workstreams Related to Monitor Approvals

**Litigation Support**

Consistent with the Monitor Order, the Monitor has evaluated and approved the resolution of several current litigation matters in order to achieve the best possible return for investors. The below encompasses some of the key activities of the Monitor to assist GPB in litigation-related matters, with efforts to date including (but not limited to) the following:

- Ongoing litigation review and analysis leading to approval
- Resolved Prime Automotive litigation related to David Rosenberg
- Settled litigation of Subaru New England
- Resolved litigation related to Cotten, Ortiz, NYCD, and multiple early lease terminations



# VI. Monitor Fee Summary



# Summary of Fees to Date

Below is a summary of fees invoiced by the Monitor and his financial advisors through year-end 2023:

|  | **2021** | **2022** | **2023** |
|---|---|---|---|
| Monitor Fees | $5,688,915 | $4,502,240 | $4,808,103 |

Since the appointment of the Monitor, total legal fees incurred by the Monitor and not included above total approximately $6.6 million.

Monitor Fees in comparison to GPB LP Interest Income:

- As approved by the Monitor, GPB currently invests available cash from portfolio company sales in US Treasury Securities, as a means to generate LP returns in a risk-free manner until distributions to investors can be made
- During 2022 and 2023, the interest earned on invested cash totaled approximately $54.6 million
- Due to the higher interest rate environment, interest earned in the current quarter is expected to be approximately $4.3 million per month
- Notwithstanding the foregoing, it remains the Monitor's top priority to achieve distribution of available proceeds to investors as soon as possible

**ALVAREZ & MARSAL**
LEADERSHIP. **ACTION.** **RESULTS.**