UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

          v.

GPB CAPITAL HOLDINGS, LLC; ASCENDANT
CAPITAL, LLC; ASCENDANT ALTERNATIVE
STRATEGIES, LLC; DAVID GENTILE; JEFFRY
SCHNEIDER; and JEFFREY LASH,

                Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-583 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff Securities and Exchange Commission (the "SEC") commenced the above-captioned action on February 4, 2021, against Defendants GPB Capital Holdings, LLC ("GPB"), Ascendant Capital, LLC ("Ascendant Capital"), Ascendant Alternative Strategies, LLC ("Ascendant Strategies"), David Gentile, Jeffry Schneider, and Jeffrey Lash. (*See* Compl., Docket Entry No. 1.)

On January 17, 2025, Joseph T. Gardemal III, GPB's Court-appointed Receiver (the "Receiver"), filed a motion seeking approval of a plan of distribution to return funds to GPB investors.[1] On April 8, 2025, the Court granted the Receiver's motion for disbursement of funds (the "April 2025 Decision"). (April 2025 Decision, Docket Entry No. 271); *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 21-CV-583, 2025 WL 1043654 (E.D.N.Y. Apr. 8, 2025). Gentile and Schneider now jointly move for reconsideration on the limited issue of the

---

[1] (Receiver's Mot. for Distrib. of Funds ("Receiver's Distrib. Mot."), Docket Entry No. 228; Receiver's Proposed Plan of Distribution ("Distribution Plan"), annexed to Receiver's Distrib. Mot. as Ex. A, Docket Entry No. 228-1.)

Court's exclusive jurisdiction over advancement disputes (together, the "Reconsideration Defendants"); the Receiver opposes the motion.[2]  For the reasons discussed below, the Court denies Reconsideration Defendants' motion for reconsideration and request for a stay pending appeal.

## I.   Background

The Court assumes familiarity with the facts as detailed in the April 2025 Decision, and therefore only provides a summary of the pertinent facts.

On February 12, 2021, the Court appointed Gardemal to oversee GPB, and on April 14, 2021, amended the Monitorship Order.  (Order Appointing Monitor ("Monitorship Order"), Docket Entry No. 23.; Am. Order Appointing Monitor ("Am. Monitorship Order"), Docket Entry No. 39.)  On June 13, 2022, the SEC moved for an order to show cause why the monitorship should not be converted into a receivership.[3]  (SEC's Mot.)  The SEC alleged that on or about May 27, 2022, Gentile advised GPB's CEO and sole manager, Rob Chmiel, that he had appointed three new managers.  (SEC's Mem. 5.)  Gentile directed GPB's CEO to cooperate with his newly-installed managers and "seek consensus" with them regarding GPB's future

---

[2]  (Reconsideration Defs.' Mot. for Reconsideration ("Defs.' Mot."), Docket Entry No. 275; Reconsideration Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 276; Receiver's Opp'n to Defs.' Mot. ("Receiver's Opp'n"), Docket Entry No. 279; Reconsideration Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 283; Receiver's Surreply in Response to Defs.' Mot. ("Receiver's Surreply"), Docket Entry No. 285.)  On May 16, 2025, the Receiver filed two versions of the Surreply (*see* Receiver's Surreply; Receiver's Surrreply in Response to Defs.' Mot., Docket Entry No. 284.  However, the Receiver clarified that the Surreply at Docket Entry No. 284 was filed in error and properly re-filed as Docket Entry No. 285.  (Entry dated May 19, 2025.)  The Court accordingly only reviews the Receiver's Surreply filed as Docket Entry No. 285.

[3]  (SEC's Mot. for an Order to Show Cause ("SEC's Mot."), Docket Entry No. 88; SEC's Mem. in Supp. of SEC's Mot. ("SEC's Mem."), Docket Entry No. 89; Gentile's Mem. in Opp'n to SEC's Mot. ("Gentile's Opp'n"), Docket Entry No. 102; SEC's Reply in Supp. of SEC's Mot. ("SEC's Reply"), Docket Entry No. 103.)

course. (*Id.*) In addition, the SEC alleged that Gentile and the new managers modified GPB's Operating Agreement[4] so that it provided (1) Gentile and the new managers expanded information rights; (2) compensation packages for the new managers of up to $400,000 per year; (3) Gentile with the ability to unilaterally amend the Operating Agreement; (4) mandatory tax distributions to Gentile; (5) exclusive jurisdiction to the Delaware Chancery Court for all actions related to the Operating Agreement; and (6) advancement of expenses. (*Id.*)

By report and recommendation dated July 28, 2023, Magistrate Judge Vera M. Scanlon recommended that the Court grant the SEC's application to convert the monitorship into a receivership and impose a litigation injunction (the "R&R").[5] (R&R 33, Docket Entry No. 157.) As relevant to the current motion, Judge Scanlon noted that Schneider and Ascendant Capital "argue that paragraphs 6(g) and 16(c)of the Proposed [Receivership] Order are in apparent conflict with Delaware orders and judgments providing for the advancement of legal fees and expenses to Mr. Schneider, which, if entered, could result in the infringement of Mr. Schneider's

---

[4] (Limited Liability Company Agreement of GPB Capital Holdings, LLC ("Operating Agreement"), annexed to the Decl. of David Gentile as Ex. A, Docket Entry No. 82-1.)

