UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

-against-

GPB CAPITAL HOLDINGS, LLC; ASCENDANT CAPITAL, LLC; ASCENDANT ALTERNATIVE STRATEGIES, LLC; DAVID GENTILE; JEFFRY SCHNEIDER; and JEFFREY LASH,

                    Defendants.

21-cv-00583-MKB-VMS

---

**DEFENDANT DAVID GENTILE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF COSTS AND EXPENSES**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................ 2

**BACKGROUND** ......................................................................................................................... 4

    I.    Mr. Gentile's Advancement Rights are Uncontestable ................................................. 4

    II.   Mr. Gentile Engaged CRA to Assist with His Sentencing Hearing .............................. 5

    III.  Mr. Gentile Engaged Ms. Murray to Potentially Testify at His Forfeiture Hearing ..... 7

    IV.  GPB Continues to Refuse Advancement of the CRA Disputed Amount...................... 9

**ARGUMENT** ................................................................................................................................ 9

    I.    Mr. Gentile's Entitlement to Advancement at this Stage is Clear Under Delaware Law, the Advancement Order, and this Court's Orders ......................................................... 9

    II.   CRA's Sentencing Work Was Necessary, Not Duplicative, and Clearly Advanceable 10

    III.  Ms. Murray's Work Is Likewise Clearly Advanceable ............................................... 12

    IV.  Mr. Gentile Is Also Entitled to Fees on Fees ............................................................... 13

**CONCLUSION** ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blankenship v. Alpha Appalachia Holdings, Inc.*,
　No. CV 10610-CB, 2015 WL 3408255 (Del. Ch. May 28, 2015) ............................................... 9

*Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc.*,
　No. CIV. A. 12409, 1993 WL 328079 (Del. Ch. Aug. 6, 1993) ................................................. 3

*Duthie v. Corsolutions Med., Inc.*,
　No. 3048-VCN, 2008 WL 4173850 (Del. Ch. Sept. 10, 2008) ................................................... 9

*Fasciana v. Elec. Data Sys. Corp.*,
　829 A.2d 160 (Del. Ch. 2003) ................................................................................................... 10

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
　954 A.2d 911 (Del. Ch. 2008) ................................................................................................... 11

*Reinhard & Kreinberg v. Dow Chem. Co.*,
　No. CIV.A. 3003-CC, 2008 WL 868108 (Del. Ch. Mar. 28, 2008) .......................................... 10

*Tafeen v. Homestore, Inc.*,
　No. CIV.A. 023-N, 2005 WL 789065 (Del. Ch. Mar. 29, 2005) ............................................... 13

*Weil v. VEREIT Operating P'ship, L.P.*,
　No. CV 2017-0613-JTL, 2018 WL 834428 (Del. Ch. Feb. 13, 2018) ....................... 3, 9, 10, 13

*White v. Curo Texas Holdings, LLC*,
　No. CV 12369-VCL, 2017 WL 1369332 (Del. Ch. Feb. 21, 2017) ........................................... 9

**PRELIMINARY STATEMENT**

There is no question Mr. Gentile is entitled to advancement from GPB; the Delaware Court of Chancery has entered an order awarding advancement and setting out the procedure to follow. GPB Capital Holdings, LLC and its Receiver (collectively, "GPB") have advanced Mr. Gentile's defense costs since 2022, and this Court has repeatedly recognized Mr. Gentile's right to advancement of his legal fees and costs. Despite Mr. Gentile's clear advancement rights, GPB has objected to and withheld $506,253 (the "CRA Disputed Amount") in payments to Charles River Associates ("CRA"), the experts Mr. Gentile engaged for a critical phase in the criminal case – sentencing. CRA's services included analysis of, and potential expert witness testimony about, loss calculations, forfeiture, and restitution in the criminal action against him (the "DOJ Action"). Mr. Gentile incurred $380,268 of that amount in October 2024 through CRA's work to prepare for his sentencing hearing, and he incurred the remaining $125,985 in June 2025 when he retained Marti Murray, an expert witness affiliated with CRA, to potentially testify at his forfeiture evidentiary hearing.