[5] The SEC filed a proposed order that detailed its proposed terms of the receivership (the "Proposed Receivership Order"). (Proposed Receivership Order, annexed to the Decl. of Neal Jacobson as Ex. 1, Docket Entry No. 91-1.) On August 2, 2023, the SEC filed an amended proposed order in response to Judge Scanlon's order directing the SEC to submit a revised order with minor revisions and clarifications (the "Amended Proposed Receivership Order"). (Am. Proposed Receivership Order, annexed to the SEC's Aug. 2, 2023 Letter, Docket Entry No. 161-2.) On September 8, 2023, Schneider and Ascendant Capital filed an objection to the R&R, and Gentile filed a separate objection. (*See* Schneider & Ascendant Capital's Objs. to the R&R ("Schneider's Objs."), Docket Entry No. 167; Gentile's Objs. to the R&R ("Gentile's Objs."), Docket Entry No. 168.) On September 22, 2023, the SEC and GPB filed responses urging the Court to adopt the R&R. (*See* SEC's Resp. to Defs.' Objs. ("SEC's Resp.") 18, Docket Entry No. 170; GPB's Resp. to Defs.' Objs. ("GPB's Resp.") 23, Docket Entry No. 171.) On September 29, 2023, Gentile, Schneider, and Ascendant Capital filed replies. (*See* Gentile's Reply in Supp. of Objs. to the R&R ("Gentile's Reply"), Docket Entry No. 175; Schneider & Ascendant Capital's Reply in Supp. of Objs. to the R&R ("Schneider's Reply"), Docket Entry No. 176.)

'Sixth Amendment right[] to counsel in the companion criminal case' or violation of 'the requirement that lawfully obtained Delaware Court Orders and Judgments are entitled to full faith and credit.'" (*Id.* at 31 (footnotes omitted).) Judge Scanlon concluded that "[e]ven assuming that Ascendant Capital and Mr. Schneider have accurately described that the referenced judgments and orders provide for the advancement of legal fees and expenses" to Schneider, "neither paragraph 6(g) nor paragraph 16(c)" would "prohibit the payment of such fees and expenses." (*Id.* at 32.) Judge Scanlon explained that paragraph 6(g) "would require that this Court authorize any such payment of a value exceeding $50,000" and paragraph 16(c) "would essentially prohibit the dissipation or diminution of assets without written agreement of the receiver," but was not a "wholesale bar to the dissipation or diminution of assets if funds were to be spent on approved activities." (*Id.*) On December 7, 2023, the Court adopted the R&R and the Amended Proposed Receivership Order.[6] (Order Adopting Report and

---

[6] In imposing a litigation injunction, the Court exempted "reimbursement procedures pursuant to which Schneider and Gentile submit invoices and requests for reimbursement under their advance orders." *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 21-CV-583, 2023 WL 8468467, at *16 n.21 (E.D.N.Y. Dec. 7, 2023).
    On November 9, 2021, Schneider filed an action in Delaware Chancery Court against GPB and related entities, seeking advancement of legal expenses for the various actions pending against himself, including the criminal prosecution in the Eastern District of New York. (*See* Schneider's Objs. 4.) The Delaware Action resulted in an order granting summary judgment, (*see* Final Order Granting Summ. J., annexed to Decl. of Glenn C. Colton ("Colton Decl.") as Ex. A, Docket Entry No. 167-2), and two orders regarding advancement, one of which sets forth specific procedures for the evaluation and then advancement of attorneys' fees and other expenses (the "*Fitracks* Order"). (*See* Schneider's Objs. 4–5; *Fitracks* Order, annexed to the Colton Decl. as Ex. B, Docket Entry No. 167-3; Judicial Action Form, annexed to the Colton Decl. as Ex. C, Docket Entry No. 167-4.) On December 20, 2021, Gentile filed a similar action in Delaware Chancery Court, which granted a similar advancement order (together with Schneider's action, the "Delaware Actions"). (*See* Stipulation and Advancement Order, annexed to the Decl. of Jonathan R. Jeremias ("Jeremias Decl.") as Ex. 10, Docket Entry No. 168-11.) In adopting the R&R, the Court clarified that "the reimbursement procedures set forth in the *Fitracks* Order and the Stipulation and Advancement Order are exempted from the litigation injunction." *GPB Cap. Holdings, LLC*, 2023 WL 8468467, at *16 n.21.

Recommendations Imposing Receivership ("Receivership Order"), Docket Entry No. 186); *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 21-CV-583, 2023 WL 8468467 (E.D.N.Y. Dec. 7, 2023). The Court explicitly noted that the Receivership Order did "not prohibit the payment of [Gentile's or] Schneider's legal expenses . . . because it permits the receiver to dissipate assets by payments ordered by the Court." *GPB Cap. Holdings*, 2023 WL 8468467, at *16.