GPB's rationale for objecting to the entirety of CRA's October 2024 fees, submitted with Mr. Gentile's November 15, 2024 demand, is that CRA's analysis of the "relevant trial record, pre-trial and background materials, investment data, and finances, as well as data compilation" was purportedly previously performed by Mr. Gentile's accounting expert at trial, Ankura Consulting Group, LLC ("Ankura"), and that CRA's fees for October 2024 therefore largely represented "getting up to speed" on the case. Not so. Mr. Gentile engaged CRA to analyze materials in support of his defense at the sentencing stage, assessing potential loss and/or gains calculations, with a specific eye to supporting Mr. Gentile's sentencing arguments. This is entirely distinct from the work Ankura performed during the trial preparation phase, intended to support Mr. Gentile's defense case prior to conviction. GPB recognized this by advancing the entirety of CRA's first

2

invoice, submitted with Mr. Gentile's October 2024 demand—withholding *none* of CRA's fees for "getting up to speed" during the first month in which it was engaged.

GPB's objections to Ms. Murray's June 2025 fees, submitted with Mr. Gentile's July 15, 2025 demand, are likewise wrong. GPB objected to and withheld the entirety of Ms. Murray's fees for that month, stating that because she "billed fees through . . . separate firm" Murray Analytics, her work purportedly "largely involved reviewing transcripts and other documents in order to become familiar with the background of the case," and "CRA already ha[d] eight other timekeepers billing to this matter." As Mr. Gentile's counsel explained to GPB's counsel, however, Mr. Gentile engaged Ms. Murray—who is affiliated with both CRA and Murray Analytics—to potentially testify at his forfeiture hearing as an expert witness, and Ms. Murray's fees represent time she spent preparing for that possible testimony. That is distinct from any work done by other CRA timekeepers engaged to assist with Mr. Gentile's case.

The law on advancement in Delaware is clear: "A party's expenses are reasonable if they were 'actually paid or incurred[,] . . . were . . . thought prudent and appropriate in the good faith professional judgment of competent counsel[,] and were charge[d] . . . at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances." *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018) (citing *Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc.,* 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993)). Here, the time worked by CRA, including Ms. Murray, was supported by a certification of counsel and therefore presumptively reasonable and thus has been wrongfully withheld by GPB.

3

Accordingly, Mr. Gentile respectfully requests an order from this Court (i) awarding him the instant fees, expenses, and costs that have been wrongfully withheld by GPB,[1] and (ii) an award of fees-on-fees for the work performed to enforce his advancement rights herein, plus pre- and post-award interest on the unpaid amounts at the Delaware statutory rate of interest.

## BACKGROUND

### I. Mr. Gentile's Advancement Rights are Uncontestable

There is no question Mr. Gentile is entitled to advancement. GPB Capital Holdings, LLC and certain of its funds *voluntarily* entered into an Advancement Order after Mr. Gentile filed a Verified Complaint for Advancement ("Complaint") in the Delaware Court of Chancery. The Delaware Court of Chancery entered an order requiring GPB to advance Mr. Gentile's legal fees and costs on April 12, 2022 (the "Advancement Order"). Mr. Gentile's advancement rights are derived from the Limited Liability Company Agreement of GPB Capital Holdings, LLC (the "GPB Operating Agreement") and the several limited partnership agreements of the funds (collectively, the "Fund Agreements"). These provisions—which were incorporated into the Advancement Order—specify that "[t]o the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person in defending any claim, demand, action, suit, or proceeding shall, from time to time, be advanced by the Company." Among other things, the Advancement Order provides for the "advancement from [GPB and the Defendant funds] of [Mr. Gentile]'s attorneys' fees and other expenses reasonably incurred in connection with defending against" certain defined cases filed against him, including the DOJ Action. Ex. A ¶ 1.

---

[1] While GPB has also wrongfully objected to and withheld fees incurred by Kobre & Kim LLP, this motion solely relates to CRA's unadvanced fees. Mr. Gentile fully reserves his right to seek advancement of any other unadvanced fees at a later date, and nothing in this motion should be construed as a waiver of his right to advancement of those fees.

4

This Court has repeatedly recognized Mr. Gentile's continuing right to advancement under the Advancement Order. On December 7, 2023, when the Court converted the monitorship to a receivership, it made clear that nothing in the Court's receivership order "pose[d] any bar to . . . Gentile's rights under" his Advancement Order and that the Receiver was "required to comply with his legal obligations, including compliance of the existing orders of other courts" like the Advancement Order. *See* Dkt. No. 186 at 35. Likewise, on April 8, 2025, the Court recognized that there is "no dispute that the Receiver . . . is required by the Receivership Order to continue paying Gentile['s] . . . advancement costs." Dkt. No. 271 at 41–42. The Court reaffirmed that understanding just recently. *See* Dkt. No. 293 at 20 (noting that "[t]he Court and the Receiver . . . have repeatedly acknowledged [Mr. Gentile's] advancement rights").