On December 12, 2023, Gentile, Schneider, and Ascendant Capital filed an order requesting the Court direct Plaintiff to show cause as to why the Court should not stay the Receivership Order pending resolution of their appeal. (Defs.' Mot. for an Order to Show Cause, Docket Entry No. 189.) On December 14, 2023, the Court denied the motion, but "grant[ed] a temporary stay so that the parties may seek a stay pending appeal from the Second Circuit." (Order dated Dec. 14, 2023.) On December 21, 2023, Gentile, Schneider, and Ascendant Capital filed a motion to stay pending their appeal of the Court's Receivership Order, which the Second Circuit granted. *See* Motion to Stay, *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010 (2d Cir. Dec. 21, 2023); *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010 (2d Cir. May 14, 2024) (order granting motion to stay).

After hearing oral argument on Defendants' motion on November 6, 2024, Oral Argument, *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010 (2d Cir. Nov. 6, 2024), on December 3, 2024, the Second Circuit affirmed the Court's Receivership Order and lifted the stay, *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010, 2024 WL 4945247, at *6 (2d Cir. Dec. 3, 2024) (summary order). The Second Circuit explained that the Court's decision to convert the monitorship into a receivership was "well-supported by the record" based on Gentile's uncured violations of the Amended Monitorship Order, including

"the imminent risk of dissipation of assets." *Id.* at *5. As the Second Circuit noted, the Amended Monitorship Order provided that "the relief for an uncured violation of the monitorship 'shall' be a receivership." *Id.* at *4. Accordingly, the Second Circuit affirmed the Court's decision "converting the monitorship into a receivership pursuant to the explicit terms of the [Amended Monitorship Order] and its inherent equitable power."[7] *Id.* at *6.

On January 17, 2025, the Receiver filed a motion seeking approval of a Distribution Plan to return funds to GPB investors; Gentile, Schneider, and Ascendant Capital objected to the Receiver's Distribution Plan.[8] As relevant to this motion, Gentile and Schneider argued that the Distribution Plan was "unnecessarily ambiguous regarding the approval of advancement and indemnification costs" in "violation of this Court's Order, the law of the case doctrine, . . . the orders of the Delaware Chancery Court, and the Full Faith and Credit Clause of the United States Constitution" as well as their Sixth Amendment rights "with respect to their continuing criminal case." (Defs.' Objs. 7–8, 11.) Specifically, they noted that the Distribution Plan provides the Receiver with the authority to, "in his sole discretion," determine distributions of cash reserves, including "advancement costs." (*Id.* at 11 (emphasis omitted).) They argued that the Distribution Plan "effectively end-run[s]" the Receivership Order's guarantee that it "would not impact [Gentile's or Schneider's] [advancement] rights pursuant to the Delaware Orders," and

---

[7] On January 21, 2025, Gentile petitioned for a rehearing en banc, which the Second Circuit denied on February 26, 2025. Petition for Rehearing En Banc, *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010 (2d Cir. Jan. 21, 2025); *Sec. & Exch. Comm'n v. GPB Cap. Holdings, LLC*, No. 23-8010 (2d Cir. Feb. 26, 2025) (order denying petition for panel rehearing).

[8] (Receiver's Distrib. Mot.; Distribution Plan; Decl. of Receiver in Supp. of Receiver's Distrib. Mot. ("Receiver's Decl."), Docket Entry No. 229; Gentile, Schneider & Ascendant Capital's Objs. to Receiver's Distrib. Mot. ("Defs.' Objs."), Docket Entry No. 248; Receiver's Reply in Supp. of Receiver's Distrib. Mot. ("Receiver's Reply"), Docket Entry No. 258.)

that the Receiver "*is required to comply with his legal obligations, including compliance of the existing orders of other courts*." (*Id.* at 9–10, 11–12.) Gentile and Schneider acknowledged that the Receiver was "currently taking the position that the [Distribution] Plan does not address advancement or indemnification," but sought explicit clarification from the Court that the Distribution Plan does not impact their advancement rights. (*Id.* at 10–11.) They therefore requested that the Court amend the Distribution Plan by "requiring that the Receiver . . . 'comply with his legal obligations' . . . with respect to advancement and indemnification costs" and "requiring the Receiver to maintain a sufficient reserve to meet legal obligations including the previously ordered advancement and indemnification obligations." (*Id.* at 1–2, 19 (citation omitted).)