In connection with the Advancement Order procedures, Mr. Gentile submits monthly demands for advancement in this case. There are two demands at issue in the instant motion. The first is the November 15, 2024 demand. *See* Ex. B. The second is the July 15, 2025 demand. *See* Ex. C. The instant disagreement between the parties relates to CRA's Invoice Nos. 1105215 and 1114559. *See* Exs. D–E .

## II. **Mr. Gentile Engaged CRA to Assist with His Sentencing Hearing**

The most time-intensive work required for Mr. Gentile's defense in the DOJ Action since his trial has been to prepare his proposed corrections and objections to the Presentence Investigation Report (the "PSR Objections"), sentencing submission, and for his sentencing hearing. Mr. Gentile's PSR Objections required analysis of the trial record and discovery material to refute inaccuracies by the U.S. Probation Office and reflected the scope of outstanding issues from his post-trial motions. Similarly, Mr. Gentile's sentencing submission involved, among other things, a responsive analysis to the Government's theory of loss expressed in the PSR and the synthesis of background information provided in 75 letters of support submitted on Mr. Gentile's

5

behalf.

To aid that process, Mr. Gentile engaged CRA to analyze potential loss and/or gains calculations resulting from the conduct for which Mr. Gentile was found guilty at trial. CRA is a consulting firm that specializes in, among other things, financial litigation. The firm played a crucial role in Mr. Gentile's efforts to refute the Government's theory of loss at sentencing in the DOJ Action. Over a multiple-month period, the Government offered no less than seven theories of loss, shifting its position every time Mr. Gentile, relying in part on analysis by CRA, refuted the Government's previous theory. The need for CRA to work quickly in October 2024 was especially acute given that the Probation Office was set to complete Mr. Gentile's PSR the first week of January 2025, and Mr. Gentile's objections were due just over three weeks after it was received.[2] Ultimately, because of CRA's efforts, Mr. Gentile's counsel successfully argued that the Court in the DOJ Action should reject all of the Government's theories of loss.

Mr. Gentile submitted his first monthly demand requesting advancement of CRA's fees on October 15, 2024. The amount of CRA fees requested in the October 2024 demand was $63,609.00. GPB paid that amount in full without objection.

Yet GPB refused to advance *any* of CRA's fees just a month later. On November 15, 2024, in connection with the Advancement Order procedures, Mr. Gentile submitted to GPB his attorney certification for advanceable fees and expenses for work performed in October 2024. *See* Ex. B. On December 5, 2024, GPB objected to 100% of the fees incurred by Mr. Gentile for CRA's work in October 2024, *i.e.*, $380,268. GPB's rationale for withholding the entirety of CRA's fees for that month was that they were, according to GPB, an "extra expense" that was "incurred for the purpose of 'getting up to speed'"—despite the fact that GPB did not withhold any of CRA's fees

---

[2] The Probation Office ultimately completed the PSR on December 30, 2024. Mr. Gentile's counsel served the PSR Objections on January 16, 2025.

6

just a month before based on this purported rationale.[3] *See* Ex. G. On December 16, 2024, Mr. Gentile sent GPB his reply to its December 5, 2025 objections, explaining that the work included in CRA's October 2024 invoice was not for "getting up to speed" but instead "was conducted for the loss and gains calculations" related to his PSR Objections and sentencing, "which [was] entirely distinct from the work Ankura conducted in support of the criminal defense prior to and during trial." *See* Ex. H. Notwithstanding this explanation from Mr. Gentile's counsel through his reply letter and a separate meet and confer, GPB has refused to advance CRA's October 2024 invoice.