The Receiver argued that the Distribution Plan did not "undermine the Objectors' rights to advancement and indemnification of defense costs." (Receiver's Reply 2.) First, the Receiver explained that "[t]o the extent that the [Distribution] Plan has any bearing at all on advancement or indemnification, it is simply to confirm that the Receiver will continue to authorize the advancement of appropriate defense costs . . . subject to the right to recoup such costs." (*Id.* at 14.) Second, the Receiver argued that Gentile's and Schneider's advancement costs should not be Priority Claims. (*Id.* at 2, 12–13.) The Receiver noted that GPB has approved and advanced nearly $75 million to Gentile and Schneider for their litigation costs and Gentile and Schneider "should not have 'Priority Claimant' status over other unsecured creditors, especially when those creditors include the very investors whom a jury has found, beyond a reasonable doubt, they defrauded." (*Id.* at 7, 12–13.) The Receiver further argued that using his discretion to determine the amount of cash reserves is "entirely consistent with the Receivership Order," and that the $719 million he plans to hold in reserve for ongoing expenses, including advancement costs,

renders "any suggestion by [Gentile and Schneider] that the reserves are not sufficient . . . meritless." (*Id.* at 14.)  Finally, the Receiver argued that, to the extent that Gentile and Schneider believe the Receivership Order requires that disputes about advancement must be litigated in Delaware, "that belief is misguided" and that the Court should "exercise continuing jurisdiction over any future litigated disputes between the Receiver and Gentile or Schneider concerning their claims for advancement." (*Id.* at 16–17.)

In the April 2025 Decision, the Court concluded that the Distribution Plan did not undermine Gentile's or Schneider's rights to advancement costs. *GPB Cap. Holdings*, 2025 WL 1043654, at *17.  The Court noted that the Receivership Order "explicitly stated that it did not pose any bar to Schneider's and Gentile's rights under their advancement orders, since the [R]eceiver is required to comply with his legal obligations, including compliance of the existing orders of other courts" and that the Receivership Order did not "enjoin the reimbursement procedures pursuant to which Schneider and Gentile submit invoices and requests for reimbursement under their advance orders." *Id.* (internal quotation marks omitted) (quoting *GPB Cap. Holdings*, 2023 WL 8468467, at *16 & n.21).  The Court also confirmed that the Receivership Order permitted the Receiver "to approve advancement payments without further order from this Court" and that the Receiver planned to continue authorizing the advancement of Gentile's and Schneider's defense costs. *Id.* (quoting Receiver's Reply 14–15).  The Court concluded that there was therefore no dispute that the Receiver intends to and is required by the Receivership Order to continue paying Gentile and Schneider's advancement costs. *Id.*

In addition, the Court noted that "[n]o Objector argued that disputes over advancement costs should be litigated in Delaware, and the Court's Order Appointing the Receiver clearly stated that the Court retains 'exclusive jurisdiction over any action filed against the Receiver . . .

based on acts or omissions committed in their representative capacities.'" *Id.* at *16 n.25 (quoting Order Appointing Receiver ¶ 37.)  The Court concluded that "[t]here is therefore no dispute that the Court retains jurisdiction to resolve any disputes regarding either Gentile's or Schneider's advancement costs." *Id.*

## II.  Discussion

### a.  Standard of review

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (same); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the [c]ourt has overlooked"). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ." *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024) (quoting *Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06-CV-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009)); *see also Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, at *5 (S.D.N.Y. June 7, 2022) (quoting same).  In addition to considering any evidence or controlling cases the court overlooked, the court should also consider whether there has been "an intervening change of controlling law." *Commerzbank AG*, 100 F.4th at 377 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL*

*Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *Network Apps, LLC v. AT&T Mobility LLC*, 778 F. Supp. 3d 610, 619 (S.D.N.Y. 2025) ("Reasons to 'depart from the law of the case and reconsider [an] issue' may include 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" (alteration in original) (quoting *Gulino v. Bd. of Educ. of N.Y.C. Sch. Dist. of the City of New York*, 555 F. App'x 37, 40 (2d Cir. 2014))); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 3159233, at *1 (E.D.N.Y. Apr. 28, 2023) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104).

It is thus well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*, (July 13, 2012)). "A motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already decided' or present arguments that could have been made before the judgment was entered." *Ethridge*, 49 F.4th at 688 (quoting *Shrader*, 70 F.3d at 257); *see also Doe v. Martucci*, No. 20-CV-2331, 2024 WL 5118505, at *2 (S.D.N.Y. Dec. 16, 2024) ("[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." (quoting *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005))); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) ("A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for

making new arguments that could have previously been made.'" (quoting *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014))), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