### III. Mr. Gentile Engaged Ms. Murray to Potentially Testify at His Forfeiture Hearing

Following Mr. Gentile's sentencing hearing, the court in the DOJ Action held a forfeiture hearing on August 5, 2025. Mr. Gentile engaged Ms. Marti Murray, an expert affiliated with CRA as well as her own firm, Murray Analytics, to potentially serve as an expert witness at the forfeiture hearing. On June 24, 2025, Mr. Gentile disclosed to the Government that Ms. Murray's potential testimony related to two topics: (1) the adequacy and reasonableness of a tracing analysis performed by Mr. Michael Petron on behalf of the Government; and (2) Mr. Gentile's compensation as CEO of GPB Capital Holdings, LLC. Ms. Murray accordingly analyzed the trial record and other materials to prepare for her possible expert testimony on both topics. Ms. Murray, as the expert at CRA who would reach conclusions on those topics and testify about them in federal court, had to dedicate significant time to analyzing not only the documents relied on in Mr. Petron's tracing analysis, but a host of other documents Ms. Murray would ultimately rely on in her possible

---

[3] In fact, GPB even withheld fees related to time entries that are nearly identical to time entries GPB did not object to just a month prior. *Compare* Ex. F at 4 ("reviewed financial statements; analysis"); *id.* ("Compilation of Fund H2 Historical Financial Statements."), *with* Ex. D at 4 ("reviewed documents; analysis"); *id.* ("Compilation of Fund H2 Historical Balance Sheets"). These entries, along with a comparison of the remainder of the two invoices, demonstrate that CRA engaged in equally substantive work both months.

7

testimony and which were disclosed to the Government. *See* Ex. I (list of materials relied on by Ms. Murray).

At the same time Ms. Murray was performing that work, Mr. Gentile's counsel briefed the numerous errors contained in Mr. Petron's analysis—one of the exact topics Ms. Murray would potentially testify about. Mr. Gentile separately engaged other timekeepers at CRA to assist his counsel with that briefing. In response to Mr. Gentile's forfeiture briefing, on July 22, 2025, the Government submitted a revised analysis from Mr. Petron that addressed the majority of the errors noted by Mr. Gentile's counsel. Shortly after the Government submitted Mr. Petron's revised analysis, on July 30, 2025, the Government moved to exclude Ms. Murray's testimony related to Mr. Gentile's compensation entirely. In light of Mr. Petron's revised analysis and the Government's objection to Ms. Murray's compensation-related testimony, Mr. Gentile did not call Ms. Murray in an effort to streamline the issues at his forfeiture hearing.

On July 15, 2025, in connection with the Advancement Order procedures, Mr. Gentile submitted his attorney certification for advanceable fees and expenses for June 2025. *See* Ex. C. On August 4, 2025, GPB objected to 100% of the fees incurred by Mr. Gentile for Marti Murray's work in June 2025, *i.e.*, $125,985. Like in its objection to Mr. Gentile's November 2024 demand, GPB largely objected to and withheld these fees based on the unfounded view that Ms. Murray's work was simply to "become familiar with the background of the case," claiming that the Receiver's counsel required "clarification . . . as to why [an] additional timekeeper [was] necessary and how" Ms. Murray's work was "not duplicative of the work by other timekeepers." *See* Ex. J. On August 14, 2025, Mr. Gentile replied to GPB's objections and explained that "Ms. Murray was brought onto the defense team" to provide expert testimony at Mr. Gentile's forfeiture hearing and that "[t]he entries submitted by Ms. Murray were all in preparation for her possible testimony."

8

*See* Ex. K.  Despite this explanation, GPB has continued to refuse to advance Ms. Murray's invoice.

IV. **GPB Continues to Refuse Advancement of the CRA Disputed Amount**

Thus, the CRA Disputed Amount objected to and withheld by GPB is $506,253.  Counsel for Mr. Gentile and GPB held multiple meet and confers in an effort to resolve the disputes, but GPB has refused to advance the full amount of the CRA Disputed Amount.  Instead, GPB proposed an unreasonable offer to advance 50% of CRA's October 2024 fees, maintaining the unsupportable position that CRA's analysis was duplicative "getting up to speed" work.  When counsel for Mr. Gentile rejected this offer, GPB revised their offer and offered to advance approximately 64% of the invoice.  GPB has also continued to advance 0% of the fees incurred in connection with Ms. Murray's work in June 2025.