### b.    The Court denies the motion for reconsideration

Reconsideration Defendants move for reconsideration on the "narrow issue . . . that this Court, rather than the Delaware Court of Chancery, is empowered to assert jurisdiction to hear and determine any disputes arising between Defendants and GPB regarding their respective advancement costs." (Defs.' Mem. 1.)  First, the Reconsideration Defendants argue that the Court overlooked their arguments that the Delaware Court's advancement orders "provide that the Delaware Court of Chancery retains jurisdiction over advancement disputes between Defendants and GPB and that usurping the Chancery Court's jurisdiction would violate the Full Faith and Credit Act and Article IV, section 1, of the U.S. Constitution."  (*Id.* at 7; Defs.' Reply 1.)  In support, they argue that the Court overlooked that they "incorporate[d] by reference" their opposition to Judge Scanlon's R&R where they "argued that disputes over advancement costs should be litigated in Delaware and that the Delaware Court of Chancery ought to retain jurisdiction over all advancement processes."  (Defs.' Mem. 7; Defs.' Reply 2.)  They argue that the Court's statement that "no Objector argued that disputes over advancement costs should be litigated in Delaware," *GPB Cap. Holdings*, 2025 WL 1043654 at *16 n.25, was thus "a mistake of fact and a clear error sufficient for reconsideration."  (Defs.' Mem. 8.)  Second, Reconsideration Defendants argue that the Court "overlooked [Reconsideration] Defendants' argument that by retaining jurisdiction over advancement disputes[,] the Receivership Order failed to properly accord the [a]dvancement [o]rders full faith and credit pursuant to the Full Faith and Credit Act and Article IV, section 1, of the U.S. Constitution."  (*Id.* at 8, 10.)  They contend that "[j]urisdiction over matters involving the interpretation of an LLC agreement, including rights to advancement and indemnification, is specifically imbued in the Delaware

11

Court of Chancery," and "[t]he Delaware Supreme Court has held that advancement actions are expedited by nature." (*Id.* at 9.) They further argue that "if the Court asserts jurisdiction [over advancement costs disputes], it will be saddled with the burden of litigating advancement disputes" for the Reconsideration Defendants' criminal appeals and civil actions. (*Id.* at 2.) Third, Reconsideration Defendants argue in their reply that until the April 2025 Decision, the Court "never enjoined the Delaware Actions and, in fact, affirmatively allowed them to proceed." (Defs.' Reply 3.) They argue that the "Court has already decided . . . [that] the Delaware court has continued to exercise jurisdiction over the actions, and the parties have litigated on the understanding that future advancement issues would be heard in Delaware." (*Id.* at 4.)

The Receiver opposes the motion for reconsideration. First, the Receiver argues that the Court correctly stated in the April 2025 Decision that "no Objector argued that disputes over advancement costs should be litigated in Delaware" because "the only specific objections Defendants made to the [Distribution] Plan as to advancement costs were that: (1) advancement claims should have 'priority' status; and (2) the [Distribution] Plan did not hold 'sufficient amounts' in reserve for those claims." (Receiver's Opp'n 4–5 (quoting *GPB Cap. Holdings*, 2025 WL 1043654, at *16 n.25).) They argue that because the Reconsideration Defendants did not make any arguments as to "where advancement disputes should be litigated," they "cannot be heard to complain now," particularly because the arguments the Reconsideration Defendants "incorporated by reference" were from their objections to Judge Scanlon's R&R, which the Court subsequently rejected in adopting the R&R and which the Second Circuit later affirmed. (*Id.* at 5 (emphasis omitted).) Second, the Receiver argues that the Reconsideration Defendants' motion fails on its merits because their "discussion of full faith and credit principles is woefully

deficient." (*Id.* at 6.)  In support, the Receiver argues that (i) the Reconsideration Defendants "fail to mention *any* of the elements that must be met for the full faith and credit [clause] to apply," (*id.*); (ii) do not "explain how those elements were satisfied," (*id.*); and (iii) cannot satisfy the elements of either *res judicata* or collateral estoppel, (*id.* at 6–8).  The Receiver contends that "as a result of the Receivership Order, it is the Delaware Court that is precluded from exercising jurisdiction over advancement disputes pursuant to full faith and credit principles, not the other way around." (*Id.* at 8.)  Third, the Receiver argues that the Reconsideration Defendants' other arguments do not "withstand[] scrutiny." (*Id.* at 9.)  In support, the Receiver argues that (i) Delaware law does not, contrary to the Reconsideration Defendants' arguments, "specifically imbue[]" the Delaware Court of Chancery "jurisdiction over matters involving the interpretation of an LLC [a]greement," (*id.* (quoting Defs.' Mem. 9)); (ii) this Court "frequently applies Delaware law" and thus it is not "inappropriate for this Court to exercise jurisdiction," (*id.* at 10); (iii) the Reconsideration Defendants' argument that overseeing advancement disputes would be an "extraordinary imposition" is "both disingenuous and unsupported by the record," (*id.* (quoting Defs.' Mem. 2)); and (iv) the Court and the Receiver have "repeatedly recognized" that the Reconsideration Defendants are "entitled to advancement" and would thus not suffer "manifest injustice" if this Court resolves advancement disputes, (*id.* (citation omitted)).  Fourth, the Receiver argues that the Reconsideration Defendants improperly cite and mischaracterize status updates from September 2024 and March 2025 to the Delaware Court of Chancery in support of their argument that the parties "proceeded on the understanding that the Chancery Court retained jurisdiction to decide any advancement issues." (Receiver's Surreply 1 (quoting Defs.' Reply 3).)  The Receiver argues that (i) the September 2024 status update was filed while the Receivership Order "was stayed pending

Defendants' appeal of that Order" and thus it is "hardly surprising that the September [of] 2024
status update would refer to the possibility of motions practice in Delaware . . . because *none* of
the jurisdictional provisions in this Court's Receivership Order that would have precluded such
activity in Delaware were then in effect" and (ii) the March of 2025 status update only "reflects .
. . that Schneider's defense bills were being processed for payment in accordance with *this*
Court's December 7, 2023 Opinion granting the SEC's motion to convert the monitorship into a
receivership." (*Id.* at 1–2.)