## ARGUMENT

I. **Mr. Gentile's Entitlement to Advancement at this Stage is Clear Under Delaware Law, the Advancement Order, and this Court's Orders**

"Advancement is a form of contractual fee-shifting." *VEREIT*, 2018 WL 834428, at *11. Under Delaware law, which governs Mr. Gentile's right to advancement, "[a]dvancement is not the proper stage for a detailed analytical review of the fees, whether in terms of the strategy followed or the staffing and time committed." *Duthie v. Corsolutions Med., Inc.*, 2008 WL 4173850, at *2 (Del. Ch. Sept. 10, 2008), *modified*, 2009 WL 1743650 (Del. Ch. June 16, 2009). Indeed, when reviewing demands submitted for advancement, "the summary nature of an advancement proceeding" typically provided for under Delaware law "counsels against granular review." *White v. Curo Texas Holdings, LLC*, 2017 WL 1369332, at *5 (Del. Ch. Feb. 21, 2017). The advancement stage is also not the proper time for a party to manufacture "persnickety disputes" over the fees sought. *Blankenship v. Alpha Appalachia Holdings, Inc.*, 2015 WL

9

3408255, at *28 (Del. Ch. May 28, 2015). This is because the "Court does not relish and will not perform the task of playground monitor, refereeing needless and inefficient skirmishes in the sandbox [over advancements]." *Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL 868108, at *5 (Del. Ch. Mar. 28, 2008).

In adjudicating advancement disputes, Delaware courts applying Delaware law have found that "[u]nless some gross problem arises, a balance of fairness and efficiency concerns . . . counsel[s] deferring fights about details until a final indemnification proceeding." *Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 160, 177 (Del. Ch. 2003). Ultimately, absent a showing of "clear abuse," a good faith certification from counsel is sufficient under Delaware law to support an advancement award. *See VEREIT*, 2018 WL 834428, at *7.

Here, Mr. Gentile is clearly entitled to advancement under the GPB Operating Agreement and Fund Agreements. Both GPB and the Delaware Court of Chancery recognized as much when GPB agreed to, and the Delaware Court of Chancery entered, the Advancement Order. Since that time, this Court has repeatedly recognized Mr. Gentile's right to advancement of his legal fees and costs. *See, e.g.*, Dkt. No. 186 at 35; Dkt. No. 271 at 41–42; Dkt. No. 293 at 20. GPB's refusal to advance those legal fees and costs therefore violates not only the GPB Operating Agreement and Fund Agreements, but the Advancement Order and this Court's orders as well.

## II. CRA's Sentencing Work Was Necessary, Not Duplicative, and Clearly Advanceable

It is undisputed that CRA was engaged for a legitimate, advanceable purpose; GPB acknowledged this by paying CRA's first invoice, submitted with Mr. Gentile's October 15, 2024, demand, in full. CRA's analysis of the trial record, pre-trial and background materials, and financial data was not mere onboarding (which, in any case, would have been reflected in the prior non-objected-to October invoice), but conducted to further their loss and/or gains calculations for sentencing workstreams. The fees incurred in CRA's October invoice, therefore, cannot be

10

construed as "getting up to speed," as GPB suggests.

As Mr. Gentile explained in his reply letter, CRA's engagement is distinct from Ankura's prior engagement. *See* Ex. H. Ankura was retained for trial preparation and expert trial testimony, and their work generally consisted of preparing summary and demonstrative exhibits, direct and cross examination preparation, and factual analyses to dispute the prosecution's allegations in the indictment and at trial. CRA, on the other hand, was retained for post-trial work analyzing potential loss and/or gains calculations resulting from the conduct for which Mr. Gentile was found guilty at trial to support Mr. Gentile's sentencing submission and hearing preparation, none of which were in the scope of Ankura's engagement.

The necessity of that was indisputable. Under the United States Sentencing Commission Guidelines, loss amount is among the most significant factors for the court to consider at sentencing. In his reply letter, Mr. Gentile clarified that to assess potential loss, CRA was "analyzing calculations of loss and gains, which involves, among other things, evaluating the value of GPB's assets, historical accounting ledgers, and transaction records regarding the timing and amounts of distributions paid to limited partners." *See* Ex. H. CRA also had to determine the appropriateness of different loss calculation methodologies based on the factual context, which required analysis of the trial record and background materials, and had to replicate the gains analysis put forth by the Government's summary witness at trial. This work was indispensable for Mr. Gentile's defense at sentencing. While the Government initially argued that the court in the DOJ Action apply a gain/loss amount of $98,000,000, the Court ultimately found a gain/loss range of $3,500,000 - $9,500,000.