The Court denies Reconsideration Defendants' motion. First, even assuming the Court
"overlook[ed] the statement in [the Reconsideration Defendants'] objections that 'Defendants
respectfully refer to and incorporate by reference the arguments as set forth in greater detail in
Defendants' oppositions to Magistrate Judge Scanlon's [R&R] with respect to this issue,'"
(Defs.' Mem. 7 (quoting Defs.' Objs. 9)), the Court was not required to address those arguments
because the Court considered and rejected them in approving the Receivership Order. *GPB Cap.
Holdings*, 2023 WL 8468467, *14–16. In the Receivership Order, the Court specifically
addressed Gentile's and Schneider's objections that the litigation injunction would "ignore[e] . . .
their constitutional rights . . . because they are entitled to have the Delaware state court orders
receive full faith and credit" and that the "procedures set forth in the [Delaware advancement
orders] have been working smoothly since April [of] 2022."[9] *Id.* at *14. After considering these

---

[9] Reconsideration Defendants reiterate these arguments in their briefing for this current
motion. (Defs.' Mem. 8 ("[T]he Court also overlooked [Reconsideration] Defendants' argument
that by retaining jurisdiction over advancement disputes the Receivership Order failed to
properly accord the [a]dvancement [o]rders full faith and credit."); Defs.' Reply 2 ("[T]he
Delaware Court of Chancery has (and should continue to have) jurisdiction over disputes
regarding the advancement of Defendants' fees and has already put into place a process for the
review of their monthly invoices that has operated for over three years, including ruling on
previous disputes among the parties.").

arguments, the Court concluded, as it reiterated in the April 2025 Decision, that the Receivership

Order did not "enjoin the reimbursement procedures pursuant to which Schneider and Gentile

submit invoices and requests for reimbursement under their advancement orders." *Id.* at *16

n.21; *see also GPB Cap. Holdings*, 2025 WL 1043654, at *17.  The Court rejects

Reconsideration Defendants' attempt to relitigate arguments that the Court previously considered

in Reconsideration Defendants' objections to Judge Scanlon's R&R and again in their objections

to the Distribution Plan.  *See Marvin v. Allen*, No. 23-CV-5947, 2025 WL 1911558, at *2

(S.D.N.Y. July 11, 2025) (denying reconsideration where the plaintiff "raise[d] the same

arguments previously dismissed and fail[ed] to assert any intervening change of controlling law,

new evidence, or clear error that would warrant reconsideration"); *Colon v. N.Y.C. Hous. Auth.*,

No. 16-CV-4540, 2024 WL 714681, at *2 (S.D.N.Y. Feb. 21, 2024) ("Where the motion 'merely

offers substantially the same arguments . . . offered on the original motion or attempts to advance

new facts, the motion for reconsideration must be denied.'" (quoting *Silverman v. Miranda*, No.

06-CV-13222, 2017 WL 1434411, at *1 (S.D.N.Y. Apr. 10, 2017))); *Sejdija v. First Quality*

*Maint., L.P.*, No. 22-CV-4487, 2023 WL 2588236, at *1 (S.D.N.Y. Mar. 21, 2023) (denying

motion for reconsideration where the court "already considered and dismissed" the plaintiff's

arguments).

Second, the Reconsideration Defendants' argument that the Court did not "properly

accord the [Delaware advancement orders] full faith and credit pursuant to the Full Faith and

Credit Act and Article IV, section 1, of the U.S. Constitution" fails on the merits.  (Defs.' Mem.

8.)  The Reconsideration Defendants assert that the Delaware advancement orders

"unambiguously provide that the reimbursement procedures and any disputes between

Defendants and GPB are to be resolved by the Delaware Court of Chancery," (*id.* at 9–10), and

15

argue that the Court accordingly failed "to afford the Delaware [a]dvancement [o]rders . . . full faith and credit," (*id.* at 10), by concluding that the Receivership Order did not "pose any bar to Schneider's and Gentile's rights under their advancement orders" and did not "enjoin the reimbursement procedures" in the Delaware Actions. *See GPB Cap. Holdings*, 2025 WL 1043654, at *17. However, Reconsideration Defendants provide no support for their argument beyond generic references to the requirement "that all federal courts treat a state court judgment with the same respect that it would receive in the courts of the rendering state."[10] (Defs.' Mem. 8.) As the Receiver notes, the Reconsideration Defendants have not shown that either preclusion doctrine requires the Court to permit the parties to litigate advancement issues in Delaware, nor have the Reconsideration Defendants attempted to demonstrate how they would satisfy the elements of either *res judicata* or collateral estoppel under Delaware law. (*See* Receiver's Opp'n 6–8.) Regardless, Reconsideration Defendants' argument satisfies neither doctrine because advancement orders under Delaware law are not "final" orders. *Kroenke Sports & Ent., LLC v. Salomon*, 246 A.3d 1125 (Del. 2021) (unpublished table decision) ("We observed that the Advancement Order was 'interlocutory because, under the *Fitracks* Order, the Court of Chancery retains jurisdiction to resolve disputes about the amount of fees and expenses for which [the party] demands advancement going forward." (citation omitted)). Both *res judicata* and