In summary, GPB's reliance on *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 944 (Del. Ch. 2008) to claim that CRA's work was an "extra expense" misses the mark. *See*

11

Ex. G.  CRA was not simply "getting up to speed" to substitute for Ankura; rather, they analyzed the trial record and related materials to assess any potential loss and/or gains.  These analyses were key to Mr. Gentile's sentencing strategy.  As such, the fees associated with that work are advanceable in their entirety.

### III. Ms. Murray's Work Is Likewise Clearly Advanceable

It is also undisputed that Ms. Murray was engaged for legitimate and advanceable work.  Again, GPB conceded as much.  It did not object to any of CRA's fees contained within Mr. Gentile's August 15, 2025 demand—including the fees for Ms. Murray's work to prepare for Mr. Gentile's forfeiture hearing.  And much like its objection to Mr. Gentile's November 2024 demand, GPB provided little support for its position that Ms. Murray's work was merely "getting up to speed on the case."  *See* Ex. J.  Instead, GPB cited little more than the fact that CRA had other timekeepers on Mr. Gentile's case.  *Id.*

As Mr. Gentile's counsel explained in his reply and at a subsequent meet and confer, however, Ms. Murray's work was not duplicative of those other timekeepers, and Ms. Murray's need to dedicate a significant amount of time to Mr. Gentile's case came as little surprise.  Mr. Gentile engaged Ms. Murray in early June 2025.  Ms. Murray's time entries reflect that she began work on Mr. Gentile's case less than three weeks before counsel had to disclose her possible testimony on June 24, 2025.  *See* Ex. K.  Nor was this work duplicative of other CRA work.  Mr. Gentile explained in his reply to GPB's objections that Ms. Murray was retained for the distinct purpose of preparing for her possible expert testimony, including her analysis to prepare for that testimony.  Ms. Murray did not perform the economic and financial consulting services performed by other CRA timekeepers in connection with Mr. Gentile's sentencing or forfeiture hearing.  And as an expert testifying in federal court about the appropriateness of another witness's analysis, Ms.

12

Murray had a duty to fully analyze and inform herself of the record relevant to both her and Mr. Petron's analyses.

### IV. Mr. Gentile Is Also Entitled to Fees on Fees

Mr. Gentile is also entitled to fees on fees for any success achieved through this Motion. Delaware caselaw is clear that when a party successfully enforces advancement rights, that party is entitled to "an award of fees on fees." *VEREIT*, 2018 WL 834428, at *15; *see also Tafeen v. Homestore, Inc.*, 2005 WL 789065, at *7 (Del. Ch. Mar. 29, 2005) *aff'd*, 888 A.2d 204 (Del. 2005) (holding that a party is entitled to fees on fees incurred in enforcing advancement rights). In line with that caselaw, the Advancement Order provides that Mr. Gentile may "demand indemnification for the fees and expenses" incurred in connection with a granted application for advancement of his fees and costs. *See* Ex. A ¶ 10. Indeed, the Delaware Court of Chancery awarded Mr. Gentile fees on fees once before in connection with a previous application for advancement filed in the same Delaware advancement proceedings that resulted in the Advancement Order. Accordingly, a demand for fees on fees will be submitted to GPB pending the Court's ruling.

## CONCLUSION

For the reasons set forth herein, Mr. Gentile respectfully asks the Court to enter an order awarding advancement of the outstanding CRA Disputed Amount of $506,253, including pre- and post-award interest, and fees on fees and expenses incurred in bringing this motion.

Dated: September 19, 2025  
      Miami, Florida

Respectfully submitted,

/s/ *Adriana Riviere-Badell*
Matthew I. Menchel
Adriana Riviere-Badell *(admitted pro hac vice)*
**KOBRE & KIM LLP**
201 South Biscayne Boulevard,
Suite 1900
Miami, FL 33131
(305) 967-6100
Matthew.Menchel@kobrekim.com
Adriana.Riviere-Badell@kobrekim.com

*Attorneys for Defendant David Gentile*

14

## **CERTIFICATE OF COMPLIANCE**

The foregoing memorandum of law, excluding the caption, table of contents, table of authorities, signature blocks, and this certificate, contains 3,857 words and complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Practices and Rules of the Honorable Margo K. Brodie.

Dated: September 19, 2025
       Miami, Florida

                                                */s/ Adriana Riviere-Badell*
                                                Adriana Riviere-Badell