---

[10] "The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Whitfield v. City of New York*, 96 F.4th 504, 522 (2d Cir. 2024) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "The full faith and credit statute implements the Full Faith and Credit Clause of the U.S. Constitution." *Id.* at 522 n.15. The two types of preclusion are (1) *res judicata*, or claim preclusion, which "prevents parties from raising issues that could have been raised and decided in a prior action — even if they were not actually litigated" and (2) issue preclusion, or collateral estoppel, which "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* at 523 n.16 (citations and alterations omitted). As discussed above, Reconsideration Defendants have not shown that either doctrine applies in this case.

collateral estoppel require a "final" order for a federal court to give "a state-court judgment . . . preclusive effect." *Whitfield v. City of New York*, 96 F.4th 504, 522 (2d Cir. 2024) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)); 28 U.S.C. § 1738; *see P-5 GRA, LLC v. Ivankovich*, No. 2023-1181, 2025 WL 1483625, at *6 (Del. Ch. May 23, 2025) (explaining that "[c]ollateral estoppel will bar a court's consideration of an issue when . . . the prior action has been finally adjudicated on the merits" (quoting *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. 1993))); *Cont'l Auto. Sys., Inc. v. Nokia Corp.*, No. 2021-66, 2023 WL 1370523, at *8 (Del. Ch. Jan. 31, 2025) ("[O]ne factor that must be present to trigger collateral estoppel is that 'the prior action has been finally adjudicated on the merits." (quoting *Norman v. State*, 976 A.2d 843, 868 (Del. 2009))); *Mikkilieni v. PayPal, Inc.*, No. N19C-05-123, 2021 WL 2763903, at *7 (Del. Super. Ct. July 1, 2021) (explaining that "[t]o invoke *res judicata*, the [party] must establish five elements" including "the decree in the prior action was a final decree" (citing *RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 643 (Del. 2014))). Reconsideration Defendants' failure to show that the advancement orders had "preclusive effect" is fatal to their argument that the Court committed "clear error and a manifest injustice" by "[f]ailing to afford the Delaware [a]dvancement [o]rders . . . full faith and credit" in deciding that the Court "should retain jurisdiction and supervision over all advancement related disputes between Defendants and GPB." (Defs.' Mem. 8, 10.) The Court therefore denies reconsideration on the basis that the Court "overlooked [Reconsideration] Defendants' argument" that retaining jurisdiction over advancement disputes violates the Full Faith and Credit Clause. (*Id.* at 8); *Strain v. Sw. Airlines Co.*, No. 24-CV-8885, 2025 WL 1384156, at *2, 4 (E.D.N.Y. May 13, 2025) (denying reconsideration where the moving party's arguments "ha[d] no merit" and the moving party's arguments did not show that the "[c]ourt committed error, let

alone clear error"); *Wu v. Sushi Nomado of Manhattan, Inc.*, No. 17-CV-4661, 2024 WL 2193521, at *2 (S.D.N.Y. May 15, 2024) (denying reconsideration where the moving party "fail[ed] to raise any controlling law or factual matters that the [c]ourt overlooked" in the original motion (internal quotation marks omitted)); *Hickman v. Bellevue Hosp. Ctr.*, No. 21-CV-1738, 2024 WL 2158440, at *1 (E.D.N.Y. May 14, 2024) (denying reconsideration where "the sole basis for the [motion was] the [party's] incorrect belief that the [c]ourt inadvertently overlooked" an argument); *Kusnier v. Virgin Galactic Holdings, Inc.*, No. 21-CV-3070, 2023 WL 8750398, at *4 (E.D.N.Y. Dec. 19, 2023) (denying reconsideration where the moving party did "not identif[y] any controlling precedent that require[d] reconsideration of [the court's] prior decision").

Third, Reconsideration Defendants mischaracterize the Court's language in stating that the Receivership Order "affirmatively allowed" the Delaware Actions to proceed.  (Defs.' Reply 3.)  Both the Receivership Order and the April 2025 Decision specified that "the reimbursement procedures set forth in the *Fitracks* Order and the Stipulation and Advancement Order are exempted from the litigation injunction," *GPB Cap. Holdings, LLC*, 2023 WL 8468467, at *16 n.21; *GPB Cap. Holdings*, 2025 WL 1043654, at *4 n.13, *17, but distinguished those "reimbursement procedures" from advancement disputes that are not resolved by those "procedures."  In other words, the Court authorized Gentile's and Schneider's advancement costs to proceed as detailed in the Delaware advancement orders, but any remaining disputes about those costs after the parties comply with the reimbursement procedures must be litigated before this Court.  The Receivership Order specifically identified the Delaware Actions as subject to the litigation injunction and the April 2025 Decision merely reiterated that conclusion.  (*See* Order Appointing Receiver and Imposing Litigation Injunction ¶ 18 n.1, Docket Entry No. 187; Non-

Exclusive List of Litigation Involving the Receivership Entities and Receivership Assets No. 8, 20, annexed to Order Appointing Receiver and Imposing Litigation Injunction as Schedule 3, Docket Entry No. 187); *GPB Cap. Holdings*, 2025 WL 1043654, at *16 n.25. The Court is also not persuaded that the September 2024 and March 2025 status updates the parties submitted in the Delaware Actions demonstrate that they "proceeded on the understanding that the Chancery Court retained jurisdiction to decide any advancement issues." (Defs.' Reply 3.) As the Receiver notes, the parties submitted the September 2024 status update when the litigation injunction was stayed pending the Second Circuit appeal, (Receiver's Surreply 2), and the March 2025 status[11] update only "reflects . . . that Schneider's defense bills were being processed for payment in accordance with *this* Court's [Receivership Order]," (*id.*). Neither report reflects an "understanding that the Chancery Court retained jurisdiction" over advancement disputes. (Defs.' Reply 3.) The Court therefore rejects Reconsideration Defendants' argument that the Court is "chang[ing] course," (Defs.' Reply 4), by reiterating that the Court retains jurisdiction over "any disputes regarding either Gentile's or Schneider's advancement costs." *GPB Cap. Holdings*, 2025 WL 1043654, at *16 n.25.

### c.  The Reconsideration Defendants are not entitled to a stay

Reconsideration Defendants argue in the alternative that the Court enter a "brief, interim and limited stay of the portion of the [April 2025 Decision] holding that this Court has exclusive

---

[11]  The March 2025 Joint Status Report provides in full:

> Pursuant to the Court's January 17, 2025 Order Requiring Status Report, Plaintiff and Defendants in the above-captioned advancement action submit the following Status Report: Since the Court granted the Advancement Order on April 20, 2022 (the "Order") governing the procedures for advancement, the Parties have complied with the Court's Order. Each month, Plaintiff submits his invoices, Defendants respond, and the Parties confer.

(March 2025 Joint Status Report, annexed to Receiver's Surreply as Ex. 1, Docket Entry No. 285-1.)

jurisdiction over advancement disputes to allow Defendants to move the Second Circuit for an appeal." (Defs.' Mem. 10; Defs.' Reply 5–6.)

The Receiver argues that the Receivership Defendants "have not met their burden to justify a stay." (Receiver's Opp'n 11.)

Reconsideration Defendants are not entitled to a stay pending appeal. As the Second Circuit has recently noted, "[a] stay is 'an exercise of judicial discretion,' and the 'propriety of its issue is dependent upon the circumstances' presented to the court." *Mahdawi v. Trump*, 136 F.4th 443, 449 (2d Cir. 2025) (quoting *Nken. v. Holder*, 556 U.S. 418, 433 (2009)). The party seeking the stay bears the burden of showing that they have met the following four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Nken*, 556 U.S. at 434). "The first two factors . . . are the most critical." *Id.* (quoting *Nken*, 556 U.S. at 434). In this case, Reconsideration Defendants' arguments fail on their merits, and they have not shown "irreparable harm" absent a stay. Reconsideration Defendants have "already received advancement for over $75 million in defense costs, including over $50 million since the Receivership Order was entered on December 7, 2023." (Receiver's Opp'n 10–11.) The Court and the Receiver also "have repeatedly acknowledged [Reconsideration] Defendants' advancement rights," (*id.* at 11), and it is therefore not clear what "irreparable harm" they would suffer by litigating advancement disputes before the Court. Reconsideration Defendants thus fail to persuade the Court to stay any portion of the April 2025 Decision pending appeal. *See Res. Grp. Int'l Ltd. v. Chishti*, --- F. Supp. 3d, ---, 2025 WL 2301318, at *4 (S.D.N.Y. Aug. 11, 2025) (denying motion for stay pending appeal where

the moving party had not "made a strong showing" of likelihood of success on the merits); *Reid v. Remekie*, No. 25-CV-0904, 2025 WL 2300275, at *2 (E.D.N.Y. July 17, 2025) (denying stay where the respondent "ha[d] only a slim chance of successfully demonstrating that the [c]ourt's factual findings were 'clear error,'" and was thus "unlikely to succeed on the merits"); *Cleer LLC v. Stranger*, No. 24-CV-1496, 2025 WL 1833448, at *6 (D. Conn. July 3, 2025) (denying stay where the moving party "ha[d] not shown a substantial possibility of success because none of the arguments she ha[d] presented for reconsideration ha[d] merit" and "ha[d] not demonstrated any of the factors that courts consider when deciding whether to issue a stay pending appeal").

### III.  Conclusion

For the foregoing reasons, the Court denies Reconsideration Defendants' motion for reconsideration and denies their request for an interim stay pending appeal.

Dated: September 12, 2025
     Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge